## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____
                                          :
CITY OF PHILADELPHIA,                     :
                                          :
                    Plaintiff,            :
                                          :
          v.                              :          Case No. 2:21-cv-04701-JS
                                          :
CVS INDIANA, L.L.C., et al.,              :
                                          :
                    Defendants.           :
_____:

## PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION

Pursuant to 28 U.S.C. § 1447 and United States District Court for the Eastern District of

Pennsylvania Local Rule 7.1, Plaintiff, the City of Philadelphia ("Plaintiff" or the "City"), moves

for an order remanding this case (the "Action") to the Pennsylvania Court of Common Pleas.[1]

The City initiated suit against Defendants—all retail pharmacies—for their role in

causing the opioid epidemic ravaging Philadelphia. The City filed its lawsuit in the Court of

Common Pleas for Philadelphia County, which is the tribunal with appropriate subject matter

jurisdiction over the City's state law claims.[2] Federal jurisdiction in this Court is lacking,

removal was improvident, and Defendants CVS Indiana L.L.C., CVS Rx Services, Inc., CVS

_____

[1] The City brought this Action in the Philadelphia County Court of Common Pleas on September 28, 2021. On October 7, 2021, Defendant Walmart noticed the Action for coordination with the other Pennsylvania opioid litigation matters pending before the Delaware County Court of Common Pleas, consistent with the Delaware County court's March 26, 2018 Order and in accordance with Pa.R.C.P. 213.1. The Action, however, has not yet been formally transferred to the Delaware County court per the Philadelphia Court of Common Pleas docket and such transfer is impending.

[2] The City's legal causes of action against Defendants are: (1) public nuisance; (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3; and (3) unjust enrichment.

Pharmacy, Inc., and Pennsylvania CVS Pharmacy, L.L.C. ("CVS") lack an objectively reasonable basis for seeking removal.

Moreover, the City requests that relief for remand be granted on an emergency basis. First, the undeviating practice of the United States Judicial Panel on Multidistrict Litigation (the "JPML") is to transfer every removed state court opioid action to the Multidistrict Litigation, *In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, in the United States District Court for the Northern District of Ohio (the "MDL Court"), *regardless* of the strength of any pending remand motion and the plain absence of federal jurisdiction. The only way the Action can properly remain in Pennsylvania state court is if this Court promptly grants the remand motion, before the JPML transfers the Action to the MDL Court. Second, the MDL Court has imposed an indefinite moratorium on consideration of all remand motions.[3] Third, the MDL Court's indefinite stay on the prosecution of the Action severely prejudices the City from actively prosecuting its case and may delay abatement of an opioid epidemic that is threatening the health and safety of its residents. Without a decision on this Motion for Remand prior to the JPML's next session,[4] this Action will almost certainly be transferred to the MDL Court, where this Motion will languish indefinitely despite an absence of federal jurisdiction.

---

[3] *See* Order Regarding Remands, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio Feb. 16, 2018) (entering moratorium on motions to remand); Case Management Order No. 1 at ¶ 6.g, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio April 11, 2018) ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties."); *see also Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018) ("The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.").

[4] *See* United States Judicial Panel on Multidistrict Litigation – Notice of Hearing Session on December 2, 2021, Case MDL No. 2179 at ECF No. 2064 (Oct. 18, 2021), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Hearing%20Session%20Filed_Dec%202021.pdf.

122530147_1

All the while, every federal court that has substantively decided whether a state opioid litigation similar to this Action was properly removed under substantial federal question jurisdiction or the Class Action Fairness Act ("CAFA") has determined that removal was improper, that federal jurisdiction was absent, and therefore remanded the action back to state court. Simply put, removals of state opioid litigations similar to this Action have never been approved on the merits (any removals were occasioned only because a transferor court did not rule on the motion to remand).

For these and the other reasons more fully explained in the accompanying Memorandum of Law in Support, the City requests that this Action be remanded to the Pennsylvania Court of Common Pleas. And given the urgency and straightforward nature of this Motion, the City respectfully requests that any opposition brief be filed no later than November 3, 2021, and that this Court then promptly set this matter for a hearing. Lastly, the City additionally seeks the payment of just costs and actual expenses incurred as a result of the remand pursuant to 28 U.S.C. §1447(c), because CVS's rogue removal of this Action is a blatant attempt to interfere with the City's ability to prosecute its case by interposing a patently frivolous removal.

Respectfully submitted,

By:_____

Diana Cortes, City Solicitor
(PA Bar No. 204274)
Renee Garcia, Head of Litigation
(PA Bar No. 315622)
Benjamin H. Field, Chief Deputy City
Solicitor (PA Bar No. 204569)
**CITY OF PHILADELPHIA LAW DEPT.**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
Tel: (215) 683-5000

Jerry R. DeSiderato (PA Bar No. 201097)
Timothy J. Ford (PA Bar No. 325290)
Silvio Trentalange (PA Bar No. 320606)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com

3

diana.cortes@phila.gov
benjamin.field@phila.gov

Russell W. Budd (*pro hac vice* to be filed)
Christine C. Mansour (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Tel.: (214) 521-3605
rbudd@baronbudd.com
cmansour@baronbudd.com

Burton LeBlanc (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
2600 Citiplace Drive
Baton Rouge, LA 70808
Tel.: (225) 927-5441
bleblanc@baronbudd.com

Jennifer Fountain Connolly (*pro hac vice* to
be filed)
**BARON & BUDD, P.C.**
600 New Hampshire Ave. NW, 10th Floor
Washington, DC 20037
Tel: (202) 333-4562
jconnolly@baronbudd.com

Mark P. Pifko (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, CA 91436
Tel: (818) 839-2333
mpifko@baronbudd.com

Stephen A. Sheller (PA Bar No. 3270)
Lauren Sheller (PA Bar No. 314399)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com
lsheller@sheller.com

Gregory B. Heller (PA Bar No. 61130)
**MCLAUGHLIN & LAURICELLA, P.C.**
One Commerce Square
2005 Market Street, Suite 2300
Philadelphia, PA 19103
Tel: (267) 238-1211
gheller@best-lawyers.com

Andrew Sacks (PA Bar No. 41390)
John Weston (PA Bar No. 26314)
**SACKS WESTON, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

David Kairys (PA Bar No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118

*Counsel for Plaintiff*
*the City of Philadelphia*

122530147_1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:21-cv-04701-JS |
| | : | |
| CVS INDIANA, L.L.C., et al., | : | |
| | : | |
| Defendants. | : | |

_____:

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION

**DILWORTH PAXSON LLP**
Jerry R. DeSiderato (PA Bar No. 201097)
Timothy J. Ford (PA Bar No. 325290)
Silvio Trentalange (PA Bar No. 320606)
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com

**MCLAUGHLIN & LAURICELLA, P.C.**
Gregory B. Heller (PA Bar No. 61130)
One Commerce Square
2005 Market Street, Suite 2300
Philadelphia, PA 19103
Tel: (267) 238-1211
gheller@best-lawyers.com

**BARON & BUDD, P.C.**
Jennifer Fountain Connolly (*pro hac vice* to be filed)
600 New Hampshire Ave. NW, 10th Floor
Washington, DC 20037
Tel: (202) 333-4562
jconnolly@baronbudd.com

Dated: October 27, 2021

122530205_1

Plaintiff, the City of Philadelphia (the "City"), respectfully moves this Court to remand this action to the Pennsylvania Court of Common Pleas,[1] and submits this memorandum of law in support of remand and expedited treatment.

## I.    INTRODUCTION

The City of Philadelphia ("Plaintiff" or the "City") initiated legal action in the Pennsylvania Court of Common Pleas for Philadelphia County (this "Action") to redress the hazard to public health and safety caused by the opioid epidemic, to abate the nuisance in the City, and to recoup City monies that have been spent as a result of Defendants'[2] unlawful diversion of prescription opioids (hereinafter "opioids"). In response, Defendants CVS Indiana L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., and Pennsylvania CVS Pharmacy, L.L.C. ("CVS") removed the case (with the consent of other Defendants Acme Markets, Rite Aid, Walgreens, and Walmart) to this Court as step one of a multipronged ploy to secure an out-of-state transfer to the Multidistrict Litigation Court sitting in the United States District Court for the Northern District of Ohio (the "MDL Court"), where a current stay would prohibit the City

---

[1] The City brought this Action in the Philadelphia County Court of Common Pleas on September 28, 2021. On October 7, 2021, Defendant Walmart noticed the Action for coordination with the other Pennsylvania opioid litigation matters pending before the Delaware County Court of Common Pleas, consistent with the Delaware County court's March 26, 2018 Order and in accordance with Pa.R.C.P. 213.1. The Action, however, has not yet been formally transferred to the Delaware County court per the Philadelphia Court of Common Pleas docket and such transfer is impending.

[2] CVS Indiana L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., and Pennsylvania CVS Pharmacy, L.L.C.; Rite Aid Corporation; Rite Aid Hdqtrs. Corp.; Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center; Rite Aid Of Maryland, Inc.; Rite Aid Drug Palace, Inc.; Rite Aid Of Pennsylvania, LLC; Walgreen Co.; Walgreen Eastern Co., Inc.; Walgreen Boots Alliance, Inc.; Walmart Inc.; Wal-Mart Stores East, LP; Wal-Mart Stores East, LLC (improperly named as Wal-Mart Stores East, Inc.); Acme Markets, Inc. d/b/a Sav-On Pharmacy; and Albertson's LLC ("Defendants").

from even filing a motion for remand.[3] CVS did this intentionally to stall the City's case and delay it from getting to trial in Philadelphia. But on the merits, CVS's removal is wrong. Federal jurisdiction in this Court is lacking, removal was improvident, and CVS lacks an objectively reasonable basis for seeking removal.

To the best of the City's knowledge after thorough research, every other federal court that analyzed on the merits whether federal jurisdiction exists under federal question jurisdiction or the Class Action Fairness Act ("CAFA") on similar opioid-related claims brought by municipalities has denied the existence of federal jurisdiction and granted remand. Each transferor district court concluded, on claims similar to those before this Court, that these actions which may reference the Controlled Substances Act ("CSA") or some other federal statute do not present a substantial federal question nor are they "class actions" subject to removal under CAFA.[4] The same is true here.

---

[3] *See* Order Regarding Remands, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio Feb. 16, 2018) (entering moratorium on motions to remand); Case Management Order No. 1 at ¶ 6.g, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio April 11, 2018) ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties."); *see also Cty. of Anderson v. Rite Aid of S.C., Inc*., No. 8:18-CV-1947-BHH, 2018 WL 8800188, at \*2 (D.S.C. Aug. 20, 2018) ("The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.").

[4] *See, e.g., City of Holly Springs v. Johnson & Johnson*, 477 F. Supp. 3d 547 (N.D. Miss. 2020); *Town of Randolph v. Purdue Pharma L.P.*, No. 19-CV-10813-ADB, 2019 WL 2394253, at \*1 (D. Mass. June 6, 2019); *City of N. Las Vegas v. Walgreens Boots All., Inc*., No. 219CV2143JCMDJA, 2020 WL 109795, at \*1 (D. Nev. Jan. 9, 2020); *Delaware ex rel. Denn v. Purdue Pharma L.P*., No. 1:18-cv-00383, 2018 WL 1942363, at \*1 (D. Del. April 25, 2018); *West Virginia ex rel. Morrisey v. McKesson Corp*., No. 2:17-cv-03555 (S.D. W. Va. Feb. 15, 2018); *County of Anderson v. Rite Aid, et al*., No. 8:18-cv-1947 (D. S.C. August 20, 2018); *Weber County, Utah v. Purdue Pharma et al*., No. 1:18-cv-00089, 2018 WL 3747846, at \*1 (August 7, 2018); *Uintah County, Utah, et al. v. Purdue Pharma, et al*., No. 2:18-cv-00585, 2018 WL 3747847, at \*1 (August 7, 2018); *New Hampshire v. Purdue Pharma, et al.*, No. 17-cv-427-PB, 2018 WL 333824, at \*1 (D.N.H. Jan. 9, 2018); *State of W. Virginia ex rel. Morrisey v.*

First, no federal question jurisdiction exists over the City's claims in this Action because the claims are based purely on state law. The fact that the City's Complaint refers to Defendants' federal duty under the CSA to flag suspicious opioid orders and to prevent diversion is insufficient to support removal of the City's case to this Court. Mere references to federal law as a means of demonstrating a Defendant's failure to meet a standard of care under state law does not create federal question jurisdiction, especially when, as here, the references to federal law are far from the only bases asserted to establish the standard of care for the City's state-law only claims.

Second, removal under CAFA, 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453 (all federal statutory provisions contemplating removal of a class action proceeding) is improper. Like the governmental plaintiffs in the above-referenced cases, the City here is a single, municipal Plaintiff that instituted this Action against Defendants—all retail pharmacies conducting business in the City—asserting non-class action state claims in state court.[5] And like the plaintiffs in the above-referenced cases, the City, a single, municipal Plaintiff, asks the state court to enjoin the Defendants from irresponsibly flooding the community with excessive quantities of opioids. The City also seeks to recover past damages and an equitable order requiring Defendants to fund the abatement of the public nuisance they created. Similar cases are all in favor of remand and uniformly establish that there is federal jurisdiction under CAFA here. But even without these compelling precedents, removal under CAFA clearly fails because the

---

*McKesson Corp.*, No. CV 16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017) (these cited orders and opinions collectively attached as Exhibit A).

[5] The City's legal causes of action against Defendants are: (1) public nuisance; (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3; and (3) unjust enrichment.

statutory requirements for removal are not met: (1) this Action is clearly not a class action and (2) CAFA's 100-member requirement is not even close to being met.

Lastly, the Court should hear this matter on an expedited basis. If the Court does not act quickly to remand this Action to the Philadelphia Court of Common Pleas, the City will lose its practical ability to obtain remand. The undeviating practice of the United States Judicial Panel on Multidistrict Litigation (the "JPML") is to transfer every removed state court opioid action to the MDL Court, *regardless* of the strength of any pending remand motion and the plain absence of federal jurisdiction. The only way this Action can remain in state court is if this Court promptly grants a remand motion, before the JPML transfers the Action to the MDL Court.[6] CVS's improper removal thus creates a substantial risk that the City's case will be swept into the MDL Court's proceedings where it does not belong. And once before the MDL Court, it could take *years* to be spun out because the MDL Court has entered a moratorium on remand motions to focus on bellwether proceedings and other pressing issues. The MDL Court's indefinite stay of all actions not designated as "bellwether" cases severely prejudices the City from pursuing its case and may delay abatement of the opioid epidemic threatening the health and safety of its residents. CVS and the consenting Defendants indeed knew this when the Action was removed, as delayed justice is Defendants' end game. Such rash manipulation of the federal court system should be snuffed out instantly.

---

[6] *See* United States Judicial Panel on Multidistrict Litigation – Notice of Hearing Session on December 2, 2021, Case MDL No. 2179 at ECF No. 2064 (Oct. 18, 2021), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Hearing%20Session%20Filed_Dec%202021.pdf.

## II.    THE CITY'S COMPLAINT AND PROCEDURAL HISTORY

The City initiated this Action in the Philadelphia Court of Common Pleas on September 28, 2021, seeking abatement, restitution, civil penalties, disgorgement of unlawful profits, and damages in connection with the retail pharmacy Defendants' unlawful conduct regarding the sales and distribution of prescription opioids in Philadelphia.[7]

To be sure, the opioid epidemic in the City, as it did nationwide, did not unfold in a vacuum. The system regulating opioids was designed to protect the public health and safety from ubiquitous availability of highly addictive opioids, and the retail pharmacy Defendants—in conjunction with opioid manufacturers and distributors—deliberately thwarted that system. *See* Compl. ¶¶ 12-17. As distributors and dispensers of controlled substances, Defendants had, and continue to have, special responsibilities to ensure that opioid drugs did not get into the wrong hands, and to protect the communities they purport to serve. Despite having these responsibilities, and despite having unique knowledge of and access to data and other information to help them fulfill those responsibilities, Defendants failed to maintain effective controls over the diversion of prescription opioids. Instead, Defendants distributed, dispensed and sold far greater quantities of prescription opioids than they knew could be necessary for legitimate medical uses, while failing to report, and to take steps to halt, suspicious orders when they were identified. As a direct result of their conduct, the City has experienced both a flood of prescription opioids available for illicit use or sale and a population of patients physically and

---

[7] The City has also separately sued opioid manufacturers and distributors asserting similar state law claims as to those asserted in this Action. Those cases were coordinated with the other Pennsylvania opioid lawsuits and are currently pending in the Delaware County Court of Common Pleas. *See City of Philadelphia v. Allergan PLC, et al.* (Phila. Co. CCP, No. 180102718); *City of Philadelphia v. Par Pharmaceutical, Inc., et al.* (Phila. Co. CCP, No. 190606450); and (3) *City of Philadelphia v. Allergan Ltd., et al.* (Phila. Co. CCP, No. 210601660). None of the manufacturer or distributor defendants removed those matters to federal court.

psychologically dependent on them,[8] all while Defendants have made billions. *See* Compl. ¶ 2, 17.

In response, the City filed its Complaint against Defendants asserting exclusively state law causes of action. The three causes of action pled in the City's Complaint arise under Pennsylvania statutory or common law:

- Count I is a cause of action for public nuisance against all Defendants under Pennsylvania common law (*see* Compl. ¶¶ 656-684);

- Count II is a cause of action against all Defendants for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 to 201-9.3 (*see* Compl. ¶¶ 685-702); and

- Count III is a cause of action against all Defendants for unjust enrichment under Pennsylvania common law (*see* Compl. ¶¶ 703-720).

In support of these causes of action, the City pled, in part, that Defendants breached their legal duties under, *inter alia*, the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-1 *et seq*., and the Pennsylvania Wholesale Prescription Drug Distributors License Act, 63 P.S. § 391.1 *et seq*., to identify, monitor, detect, investigate, refuse to ship, and report suspicious orders of prescription opiates and to dispense opioids only for legitimate medical purposes. *See* Compl. ¶ 18.

The City brought this Action exclusively under the laws of Pennsylvania and did not assert any federal claims. The City, moreover, undeniably disavowed and disclaimed any claim or factual assertion in the Complaint that may be construed to have stated any claim for relief arising under federal law. Nor did the City bring this Action on behalf of a class or any group of

---

[8] In Philadelphia alone, there were 1,150 overdose deaths in 2019, of which 963 (84 percent) were opioid-related. The problem in Philadelphia only worsened in 2020, with the COVID-19 pandemic exacerbating the effects of the opioid epidemic, due to extreme levels of unemployment, social isolation and reduced access to behavioral health treatment and social services. Current data analyses suggestion that 2020 is the year with the highest annual number of fatal overdoses ever recorded in Philadelphia. *See* Compl. ¶¶ 7-8.

persons that can be construed as a class. This Action was brought solely by the City and the City is wholly independent of any claims that individual users of opioids may have against Defendants. *See* Compl. ¶¶ 23-24.

On October 26, 2021, CVS filed the Notice of Removal with consent of Defendants Acme Markets, Rite Aid, Walgreens, and Walmart. CVS erroneously based removal to this Court on federal question jurisdiction and CAFA. More so, if past is prologue, CVS will imminently move the Court to stay consideration of this remand motion to allow the JPML the opportunity to decide whether or not to make the "conditional" transfer of the Action to the MDL Court. In its expected motion to stay, CVS will most inevitably state that it seeks only a *short* stay to allow either: (1) the JPML to consider whether or not to finally transfer the Action to the MDL Court or (2) the MDL Court to decide this remand motion. These are misrepresentations and should not be believed. As noted, any transfer to the JPML (and by extension the MDL Court) will stop this Action in its tracks.[9]

## III.   ARGUMENT

### A.   This Court Retains Jurisdiction Over the City's Motion for Remand Despite the Potential for Transfer to the MDL Court.

A basic tenet of MDL procedure is that a putative transferor federal court does not suspend proceedings on the grounds that a potential MDL transfer has been initiated:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 [the law governing multidistrict litigation] does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.

Rule 2.1(d), Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation; *see also* Manual for Complex Litig. § 20.131 (4th ed. 2004) ("The transferor court should not . . .

___

[9] Should CVS file its expected motion to stay the City will address those arguments at greater length at that time.

7

postpone rulings on pending motions, or generally suspend further proceedings."); *City of N. Las Vegas*, 2020 WL 109795, at \*1 (denying defendant's motion for stay and granting remand in the City of Las Vegas's opioid action prior to the JPML transferring the case to the MDL Court).

The Pennsylvania Court of Common Pleas, and not a court in the Northern District of Ohio, is in the best position to analyze claims brought under Pennsylvania law for harms sustained by the City from Defendants' misconduct. This Court should therefore exercise its ability under the MDL Rules to apply black letter federal law on subject matter jurisdiction and remand this matter to state court before it becomes entangled and delayed indefinitely in the MDL Court.

**B.   To Avoid Remand, CVS Must Overcome the Heavy Presumption Against Removal Jurisdiction.**

CVS may remove this Action from state court to this Court if this Court has original jurisdiction over the Action and removal is not expressly prohibited by statute. 28 U.S.C. § 1441. The City's motion to remand under 28 U.S.C. § 1447 shall be granted if the standards for removal under 28 U.S.C. §§ 1441 and 1446 have not been met. *Hogan v. Raymond Corp.*, 777 F. Supp. 2d 906, 912 (W.D. Pa. 2011). CVS has the "heavy burden of showing that at all stages of the litigation the case is properly before the federal court." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). "This heavy burden is imposed to effectuate the strong presumption against removal jurisdiction." *Boomerang Recoveries, LLC v. Guy Carpenter & Co., LLC*, 182 F. Supp. 3d 212, 217 (E.D. Pa. 2016) (internal citations omitted). "If at any time before final judgment it appears that [this Court] lacks subject matter jurisdiction," this Court *must* remand the Action to state court. 28 U.S.C. § 1447(c). "Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown*, 575 F.3d at 326.

**C.     There Is No Basis for Removal of This Action So Remand Should Be Granted.**

There is no dispute that the City asserts only individual state-law causes of action against Defendants, and the Rite Aid and Acme Markets Defendants are not diverse. Lacking a federal claim and complete diversity, removal of this Action is simply inappropriate, because 28 U.S.C. § 1441(a) only permits removal of those actions over which federal courts have original jurisdiction. CVS's efforts to manufacture original jurisdiction before this Court do not withstand scrutiny.

**1.     No Federal Question Jurisdiction Exists Over the City's State Law Causes of Action.**

Where, as here, a complaint contains no federal cause of action, federal question jurisdiction can arise only if the "plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). This branch of federal question jurisdiction is a "special and small" category of cases providing an exceedingly narrow basis for removal. *MHA LLC v. HealthFirst, Inc*., 629 F. App'x 409, 412 (3d Cir. 2015); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005) (observing narrow exception for certain embedded federal issues). That basis is not present here.

As with opioid cases pending across the country, the City's Complaint describes Defendants' obligations under the CSA to monitor and report suspicious opioid shipments. *See* Compl. ¶¶ 75, 101, 142. While Defendants' failure to abide by these obligations lends support to the City's public nuisance claim, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Quite the opposite, "the violation of federal statutes and

9

regulations is commonly given negligence per se effect in state tort proceedings." *Grable*, 545 U.S. at 318 (internal quotation marks omitted).

Ignoring these precepts, CVS seeks to remove the City's opioid-related Complaint by invoking the CSA. But courts around the country have concluded that reference to the CSA in support of opioid-related state law based claims does not present a federal question.[10] And so it is here.

To begin with, contrary to CVS's characterization, the City's claims do not "necessarily depend" on any violation of the CSA, *see Empire Healthchoice*, 547 U.S. at 690, because the City alleges that Defendants have independent obligations under Pennsylvania law to prevent diversion of prescription opioids. *See* Compl. ¶ 95. These Pennsylvania based obligations arise under the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-1, *et seq*., and the Pennsylvania Wholesale Prescription Drug Distributors License Act, 63 P.S. § 391.1, *et seq*., which require Defendants to maintain controls, procedures, and security suitable to protect against theft and diversion of prescription opioid drugs. *Id*. Put simply, no CSA violation is required for the City to prevail on its purely state law based causes of action. *See Uintah Cty*., 2018 WL 3747847, at *6 (diversion claims did not "necessarily" depend on CSA where complaint alleged violations of "Utah statutes" and "common law"); *Delaware ex rel. Denn*, 2018 WL 1942363, at *2 (substantially same); *State of W. Virginia ex rel. Morrisey*, 2017 WL 357307, at *7 (remanding action to state court after finding violations of the West Virginia Controlled Substances Act by opioid distributors as raising state issues). More so, numerous

---

[10] *See, e.g., City of N. Las Vegas*, 2020 WL 109795, at *3; *Uintah Cty*., 2018 WL 3747847, at *9; *Weber Cty*., 2018 WL 3747846, at *9; *Dunaway v. Purdue Pharma L.P*., 2019 WL 2211670, at *7 (M.D. Tenn. May 22, 2019); *New Mexico ex rel. Balderas v. Purdue Pharma L.P*., 323 F. Supp. 3d 1242, 1253 (D.N.M. 2018); *Delaware ex rel. Denn*, 2018 WL 1942363, at *5; *State of W. Virginia ex rel. Morrisey*, 2017 WL 357307, at *7.

federal courts have similarly held that allegations that a party breached a duty created by federal law, *in support of state law claims*, are not sufficient to establish federal question jurisdiction. *See, e.g., Mays v. City of Flint, Mich*., 871 F.3d 437, 450 (6th Cir. 2017) (holding that state-law negligence claims arising out of violations of a federal statute do not merit federal jurisdiction); *Bennett v. Southwest Airlines Co*., 484 F.3d 907, 912 (7th Cir. 2007) ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law."); *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 689 (S.D. Ill. 2010) (noting that "a breach of a duty created by federal law is merely an element of a claim arising under state law"); *Connolly v. Union Pac. R.R. Co*., 453 F. Supp. 2d 1104, 1110 (E.D. Mo. 2006) (references to federal regulations were means to establish duty for negligence claim rather than assertion that defendant violated a federal statute and, thus, did not create a "substantial question of federal law.").

In addition, even if Defendants' CSA obligations are disputed, they are not "substantial" in the required sense that they are "significant to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 264 (2013). This is because the City is not seeking an interpretation of the CSA that "affects the manner in which the government operates" and any CSA-related determinations "will not be controlling in any other case" since they necessarily will concern "Defendants' conduct." *Delaware ex rel. Denn*, 2018 WL 1942363, at *4. Moreover, the CSA contains no private right of action, which "weighs heavily" against the substantiality of any CSA issues raised. As the United States Supreme Court has held, it would "flout, or at least undermine, congressional intent" to confer federal jurisdiction under statutes for which there is no federal cause of action. *See Merrell Dow Pharm*., 478 U.S. at 812; *see also Mays*, 871 F.3d at 450

11

("[W]here Congress has not created a private cause of action for violations of a federal statute, there is less likely to be a substantial interest in favor of removal.").

For precisely the same reason, the exercise of federal jurisdiction here would disrupt "congressionally approved federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. As courts have recognized, entertaining "garden variety" tort claims that invoke the CSA "could lead to a flood of state law claims entering federal courts." *Delaware ex rel. Denn*, 2018 WL 1942363, at *5. Having passed the CSA without inclusion of a private right of action, it is unlikely that Congress "meant to welcome" such cases into the federal system. *Id*.

As in all of the above-cited cases, the City's references to the CSA, along with numerous other state law bases for the requisite standard of care, are elements of state common law claims and not questions of federal law. The allegations that Defendants violated the obligations imposed by state and federal law are thus but one element of the numerous state common law and statutory claims asserted in the City's Complaint. And CVS has therefore not satisfied any of the requirements for exercising substantial federal question jurisdiction over this Action.

### 2. This Is Not a Class Action Removable Under the Class Action Fairness Act.

CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d). Declaring the case to be a class action in disguise, CVS contends that that all jurisdictional requirements are met and the case is properly removable. Even if that were the case (which it is not), CVS has still failed to satisfy CAFA's most fundamental requirements: showing that this case falls within CAFA's definition of a class action and that the City is not the real party in interest.

### a. The City's Complaint Does Not Meet the Definition of a Class Action.

CAFA was enacted as a means of protecting the due process rights of absent class members and was borne, at least in part, from the notion that state courts were not adequately protecting absent class members' rights. *See West Virginia ex rel. McGraw v. Comcast Corp*., 705 F. Supp. 2d 441, 448 (E.D. Pa. 2010) (reviewing legislative history of CAFA). CAFA's definition of a class action reflects this concern, limiting removal to state actions "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. (citing § 1332(d)(1)(B)).

CAFA cannot apply in this Action because the City is a single, municipal Plaintiff seeking to remedy the ongoing injury Defendants are causing to Philadelphia, and the City is seeking damages for the resources it needlessly expended as a result of Defendants' misconduct. Contrary to CVS's speculation, the City is not trying to collect personal damages on behalf of Philadelphia residents for their injuries caused by Defendants, nor does this Action prevent any Philadelphian from bringing an action against the same Defendants to recover for that resident's injuries. CVS, moreover, has not identified any Pennsylvania rule, statute, or other law under which the City would be authorized to pursue and collect damages on behalf of its residents.

Further, even if the City wanted to bring a class action under any Pennsylvania rule, statute, or other law on behalf of its residents (which it does not) for injuries resulting from Defendants' role in the opioid crisis, it could not. The City did not suffer a "similar injury" as its residents (i.e., the members of the fictional class). The City seeks damages for expenditures of public funds to respond to the serious public health and safety crisis involving the uptick of opioid abuse, addiction, morbidity, and mortality. The City's damages, for instance, are for

13

public safety expenditures (e.g. law enforcement, paramedics, incarceration, drug task forces and related overtime hours), costs for child protection and related social services, and costs for social services dedicated to addressing the public health crisis caused by the Defendants' reckless conduct. In addition, the City also seeks damages for the direct purchases of medically unnecessary opioids, and related emergency medical care and treatments of its employees and their families under the city's worker's compensation and health insurance plans. The City's residents, without question, did not, nor could not, suffer these types of injuries. The City's losses are indeed separate and apart from the personal injury losses suffered by residents who may have become addicted or their family members harmed.

CVS nevertheless insists that the City is acting as a representative for a class of residents and that, "Plaintiff's alleged injuries derive only as a result of its residents' alleged injuries . . . ." ECF No. 1 at 23 (Notice of Removal at ¶ 50). According to CVS, these residents should be considered the real parties in interest for purposes of CAFA's provisions. But this same argument has been offered before and was soundly rejected in similar opioid litigations. *See* Exhibit 1.

In *City of N. Las Vegas*, the district court dismissed defendant Walgreen's same CAFA removal argument with little effort, finding: "Because the city is pursuing—and will only be able to recover—its own damages, this case is not a class action and does not fall within the purview of CAFA." 2020 WL 109795, at \*5 (footnote omitted). Similarly, in *Town of Randolph*, the United States District Court for the District of Massachusetts ruled that removal under an alike CAFA argument lacked merit and was improper, because the removing defendant "presents a false dichotomy and fails to account for the possibility that Plaintiff may bring a suit . . . to recover damage to itself without bringing a class action." 2019 WL 2394253, at \*11; *see also*

14

*City of Holly Springs v. Johnson & Johnson*, 477 F. Supp. 3d 547, 554-55 (N.D. Miss. 2020) (considering the same CAFA removal basis and noting that, "[t]his court rejects this alleged basis for removal, since [plaintiff] has not asserted a class-based claim in this case and, instead, seeks to recover damages for itself. A number of district courts have rejected similar arguments in opioid cases containing complaints very similar to the one here, and this court believes that they were correct in doing so.") (citing the *City of N. Las Vegas* and *Town of Randolph* decisions) (alteration added).

An Eastern District of Virginia court also rejected the CAFA removal argument, finding that:

> This action is not a class action; it has only one plaintiff, Dinwiddie County. CAFA does not apply because Dinwiddie County is bringing a case on behalf of itself for the economic injuries and references in the Complaint about injuries to its residents do not transform the case into a class action. Further, Dinwiddie County did not file this action pursuant to any Virginia statute or rule that allows for representative claims or is otherwise similar to Rule 23. . . . Dinwiddie County seeks to vindicate only its interest in enforcing Virginia's laws rather than the injured citizens who may want to recover for their specific injuries. Thus, CAFA does not apply.

*Dinwiddie County v. Purdue Pharma, LP*, No. 3:19-cv-242, 2019 WL 2518130, *19-20 (E.D. Va. June 18, 2019) (internal citation omitted); *see also City of Galax, Virginia v. Purdue Pharma, L.P.*, No. 7:18-CV-00617, 2019 WL 653010, at *5 (W.D. Va. Feb. 14, 2019) (finding that CAFA did not provide a basis for removal because the city's claims were not brought under Rule 23, and the damages alleged by the city were for its own injury and did not equate to serving as a class representative for its citizens).

The same reasoning applies here. The claims in the City's Complaint do not have the predominance and superiority requirements under Federal Rule 23 (or the Pennsylvania corollary Rule 23). None of the hallmarks of Rule 23 class actions, such as adequacy, numerosity,

commonality, typicality, notice or opt-out right apply to this Action. Finally, the City did not suffer similar injuries as its residents. CVS has thus failed to identify a Pennsylvania rule, statute, or other law sufficiently similar to Rule 23 and has likewise failed to establish that the City is not the real party in interest. CVS also fails to cite a single case where CAFA was found to establish original federal jurisdiction in the opioid-related context. To the contrary, courts addressing the merits of this issue in municipal opioid cases have all flatly rejected this argument. Accordingly, this action is not properly removable under CAFA and is due to be remanded.

### b. The 100-Member Prong Required Under CAFA Does Not Exist.

A defendant seeking removal of an action to federal court under CAFA has "the burden of demonstrating that each of the three elements is met." *Langer v. Cap. One Auto Fin.*, No. CV 16-6130, 2019 WL 296620, at *3 (E.D. Pa. Jan. 23, 2019) (internal citation omitted). As relevant here, CAFA class action removal jurisdiction is not available where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. §1332(d)(5)(B). This Action, however, is brought on behalf of a class of one: the City of Philadelphia and it is seeking only its own damages and abatement of the nuisance.

CVS attempts to overcome this mathematical deficiency by asserting that the putative class "consists of thousands of residents" and at least hundreds injured. *See* ECF No. 1 at 24 (Notice of Removal ¶ 51). But this is more akin to a situation where there are multiple individual cases sharing common questions of law and fact (i.e., a "mass action" under CAFA's provisions) rather than a proper class action where a single named plaintiff sues on behalf of a class of similarly situated unnamed plaintiffs. As the United States Supreme Court has noted, CAFA's mass action provision says "'100 or more persons,' not '100 or more named or unnamed real parties in interest.' Had Congress intended the latter, it easily could have drafted language to that

16

effect." *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161, 169 (2014). The Supreme Court went on to hold that the mass action provision under CAFA "refers to actual named parties as opposed to unnamed real parties in interest." *Id*. at 173.

Since the City is the only named Plaintiff in this Action, inclusion of any individual citizens or any other similarly-situated Pennsylvania municipality in the Pennsylvania Coordinated Proceedings pending before the Delaware County Court of Common Pleas still does not come close to the 100-member requirement.

### D.    This Court Should Resolve the City's Motion for Remand on an Expedited Basis.

Under the present circumstances, the City could suffer severe prejudice if its Motion to Remand proceeds on a conventional timetable. Defendants have routinely sought to remove actions properly filed in state court because all federal opioid litigation is transferred to the MDL Court by the JPML. This strategy extends to—indeed it has targeted—removed cases in which motions to remand have been filed. *See, e.g., City of Holly Springs*, 477 F. Supp. 3d at 547; *City of N. Las Vegas*, 2020 WL 109795, at \*1; *Town of Randolph*, 2019 WL 2394253, at \*1.

Although the MDL Court is required to remand cases improperly removed, the MDL Court has entered a "moratorium" on all remand motions.  *See* Order Regarding Remands, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio Feb. 16, 2018) (entering moratorium on motions to remand). With certain bellwether trials already completed and others on the horizon (not to mention the multitude of other pressing matters before the MDL Court) it could take years before remand motions are addressed. This delay is not uncommon. There is a name for it: the "MDL Black Hole." *See Brewster v. A. W. Chesterton Co*., 2007 WL 1056774, at \*4 (N.D. Cal. Apr. 6, 2007); *see also* Wilson, Moccio, Fallon, The Future of Products Liability in America, 27 Wm. Mitchell L. Rev. 85, 104 (2000) ("[T]he MDL often becomes a black hole

from which cases, plaintiffs and defendants cannot escape."). For this reason, motions for remand "may be particularly appropriate for resolution before the [MDL] Panel acts on the motion to transfer." Manual for Complex Litigation § 20.131 (4th ed. 2004) (emphasis added). Expedition is particularly appropriate here given that removal is blatantly improper and any amount of preliminary scrutiny demonstrates that remand is required.

And even if there was no MDL Court, expeditious remand would be appropriate in this case. If the City is not remanded soon, there is substantial risk that this Action will need to proceed on a separate, and further delayed, track compared to other similar opioid related litigations in Pennsylvania. Because this Action seeks to remediate an immediate public health crisis, such delays impose the most severe form of prejudice.

Given the urgency and straightforward nature of this motion, the City respectfully requests that any opposition brief be filed no later than November 3, 2021, and that this Court then promptly set this matter for a hearing.

## IV.    CONCLUSION

Federal courts across the country have roundly rejected attempts by opioid defendants to improperly remove state court actions filed by cities and municipalities. The City of Philadelphia brought this Action claiming violations of, and seeking relief under, Pennsylvania law in order to recover for harms caused to Philadelphia and its citizens. For that reason, and the others set forth above, the City respectfully requests that this Court consider its Motion to Remand on an expedited basis and order this Action be remanded to the Pennsylvania Court of Common Pleas immediately.

18

Respectfully submitted,

By:_____

Diana Cortes, City Solicitor
(PA Bar No. 204274)
Renee Garcia, Head of Litigation
(PA Bar No. 315622)
Benjamin H. Field, Chief Deputy City
Solicitor (PA Bar No. 204569)
**CITY OF PHILADELPHIA LAW DEPT.**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
Tel: (215) 683-5000
diana.cortes@phila.gov
benjamin.field@phila.gov

Russell W. Budd (*pro hac vice* to be filed)
Christine C. Mansour (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Tel.: (214) 521-3605
rbudd@baronbudd.com
cmansour@baronbudd.com

Burton LeBlanc (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
2600 Citiplace Drive
Baton Rouge, LA 70808
Tel.: (225) 927-5441
bleblanc@baronbudd.com

Jennifer Fountain Connolly (*pro hac vice* to
be filed)
**BARON & BUDD, P.C.**
600 New Hampshire Ave. NW, 10th Floor
Washington, DC 20037
Tel: (202) 333-4562
jconnolly@baronbudd.com

Jerry R. DeSiderato (PA Bar No. 201097)
Timothy J. Ford (PA Bar No. 325290)
Silvio Trentalange (PA Bar No. 320606)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com

Stephen A. Sheller (PA Bar No. 3270)
Lauren Sheller (PA Bar No. 314399)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com
lsheller@sheller.com

Gregory B. Heller (PA Bar No. 61130)
**MCLAUGHLIN & LAURICELLA, P.C.**
One Commerce Square
2005 Market Street, Suite 2300
Philadelphia, PA 19103
Tel: (267) 238-1211
gheller@best-lawyers.com

David Kairys (PA Bar No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118

Mark P. Pifko (*pro hac vice* to be filed)
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, CA 91436
Tel: (818) 839-2333
mpifko@baronbudd.com

Andrew Sacks (PA Bar No. 41390)
John Weston (PA Bar No. 26314)
**SACKS WESTON, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

*Counsel for Plaintiff*
*the City of Philadelphia*

## CERTIFICATE OF SERVICE

I hereby certify that, on the below date, I caused a true and correct copy of the foregoing

Motion for Remand, Memorandum of Law in Support, and Proposed Order to be filed, served,

and made available for viewing and downloading from the CM/ECF System to all counsel of

record.

**DILWORTH PAXSON LLP**

/s/ Silvio Trentalange

Dated: October 27, 2021

# EXHIBIT A

*City of Holly Springs v. Johnson & Johnson*,
477 F. Supp. 3d 547 (N.D. Miss. 2020)

477 F.Supp.3d 547
United States District Court, N.D.
Mississippi, Oxford Division.

CITY OF HOLLY SPRINGS, Plaintiff

v.

JOHNSON & JOHNSON, et al., Defendants

CIVIL ACTION NO. 3:20-CV-205-M-P
|
Signed 08/06/2020

**Synopsis**

**Background:** City brought action against manufacturers and distributors of FDA-approved prescription opioid medications related to alleged harms stemming from abuse of those medications. Defendants removed the case to federal court on the basis of diversity jurisdiction. City moved to remand the case to the Circuit Court of Marshall County.

**Holdings:** The District Court, Michael P. Mills, J., held that:

[1] the District Court had the authority to rule on pending motions up to the time the Judicial Panel on Multidistrict Litigation were to issue a transfer order;

[2] the "Misjoinder and Nonjoinder of Parties" rule did not constitute authority to remove city's action against manufacturers and distributors of FDA-approved prescription opioid medications;

[3] allegations that doctors and pharmacists either knowingly or tacitly worked together with drug companies to profit from patients' opioid addictions did not present a case of egregious misjoinder so as to give rise to federal jurisdiction; and

[4] the Class Action Fairness Act (CAFA) did not provide a basis for removal from state court.

Motion granted.

West Headnotes (6)

**[1]** **Federal Courts** 🔑 Multi-District Litigation; Transfer for Pre-Trial Proceedings

For jurisdiction purposes, a Multidistrict Litigation (MDL) court is a federal court, and, if federal jurisdiction is lacking, then an MDL court on transfer from a federal district court likewise has no jurisdiction to hear the matter.

1 Cases that cite this headnote

**[2]** **Federal Courts** 🔑 Effect of transfer and subsequent proceedings

In action by city against manufacturers and distributors of FDA-approved prescription opioid medications related to alleged harms stemming from abuse of those medications, which defendant's removed to federal court on the basis of diversity jurisdiction, the district court had the authority to rule on pending motions until such time as the Judicial Panel on Multidistrict Litigation were to issue a transfer order. Judicial Panel on Multidistrict Litigation, Rule 2.1(d).

**[3]** **Removal of Cases** 🔑 Improper or collusive joinder of parties

"Misjoinder and Nonjoinder of Parties" rule did not constitute authority to remove city's action against manufacturers and distributors of FDA-approved prescription opioid medications related to alleged harms stemming from abuse of those medications from state court to federal court; to consider severance arguments before deciding whether a federal court has jurisdiction would be putting the cart before the horse, and while severance may be available as a remedy in cases where a fraudulent misjoinder is found which gives rise to federal jurisdiction, a court must first have jurisdiction over a case before it can sever it. Fed. R. Civ. P. 21.

**[4]**    **Removal of Cases** 👈 Diversity of Citizenship of Coplaintiffs and Codefendants

**Removal of Cases** 👈 Improper or collusive joinder of parties

In order to remove a case involving non-diverse parties from state court on the basis of diversity jurisdiction, a defendant needs an actual removal doctrine, such as fraudulent joinder or fraudulent misjoinder.

**[5]**    **Removal of Cases** 👈 Improper or collusive joinder of parties

Allegations that doctors and pharmacists either knowingly or tacitly worked together with drug companies to profit from patients' opioid addictions did not present a case of egregious misjoinder so as to give rise to federal removal jurisdiction; the main thrust of the city's complaint against manufacturers and distributors of FDA-approved prescription opioid medications was that there was a symbiotic relationship between drug manufacturers and local doctors and pharmacies, pursuant to which they sought to work together for their mutual financial benefit by promoting the excessive use of opioids, and by focusing on the promotion of the use of opioids, city raised allegations as to which there was greater similarity among the alleged actions of the various defendants than in the typical case in which a retailer is joined in a products liability action. Fed. R. Civ. P. 21.

**[6]**    **Removal of Cases** 👈 Constitutional and statutory provisions

In action by city against manufacturers and distributors of FDA-approved prescription opioid medications related to alleged harms stemming from abuse of those medications, the Class Action Fairness Act (CAFA) did not provide a basis for removal from state court, where city had not asserted a class-based claim, and instead, sought to recover damages for itself. 28 U.S.C. §§ 1332(d), 1453, and 1711–1715.

**Attorneys and Law Firms**

**\*548** Carlos Eugene Moore, Moore Law Group, PC, Grenada, MS, Shirley C. Byers, Byers Law Firm, LLC, Holly Springs, MS, for Plaintiff.

Chad R. Hutchinson, Kasey Mitchell Adams, Orlando Rodriquez Richmond, Sr., Butler Snow LLP, Ridgeland, MS, for Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc.

J. Carter Thompson, Jr., Samuel Deucalion Gregory, Baker Donelson Bearman Caldwell & Berkowitz, Jackson, MS, for Defendants Endo Health Solutions Inc., Endo Pharmaceuticals, Inc.

Stephen Lee Thomas, Simon T. Bailey, Bradley Arant Boult Cummings LLP, Jackson, MS, for Defendants Watson Laboratories, Inc., Actavis LLC, Cephalon, Inc., Actavis Pharma, Inc.

Robert L. Gibbs, Gibbs Travis PLLC, Jackson, MS, for Defendant Mckesson Corp.

W. Thomas McCraney, III, McRaney Montagnet & Quin & Noble PLLC, Ridgeland, MS, for Defendant Cardinal Health, Inc.

Edderek Linnel Cole, Thomas W. Tardy, III, Maron Marvel Bradley Anderson & Tardy LLC, Jackson, MS, for Defendant AmerisourceBergen Corporation.

Leo Joseph Carmody, Jr., Upchurch & Upchurch, P.A., Oxford, MS, for Defendant Walgreens Boots Alliance, Inc.

J. Cal Mayo, Jr., Kate Mauldin Embry, Mayo Mallette, PLLC, Oxford, MS, for Defendant CVS Health.

J. L. Wilson, IV, Upshaw, Williams, Biggers & Beckham, LLP, Greenwood, MS, for Defendant Cassandra Hawkins, M.D.

Bertis Wayne Williams, Josh R. Daniel, Webb Sanders & Williams, PLLC, Tupelo, MS, for Defendant Liddy Pharmacy.

Kent Elliot Smith, Smith Whaley, P.L.L.C., Holly Springs, MS, Marc A. Sorin, McNabb Bragorgos & Burgess & Sorin, PLLC, Memphis, TN, for Defendant Tyson Pharmacy.

**ORDER**

Michael P. Mills, UNITED STATES DISTRICT JUDGE

 **\*549**  This cause comes before this court on the motion of plaintiff City of Holly Springs, Mississippi to remand this case to the Circuit Court of Marshall County. Defendants have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This action is one of thousands of related lawsuits filed against manufacturers and distributors of FDA-approved prescription opioid medications on behalf of state and local governments and others relating to alleged harms stemming from abuse of these medications. On July 20, 2020, defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo") removed this case from the Circuit Court of Marshall County, Mississippi on the basis of diversity jurisdiction. The assertion of diversity jurisdiction in this case strikes this court as being quite aggressive, considering that Endo concedes that five defendants in this case—Liddy Pharmacy, Tyson Pharmacy, Robinson Pharmacy, Cassandra Hawkins, M.D., and Byhalia FamilyHealth Center—are non-diverse. Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the complaint, and, yet, diversity of citizenship is the only purported basis for removing this case to federal court.

In asserting that federal jurisdiction nevertheless exists, defendants argue that the citizenship of the non-diverse medical providers and pharmacies should be ignored because they are subject to severance under Rule 21 and because they have been fraudulently misjoined. Importantly, however, defendants make it clear that they do not actually desire a ruling from this court on whether it has jurisdiction over this case. To the contrary, defendants seek for this court to essentially sit back and do nothing, secure in the knowledge that a federal MDL court will soon take this case off its docket. [Notice of removal at 3. "Though any motion to remand would be without merit, all remand questions should be resolved by the MDL court."]

An MDL court has, in fact, issued a conditional transfer order in this case, and while a final transfer order has not been entered, it seems highly likely based on this court's prior experience that, if this case is not remanded, it will

eventually be transferred to the MDL court. A brief word about the MDL history of this case is in order. On December 5, 2017, the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation ("MDL") in the Northern District of Ohio for cases in which "cities, counties and states ... allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed ... these drugs to physicians, and/or (2) distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

 **[1]**  For jurisdiction purposes, the most important point for this court is that the MDL court is a *federal* court, and, if federal jurisdiction is lacking, then an MDL court likewise has no jurisdiction to hear this matter. Moreover, while defendants argue that the court should stay its ruling on the motion to remand, plaintiff urges that it be ruled upon expeditiously since federal jurisdiction is lacking and, if it is transferred to the MDL court, a ruling on the motion to remand by the MDL court could take years, if it ever occurs. Indeed,  **\*550**  a South Carolina district court noted in 2018 that "[t]he MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time." *County of Anderson v. Rite Aid of S.C., Inc.*, 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018). In its motion to remand, plaintiffs argue that this moratorium remains in effect, and defendants do not contest this assertion in their response. [Plaintiff's brief at 1, citing Order Regarding Remands, In re National Prescription Opiate Litigation, MDL 2804 (N.D. Ohio Feb. 16, 2018).]

 **[2]**  As discussed below, this court concludes that federal jurisdiction is lacking in this case, and it can discern serious fairness issues with a system whereby state court actions are improperly removed to federal court and then transferred to a federal court which has issued a moratorium on ruling on remand motions. This court believes that this is a situation which should be avoided if possible, and it has the ability to do so here. In so stating, this court notes that it has the authority to rule on pending motions at any time until the JPML issues a transfer order. *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 381 (D. Md. 2011) (*quoting Moore v. Wyeth–Ayerst Labs.*, 236 F. Supp. 2d 509, 511 (D. Md. 2002)). Indeed, the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order

"does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R. Proc. J.P.M.L. 2.1(d).

The district court in *Stephens* observed that "motions to remand are particularly appropriate for resolution by this court" because if it "does not have jurisdiction over th[e] matter, then neither will the MDL court." *Stephens*, 807 F.Supp.2d at 381. Consistent with this view, several federal district courts have recently granted motions to remand similar opioid cases before the JPML could transfer them to the MDL court.[1] Typical of these decisions is *County of Falls v. Purdue Pharma, LP*, in which a Texas district court rejected misjoinder arguments in an opioid case, writing that:

> This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. Falls County has asserted five causes of action against both the Manufacturer and Distributor Defendants. As discussed above, the claims against each set of defendants are hardly wholly distinct or lacking any real connection; on the contrary, they raise a host of common factual and legal issues. The Court therefore finds that Falls County did not fraudulently misjoin the Manufacturer Defendants and declines to sever the county's claims against them on that basis.

**\*551** *County of Falls*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at \*4 (W.D. Tex. Mar. 28, 2018). Similarly, a Maryland district court recently rejected severance and misjoinder arguments in an opioid case, finding that "the County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants." *Anne Arundel County, Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at \*5 (D. Md. Apr. 25, 2018).

**[3]**  For its part, this court is not irrevocably opposed to having an MDL court decide remand issues, particularly if there appears to be a strong argument for federal jurisdiction in a particular case. In such cases, there is, in fact, benefit to be gained by having a single federal court rule upon remand issues, so as to avoid inconsistent results among federal courts. In cases where federal jurisdiction is clearly lacking, however, this court believes that it has a duty to prevent a misuse of the removal process in order to create a lengthy detour into a federal MDL court and deprive a state court of the jurisdiction which rightfully belongs to it. This court concludes that this is one such case in which jurisdiction is clearly lacking, for reasons which it will presently explain.

There are several non-diverse defendants in this case, and, as noted previously, defendants' arguments that federal jurisdiction exists are based on severance and fraudulent misjoinder theories which this court finds to be unavailing in this case. As to the severance issue, defendants write in their Notice of Removal that:

> Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is nonetheless proper where non-diverse defendants are severable under Federal Rule of Procedure 21. Defendants are severable under Rule 21 if they are either unnecessary or dispensable under Rule 19, or if the claims against them are sufficiently distinct from claims against other defendants under Rule 20. Here, the non-diverse Pharmacy and Medical Provider Defendants should be severed on both grounds, each of which preserves diversity jurisdiction as to the Manufacturer and Distributor Defendants.

[Notice of Removal at 10]. In the court's view, defendants' severance arguments are circular, since it only has the authority to sever cases over which it has jurisdiction. Thus, for this court to consider Rule 21 severance arguments before deciding whether it even has jurisdiction over the case is putting the cart before the horse. True enough, severance may be available as a *remedy* in cases where a fraudulent misjoinder is found which gives rise to federal jurisdiction, but a court must, once again, have jurisdiction over a case before it can sever it.

In arguing that Rule 21 severance is effectively a removal doctrine, defendants cite no federal appellate precedent, and they instead rely upon a handful of district court opinions which this court does not believe withstand close scrutiny. For example, in a 2010 decision, a Louisiana district court wrote that:

> Plaintiffs argue that because some of the plaintiffs are not diverse and others do not meet the minimum jurisdictional threshold, the entire case must be remanded to Natchitoches Parish. However, FRCP 21 provides that the court may "drop" a party on any terms that are just. Since this provision is found in the Rule governing misjoinder, one might reason that the provision only applies where a party is found to have been misjoined. The courts have not limited its application to cases of misjoinder **\*552** and I find the provision to be applicable to this case where all parties are dispensable.

Birdwell v. XTO Energy, Inc., 2010 WL 517909, at *2 (W.D. La. Feb. 10, 2010). In a footnote, however, the only decision which the *Birdwell* court cited in support of its assertion that "courts" have applied Rule 21 severance outside of the misjoinder context is the Supreme Court's decision in *Newman-Green, Inc. v. Alfonzo-Larrain, et al.*, 490 U.S. 826, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989). In reality, however, *Newman-Green* was not a removed case at all, but was one which was *originally filed in federal court. Newman-Green,* 490 U.S. at 828, 109 S.Ct. 2218 ("Petitioner Newman–Green, Inc., an Illinois corporation, brought this state-law contract action in District Court ..."). It is thus plain that *Newman-Green* does not constitute authority for removing a case from state court, and this court concludes that the district court in *Birdwell* erred in treating it as such.

[4] It seems clear to this court that, in order to remove a case involving non-diverse parties on the basis of diversity jurisdiction, a defendant needs an actual *removal doctrine*, such as fraudulent joinder or fraudulent misjoinder. As defendants note in their brief, the requirements for obtaining severance under Rule 21 are not particularly difficult to meet, and it seems likely that, if district courts allowed removal in every case in which severance was available, then they would be flooded with removals. As discussed below, the Fifth Circuit has stopped short of expressly adopting the fraudulent misjoinder doctrine at all, and it greatly limited the fraudulent joinder doctrine in its 2004 decision in *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004). In the court's view, it defies reason to suggest that the same Fifth Circuit which has been so cautious about expanding removal jurisdiction would choose to open the floodgates to removals by treating Rule 21 itself as a basis for removing a case involving non-diverse parties to federal court.

This court finds therefore defendants' reliance upon Rule 21 as a basis for removing a case to be improper, and it regards their fraudulent misjoinder theory as presenting the proper context in which to decide the jurisdictional issues in this case. Fraudulent misjoinder was first recognized as a basis for diversity jurisdiction by the Eleventh Circuit Court of Appeals in *Tapscott v. Miss. Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996). In adopting the doctrine, the Eleventh Circuit wrote that:

Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."

*Tapscott,* 77 F.3d at 1360, *citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921).

In so writing, the Eleventh Circuit took care to emphasize that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Tapscott,* 77 F.3d at 1360. Thus, "egregious" was, and has remained, the watchword for determining whether a particular misjoinder was so improper as to constitute fraudulent misjoinder. It seems clear to this court that avoiding *Tapscott*'s "egregious" standard is the reason why defendants seek to entice it into analyzing the federal jurisdiction issues in this case under a garden-variety Rule 21 standard, but such would be improper. Indeed, this court notes that most federal **553** circuits have not even adopted the *Tapscott* misjoinder theory at all,[2] and they certainly do not recognize federal jurisdiction under the much more lenient analysis which would apply if Rule 21 set forth the governing standards in this context.

For its part, the Fifth Circuit has stopped short of adopting the fraudulent misjoinder doctrine, but it has clearly made favorable references to it. In *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002), for example, the Fifth Circuit wrote, in considering a case involving "seventeen plaintiffs ... who have nothing in common with each other," that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." For the most part, however, the Fifth Circuit's jurisprudence regarding fraudulent misjoinder is very sparse, and it has largely been left to Mississippi district courts to define the scope of the doctrine. Most district courts in this state have read *Benjamin Moore* as an indication that the Fifth Circuit would adopt the fraudulent misjoinder doctrine in an appropriate case, and they have accordingly tended to treat it as a potential ground for jurisdiction. A notable exception is Judge Brown, who recently declined to recognize fraudulent misjoinder as a basis for jurisdiction based on her conclusions that "the removal statute must be strictly construed" and that there is no "clear guidance from the Fifth Circuit or the United States Supreme Court on the application of the fraudulent misjoinder doctrine." *See Wilson v. State Farm Mut. Auto. Ins. Co.*, No. 4:17-cv-124, 2018 WL 1096836, at *2 (N.D. Miss. Feb. 28, 2018).

City of Holly Springs v. Johnson & Johnson, 477 F.Supp.3d 547 (2020)

107 Fed.R.Serv.3d 587

Judge Brown's view is a minority one among district judges in this circuit, but even the district courts which recognize the fraudulent misjoinder doctrine have tended to emphasize, as the Eleventh Circuit did in *Tapscott*, that it should only apply in cases of truly egregious misjoinder. In the 2009 decision of *Cooper v. AIG Claim Servs., Inc.*, 2009 WL 279101, at *2 (N.D. Miss. 2009), for example, Judge Aycock wrote that "[f]or this court to accept jurisdiction despite the misjoinder of a non-diverse defendant, the misjoinder must be egregious or grossly improper." Judge Barbour similarly wrote in *Sweeney v. Sherwin Williams Co.*, 304 F.Supp.2d 868, 872 (S.D. Miss. 2004) that "[t]o constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or egregious misjoinder." For its part, this court has likewise written that:

> Assuming arguendo that the Fifth Circuit would explicitly adopt the Tapscott rationale in an appropriate case, this court would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were "egregious." It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper.

*Walton v. Tower Loan of Miss.*, 338 F.Supp.2d 691, 695 (N.D. Miss. 2004). This court wrote extensively regarding its views relating to the fraudulent misjoinder doctrine in *Boddie v. Walker*, 312 F. Supp. 3d 541, 542–44 (N.D. Miss. 2018), and it continues to believe that the fraudulent misjoinder doctrine has its place, but only in rather extreme cases of misjoinder.

 **[5]**  With the foregoing considerations in mind, this court agrees with the numerous district courts which have concluded that allegations that doctors and pharmacists  **\*554**  either knowingly or tacitly worked together with drug companies to profit from patients' opioid addictions does not present a case of egregious misjoinder so as to give rise to federal jurisdiction. This court has previously quoted the conclusion of the district court in *Anne Arundel County* that "the County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants," *id.*, and this conclusion is hardly a unique one. A Maryland district court rejected similar misjoinder arguments in a 2018 decision, finding that "it is clear that the City's claims against the [Prescribing] Defendants are logically related to its claims against the Manufacturer and Distributor Defendants." *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018). That same year, a South Carolina district court rejected arguments

that prescribing doctors and pharmacists were fraudulently misjoined with opioid manufacturers, finding that the claims against all defendants "clearly have a logical relationship to one another and arise from the same or substantially related series of transactions and occurrences." *County of Anderson*, 2018 WL 8800188, at *6 (D.S.C. Aug. 20, 2018). This court finds these observations to be equally applicable in this case.

In finding defendants' misjoinder arguments to not be well taken, this court emphasizes that the main focus of the very lengthy complaint in this case is not on the manufacture or design aspects of the supply of opioids to consumers. If that were the case, then defendants might have a more credible argument that the claims against the local doctors and pharmacists were misjoined with those against the opioid manufacturers.[3] Rather, the main thrust of the complaint in this case is that there was a symbiotic relationship between drug manufacturers and local doctors and pharmacies, pursuant to which they sought to work together for their mutual financial benefit by promoting the excessive use of opioids. By focusing on the promotion of the use of opioids, plaintiffs raise allegations as to which there is greater similarity among the alleged actions of the various defendants than in the typical case in which a retailer is joined in a products liability action. True enough, the diverse manufacturers played a different role in the supply chain than the non-diverse doctors and pharmacies, but the complaint alleges that they were motivated by a similar state of mind, namely a willingness to overlook the harm caused by the oversupplying of opioids to consumers, in the interest of profits. That being the case, this court does not regard the fact that the various defendants played different roles in supplying opioid to consumers as precluding their lawful joinder under Rule 20, and it certainly does not consider that joinder to be sufficiently "egregious" to give rise to federal jurisdiction under *Tapscott*.

 **[6]**  As a final note, this court observes that defendant Walgreen Boots Alliance, Inc. filed a supplemental notice of removal, in which it argued that the Class Action Fairness Act (CAFA) provides an additional basis for removing this case. This court rejects this alleged basis for removal, since Holly Springs has not asserted a class-based claim in this case and, instead, seeks to recover damages for itself. A number of district courts have rejected similar arguments in opioid cases containing complaints very similar to the one here, and this court believes that they were correct  **\*555**  in doing so. *See, e.g. City of Las Vegas v. Purdue Pharma, L.P.*, 2020 WL 223614, at *5 (D. Nev. Jan. 15, 2020) ("Because the

city is pursuing—and will only be able to recover—its own damages, this case is not a class action and does not fall within the purview of CAFA."); *Town of Randolph v. Purdue Pharma L.P.*, No. 19-CV-10813-ADB, 2019 WL 2394253, at *4 (D. Mass. June 6, 2019)("The Complaint only claims losses suffered by Plaintiff and omits both class-specific allegations and a definition of a proposed class.") This court therefore joins the district courts which have rejected this creative, yet ultimately unavailing, theory for removing opioid cases filed by municipalities, and it finds that none of the alleged bases for federal jurisdiction in this case withstand scrutiny.

In their briefing, defendants concede that the jurisdictional issues in this case are virtually identical to those in numerous other opioid cases, and while they argue that this counsels in favor of having the MDL court decide all remand issues, this court does not agree. In the court's view, if federal jurisdiction is lacking in this case, then it makes little sense to transfer this case to a federal MDL court, where any motion to remand will likely languish on the docket for years. Reading between the lines of defendants' motion, it appears that such a lengthy delay is precisely what they hope to obtain by removing this

case, and this court can certainly understand why this prospect would be attractive to them. At the same time, ascertaining that this court actually has jurisdiction over a case is one of its fundamental responsibilities, and, in cases where it seems clear that this jurisdiction is lacking, it would be wrong to simply pass that case on to another federal court. For the reasons previously stated, this court agrees with the numerous federal judges who have found federal jurisdiction to be lacking in very similar opioid cases, it concludes that the motion to remand is due to be granted.

In light of the foregoing, this court concludes that diversity of citizenship is lacking in this case, and plaintiff's motion to remand it to the Circuit Court of Marshall County is hereby granted.

So ordered, this the 6th day of August, 2020.

**All Citations**

477 F.Supp.3d 547, 107 Fed.R.Serv.3d 587

---

Footnotes

1    *See, e.g. Estate of Brockel v. Purdue Pharma L.P.*, et al., 1:17-cv-00521-KU-MU, slip op. at 1 (S.D. Ala. Mar. 29, 2018); *Cty. of Delta v. Purdue Pharma L.P.*, et al., 4:18-cv-00095-ALM, slip op. at 9 (E.D. Tex. Mar. 22, 2018); *Cty. of Dallas v. Purdue Pharma L.P., et al.*, 3:18-cv-00426-M, slip op. at 7 (N.D. Tex. Mar. 7, 2018); *Brooke Cty. Comm'n, et al. v. Purdue Pharma L.P.*, et al., 5:18-cv-00009, slip op. at 17 (N.D.W. Va. Feb. 23, 2018) (granting Motions to Remand in eight cases brought by counties in West Virginia); *New Hampshire v. Purdue Pharma, et al.*, 1:17-cv-00427-PB, 2018 WL 333824, at *4 (D.N.H. Jan. 9, 2018); *Cty. of Hopkins v. Endo Health Solutions Inc., et al.*, 4:17-cv-00845-ALM, slip op. at 2 (E.D. Tex. Dec. 20, 2017); *Staubus v. Purdue Pharma, L.P., et al.*, 2:17-cv-122-TAV-CLC, 2017 WL 4767688, at *8 (E.D. Tenn. Oct. 20, 2017).

2    *See e.g. Palmer v. Davol, Inc.*, 2008 WL 5377991, *2 (D.R.I. Dec. 23, 2008) (discussing cases considering *Tapscott* and concluding that "federal courts ... have not given the doctrine a ringing endorsement.").

3    Even in this scenario, however, defendants would still be confronted with *Tapscott*'s "egregious" standard, which is, once again, an exceedingly difficult one to meet.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    7

*Town of Randolph v. Purdue Pharma L.P.*,
No. 19-CV-10813-ADB,
2019 WL 2394253 (D. Mass. June 6, 2019)

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 37 of 127

Town of Randolph v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2019)

2019 WL 2394253

2019 WL 2394253
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

TOWN OF RANDOLPH, Plaintiff,

v.

PURDUE PHARMA L.P. d/b/a
Purdue Pharma (Delaware) Limited
Partnership, et al., Defendants.

Civil Action No. 19-cv-10813-ADB
|
Signed 06/06/2019

**Attorneys and Law Firms**

Judith S. Scolnick, Scott & Scott, LLP, New York, NY, for
Plaintiff.

Conor B. O'Croinin, Pro Hac Vice, Zuckerman Spaeder, LLP,
Baltimore, MD, Clint D. Watts, Paul E. Dwyer, Jr., McElroy,
Deutsch, Mulvaney & Carpenter, LLP, Warwick, RI, for
Defendants CVS Health Corporation, CVS Pharmacy, Inc.

Andrew O'Connor, Brien T. O'Connor, Erin R. MacGowan,
Ropes & Gray LLP, Boston, MA, for Defendants
Mallinckrodt plc, Mallinckrodt LLC.

John O. Mirick, Mirick, O'Connell, DeMallie & Lougee,
Worcester, MA, for Defendant McKesson Corporation.

Caitlin M. Snydacker, Morgan, Lewis & Bockius LLP,
Boston, MA, for Defendants Rite Aid Corporation, Rite Aid
of Massachusetts, Inc.

Mark T. Knights, Nixon Peabody LLP, Manchester, NH,
Brian T. Kelly, Kurt M. Mullen, Nixon Peabody LLP, Boston,
MA, for Defendant John Kapoor.

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO REMAND**

BURROUGHS, D.J.

\*1 Before the Court is Plaintiff Town of Randolph's
("Plaintiff" or "Town of Randolph") motion to remand. [ECF
No. 14]. For the reasons set forth below, Plaintiff's motion to
remand is GRANTED. Accordingly, this action is remanded

to the Massachusetts Superior Court for Norfolk County
("Superior Court").

**I. BACKGROUND**

On March 22, 2019, the Town of Randolph filed an action
in Superior Court alleging a variety of state law claims
against Defendants,[1] all related to the prescribing of opioid
medications. See [ECF No. 1-1 ("Complaint" or "Compl.")].
Defendants are corporate entities and individuals involved in
the manufacture and distribution of opioid medications. See
[id. ¶¶ 3, 14]. The Complaint, in seven counts, alleges public
nuisance, common law fraud, negligent misrepresentation,
negligence, violations of Massachusetts General Laws ch.
93A, § 11 ("Chapter 93A"), unjust enrichment, and civil
conspiracy and seeks $ 10,000,000 in damages. [Id. ¶¶ 517–
81; id. at 192]. The damages sought are for "municipal
expenditures" resulting from the opioid epidemic, including
the costs of providing health, social, and law enforcement
services to residents of the Town of Randolph as well as
related costs from decreased tax revenue and diminished
property values. See [id. ¶¶ 448–516; id. at 192].

On April 22, 2019, Defendant CVS Health Corporation
("CVS") removed this action pursuant to the Class Action
Fairness Act ("CAFA").[2] [ECF No. 1 at 1 (citing 28 U.S.C.
§§ 1332(d)(2), 1453) ]. The notice of removal asserted that
the action "is removable under CAFA because the lawsuit
is essentially a class action lawsuit, litigation of this case in
federal court promotes CAFA's overall purpose, and CAFA's
statutory requirements are satisfied." [Id. at 2].

\*2 On May 2, 2019, the Judicial Panel on Multidistrict
Litigation ("JPML") issued a Conditional Transfer Order
conditionally transferring this action into the national opioid
multidistrict litigation administered by Judge Dan A. Polster
of the Northern District of Ohio ("MDL"). [ECF No. 14-2].
It is anticipated that the JPML will make a final decision on
transfer at its upcoming session on July 25, 2019 following
briefing on the Plaintiff's motion to vacate the conditional
transfer order. See [ECF No. 28-1 at 3–4 (providing JPML
briefing schedule) ].

On May 2, 2019, Plaintiff filed an emergency motion to
remand the case to Superior Court on the ground that this
Court lacks subject-matter jurisdiction over this action. See
[ECF No. 14]. CVS opposes remand and filed a motion to
stay on May 3, 2019 in which it argued for a temporary stay
pending a decision from the JPML on transfer. See [ECF Nos.

Town of Randolph v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2019)

2019 WL 2394253

17, 28]. Plaintiff opposed the motion to stay on May 10, 2019. [ECF No. 27].[3]

## II. LEGAL STANDARD

A defendant seeking removal bears the burden of showing that the federal court has jurisdiction. See *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Here, CVS argues that this Court has federal question jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(d)(2), which grants district courts original jurisdiction over class actions meeting four statutory requirements. See [ECF No. 1 ¶¶ 16–31]. First, to be removable under § 1332(d)(2), an action must be a "class action," which is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Second, there must be minimal diversity among the parties. Id. § 1332(d)(2). Third, the aggregated claims of individual class members must exceed $ 5 million, id. § 1332(d)(2), (6), and fourth, the proposed class must contain 100 or more members, id. § 1332(d)(5).

## III. DISCUSSION

The parties agree that the Complaint was not filed pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") or the Commonwealth's analogous rule, Massachusetts Rule of Civil Procedure 23, and dispute only whether any of the causes of action in the Complaint invoke a "similar State statute ... authorizing an action to be brought by 1 or more representative persons as a class action." See 28 U.S.C. § 1332(d)(1)(B); [ECF No. 1 ¶¶ 16–23; ECF No. 14 at 14–15].

CVS contends that "this case essentially is a class action" despite the fact that "Plaintiff has not alleged a putative class action on the face of its Complaint." [ECF No. 1 ¶ 17]. CVS interprets Plaintiff to be "acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misconduct." [Id. ¶ 21]. CVS supports its argument with caselaw holding that "where a lawsuit 'resembl[es] a class action' by asserting claims both individually and on behalf of others, CAFA removal has been found proper." [Id. ¶ 20 (quoting *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019)) ].

*3 Plaintiff responds that the instant action cannot qualify as a class action under § 1332(d) because the statute under which the action was brought, Chapter 93A, is not a "similar State

statute." See 28 U.S.C. § 1332(d)(1)(B); [ECF No. 14 at 14–15]. Plaintiff further argues that it would not be possible for it to bring a class action under Chapter 93A on behalf of the Town of Randolph's residents because the injuries suffered by Plaintiff differ from the injuries suffered by its residents. [ECF No. 14 at 15].

The only statutory claim in the Complaint, brought under Chapter 93A, alleges that certain of the Defendants made "false, misleading, and deceptive statements ... to prescribers, consumers, payors, and Plaintiff," "engaged in false, untrue, and misleading marketing.... with the intent that the Town of Randolph and its residents would rely on" the false statements, and should have reasonably foreseen that "such reliance would result in the use of opioid prescriptions ... that would cause death or severe harm to users and harm to the Town." [Compl. ¶¶ 568–73]. The alleged damages are losses sustained by the Town of Randolph. See [id. ¶ 573] (alleging that the Town of Randolph has "sustained ascertainable losses as a direct and proximate result" of certain of Defendants' unfair and deceptive business practices). The Town of Randolph states in the Complaint that it "brings this action on its own behalf and as *parens patriae* in the public interest on behalf of its residents." [Id. ¶ 45].

By its terms, Chapter 93A, which targets unfair and deceptive acts and practices, permits representative actions:

> Any persons entitled to bring such action [under ch. 93A, § 11] may, if the use or employment of the unfair method of competition or the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective, practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such a manner as the court directs.

Mass. Gen. Laws. ch. 93A, § 11. Because Chapter 93A clearly allows representative actions, or "an action ... brought by 1 or more representative persons as a class action," the Court must determine whether it also is "similar" to Rule 23. See 28 U.S.C. § 1332(d)(1)(B).

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 39 of 127

Town of Randolph v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2019)

2019 WL 2394253

To certify a class action under Rule 23, a plaintiff must demonstrate the following: that "the class is so numerous that joinder of all members is impracticable," that "there are questions of law or fact common to the class," that "claims or defenses of the representative parties are typical of the claims or defenses of the class," and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, a plaintiff who meets these threshold requirements must also demonstrate that he or she seeks to represent one of the three types of class actions delineated in Rule 23(b). Fed. R. Civ. P. 23(b). The most common class action type requires a court finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

**\*4** The question of whether Chapter 93A is "similar" to Rule 23 for purposes of 28 U.S.C. § 1332(d)(1)(B) has not been squarely addressed by the First Circuit. Since CAFA was enacted other courts in this district have been faced with remand motions in removed cases involving Chapter 93A claims, but the issue presented has typically concerned the amount-in-controversy requirement of CAFA. See, e.g., Williams v. Am. Honda Fin. Corp., 14-cv-12859-LTS, 2014 WL 5494914 (D. Mass. Oct. 30, 2014); Gomes v. Midland Funding, LLC, 839 F. Supp. 2d 417 (D. Mass. 2012); Mack v. Wells Fargo Bank, N.A., 11-cv-40020-FDS, 2011 WL 1344194 (D. Mass. Apr. 8, 2011). Historically, the complaints in these cases clearly identified the suit as a class action, but did not necessarily proceed expressly under Massachusetts Rule of Civil Procedure 23. See, e.g., Compl., Williams, No. 14-cv-12859-LTS (D. Mass. July 3, 2014), ECF No. 1-3; Compl., Gomes, No. 11-11053-NMG (D. Mass. June 13, 2011), ECF No. 1-1; First Am. Compl., Mack, No. 11-cv-40020-FDS (D. Mass. Jan. 24, 2011), ECF No. 1-4.

In cases since 2014, however, seemingly most of the cases removed under CAFA have expressly proceeded under both Chapter 93A and Massachusetts Rule of Civil Procedure 23, thus eliminating the "similar State statute" inquiry the Court faces here. See, e.g., Compl., Craw v. Hometown Am., LLC, No. 18-cv-12149-LTS (D. Mass. Oct. 15, 2018), ECF No. 1-1; Compl., Garick v. Mercedes-Benz USA, LLC, No. 17-cv-12042-IT (D. Mass. Oct. 18, 2017), ECF No. 1-1; Compl., Isaac v. Ashley Furniture Indus., Inc., No. 17-cv-11827-RGS, at \*1 (D. Mass. Sept. 22, 2017), ECF No. 1-1. The Court attributes some of this change in practice to the Massachusetts

Supreme Judicial Court ("SJC") decision in Bellermann v. Fitchburg Gas & Electric Light Co., 18 N.E.3d 1050 (Mass. 2014), which identified critical differences between the requirements for Chapter 93A and Rule 23 class actions. 18 N.E.3d 1050, 1059–60 (Mass. 2014).

In Bellermann, the SJC compared the requirements of class certification under Chapter 93A and Rule 23 and observed that:

> Although the requirements of [Federal R]ule 23(a) provide a "useful framework" for considering class certification under G.L. c. 93A, the similarity requirements of the rule do not equate with the requirement of G.L. c. 93A that the plaintiffs be "similarly situated" and have suffered a "similar injury" as members of the class they seek to represent. The class action provisions of G.L. c. 93A also have "a more mandatory tone" than does rule 23 in that they omit the predominance and superiority elements of rule 23(b), but a judge retains some discretion to consider these factors in determining whether putative class members are "similarly situated" and have suffered a "similar injury."

Id. (internal citations omitted). The SJC's interpretation of the requirements of Chapter 93A controls. See Needleman v. Bohlen, 602 F.2d 1, 3 (1st Cir. 1979) ("We, of course, are bound by the SJC's rulings on Massachusetts law."). Accordingly, the Court concludes that under Bellermann, this Chapter 93A action was not brought under a "similar State statute" to Rule 23 for purposes of removal under CAFA because, although Chapter 93A shares some similar language with Rule 23, it deviates in what is required for class certification.

Furthermore, even if the Court were to conclude that the class action provisions of Chapter 93A were sufficiently similar to Rule 23, Plaintiff has not attempted to invoke the class action provisions of Chapter 93A. See [Compl. ¶ 45]. This case is not a lawsuit that "resembl[es] a class action" by asserting claims both individually and on behalf of others. See Badeaux, 358 F. Supp. 3d at 567. The Complaint only claims losses suffered by Plaintiff and omits both class-specific allegations and a definition of a proposed class.[4]

**\*5** Plaintiff further evidences its intention not to proceed as a representative action by bringing this action as *parens patriae*. [Compl. ¶ 45]. CVS correctly observes in its opposition brief that the doctrine of *parens patriae* is not applicable to towns, like Plaintiff, which are political subdivisions of Massachusetts. See [ECF No. 28 at 8–9]; see also Town

Town of Randolph v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2019)

2019 WL 2394253

of Brookline v. Operation Rescue, 762 F. Supp. 1521, 1524 (D. Mass. 1991) ("*Parens patriae* standing is not available to political subdivisions of the state."). CVS does not challenge Plaintiff's standing to bring this action in light of the unavailability of *parens patriae*, but instead reasons that if this action is not a *parens patriae* suit, then it must be a class action. See [ECF No 28 at 10–11 ("But because Plaintiff cannot bring a *parens patriae* suit to vindicate quasi-sovereign interests, this action can only be construed as representative in nature. And the only viable type of representative lawsuit on behalf of a municipality's citizens is a 'class action' as defined by CAFA." (internal citations omitted)) ]. CVS's reasoning presents a false dichotomy and fails to account for the possibility that Plaintiff may bring a suit under Chapter 93A to recover damage to itself without bringing a class action. See Mass. Gen. Laws ch. 93A, § 11 (stating that those with standing to bring a claim under Section 11 "may ... bring the action on behalf of himself and such other similarly injured and situated persons" but not requiring it).

Allowing remand in the instant case is not in contravention of the seven actions CVS identifies in its notice of removal as "resembl[ing]" the instant action and "removed under CAFA and transferred to the Opiate MDL." [ECF No. 1 ¶ 5]. As Plaintiff observes, none of these actions addressed the CAFA claim on the merits. See [ECF No. 14 at 8 nn.11–13]. In three of the actions, the presiding judge, Chief Judge Edmund A. Sargus of the Southern District of Ohio, declined to rule on

the merits of the remand motion and deferred the decision to Judge Polster. See [id. at 8 n.11]. In three other actions, two presiding judges chose to stay the cases before them pending the JPML's decision on transfer. See [id. at 8 n.12]. In the seventh action, the case was transferred to the MDL before the plaintiff sought remand. See [id. at 8 n.13].[5]

This Court, squarely presented with the merits of removal under CAFA, concludes that it lacks jurisdiction over this action and that remand, rather than awaiting a decision on transfer from the JPML, is the appropriate course of action as well as the most efficient use of judicial resources.

**IV. CONCLUSION**
Accordingly, removal of this action was improper because the Court lacks subject-matter jurisdiction over the claims presented. Plaintiff's motion to remand [ECF No. 14] is, therefore, GRANTED. CVS's motion to stay [ECF No. 17] is DENIED as moot. This action is remanded to the Massachusetts Superior Court for Norfolk County.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2394253

Footnotes

1    The Defendants in this action are Purdue Pharma L.P. d/b/a Purdue Pharma (Delaware) Limited Partnership; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Collegium Pharmaceutical, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions, Inc.; Endo Pharmaceuticals, Inc.; Allergan PLC f/k/a Actavis PLC; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt PLC; Mallinckrodt LLC; Insys Therapeutics, Inc.; McKesson Corporation; Cardinal Health, Inc.; Amerisource Bergen Drug Corporation; CVS Health Corporation; CVS Pharmacy, Inc.; Rite Aid Corporation; Rite Aid of Massachusetts, Inc.; Walgreens Boots Alliance, Inc.; Walgreen Eastern Co., Inc.; Walgreens Mail Service, L.L.C.; Walgreens Of Massachusetts, L.L.C.; Walgreens Specialty Pharmacy, L.L.C.; Walmart, Inc.; Wal-Mart.Com USA L.L.C.; Wal-Mart Stores East, Inc.; Wal-Mart-Stores East, L.P.; John Kapoor; Richard Sackler; Theresa Sackler; Kathie Sackler; Jonathan Sackler; Mortimer D.A. Sackler, Beverly Sackler; David Sackler; and, Ilene Sackler Lefcourt. [Compl. at 1–2].

2    The following defendants had previously stipulated that they would not seek to remove the action to federal court: Rite Aid Corporation; Rite Aid of Massachusetts, Inc.; Walmart, Inc.; Wal-Mart.Com, USA L.L.C.; Wal-Mart Stores East, Inc.; Wal-Mart Stores East, L.P.; Walgreens Boots Alliance, Inc.; Walgreens Eastern Co., Inc.; Walgreens Mail Service, L.L.C.; Walgreens Of Massachusetts, L.L.C.; Walgreens Specialty Pharmacy, L.L.C. [ECF No. 26-5 at 79–82].

3    CVS's motion to stay [ECF No. 17] is denied as moot in light of the Court's adjudication of the motion to remand. If the Court had addressed the merits of the stay motion, it would have denied it for substantially the same reasons as articulated by Judge Hillman in Worcester v. Purdue Pharma, No. 18-cv-11958-TSH (D. Mass.). See [ECF No. 14-6 at

2019 WL 2394253

4–5 (observing that "a preliminary evaluation of jurisdiction may in fact better serve judicial economy" than awaiting a decision on transfer from the JPML where the absence of jurisdiction is clear) ].

4       Because Plaintiff only alleges damages suffered as a municipality, even assuming *arguendo* that removal of Chapter 93A class actions under CAFA was proper and that Plaintiff sought to proceed as a class, there is nothing in the Complaint to suggest that any such class has larger membership than one, which by itself would preclude removal under CAFA. See [ECF No. 14 at 15].

5       The fourteen additional cases identified by CVS in the papers submitted with its opposition brief also did not address the CAFA claim on the merits. See [ECF No. 28-6]. Thirteen of these cases were stayed pending a decision on transfer by the JMPL while a motion to remand was pending. See [id.]. One of the cases appears to have been removed to the Northern District of Ohio where it became part of the MDL; no motion to remand was filed. See [id. (listing City of Findlay v. Purdue Pharma L.P., et al., No. 1:18-op-46339 (N.D. Ohio)) ].

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*City of N. Las Vegas v. Walgreens Boots All., Inc*.,
No. 219CV2143JCMDJA,
2020 WL 109795 (D. Nev. Jan. 9, 2020)

2020 WL 109795
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

CITY OF NORTH LAS VEGAS, Plaintiff(s),

v.

WALGREENS BOOTS ALLIANCE,
INC., et al., Defendant(s).

Case No. 2:19-CV-2143 JCM (DJA)
|
Signed 01/09/2020

**Attorneys and Law Firms**

Micaela L. Rustia Moore, North Las Vegas City Attorney Office, North Las Vegas, NV, Richard Hy, Robert M. Adams, Robert T. Eglet, Eglet Prince, Las Vegas, NV, for Plaintiff(s).

Mark A. Hutchison, Todd L. Moody, Hutchison & Steffen, LLC, Las Vegas, NV, Alex J. Harris, Lester C. Houtz, Bartlit Beck LLP, Denver, CO, for Defendants Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc.

Philip M. Hymanson, Hymanson and Hymanson, Las Vegas, NV, for Defendants Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc.

Amanda C. Yen, Patricia K. Lundvall, McDonald Carano Wilson LLP, Las Vegas, NV, for Defendants Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Par Pharmaceutical, Inc., Par Pharmaceutical Companies, Inc.

Ryan William Leary, Steven E. Guinn, Laxalt & Nomura, Ltd., Reno, NV, for Defendants Mallinckrodt LLC, Specgx LLC.

Christopher D. Kircher, Jarrod L. Rickard, Lawrence J. Semenza, III, Semenza Kircher Rickard, Las Vegas, NV, for Defendant Amerisourcebergen Drug Corporation.

Abraham G. Smith, Daniel F. Polsenberg, J. Christopher Jorgensen, Joel D. Henriod, Lewis Roca Rothgerber Christie LLP, Las Vegas, NV, for Defendants Cardinal Health Inc., Cardinal Health 6 Inc., Cardinal Health Technologies LLC, Cardinal Health 414 LLC, Cardinal Health 200 LLC.

Rosa Solis-Rainey, Steve L. Morris, Morris Law Group, Las Vegas, NV, for Defendant McKesson Corporation.

John A. Hunt, Clark Hill, Las Vegas, NV, for Defendant Walmart Inc.

Mark J. Connot, Fox Rothschild, LLP, Las Vegas, NV, for Defendants CVS Health Corporation, CVS Pharmacy, Inc., CVS Indiana L.L.C., CVS RX Services, Inc., CVS Tennessee Distribution L.L.C.

Brian K. Terry, Thorndal Armstrong Delk, et al, Las Vegas, NV, for Defendant Masters Pharmaceutical, LLC.

Amanda Rosenthal, Patricia E. Daehnke, Collinson, Daehnke, Inlow & Greco, Las Vegas, NV, for Defendant C & R Pharmacy.

Jeffrey F. Barr, Ashcraft & Barr | LLP, Las Vegas, NV, for Defendant Aida B. Maxsam.

ORDER

JAMES C. MAHAN, UNITED STATES DISTRICT JUDGE

**\*1** Presently before the court is the City of North Las Vegas's ("the city") motion to remand to state court. (ECF No. 7). Defendants Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc. (collectively, "defendants") filed a response (ECF No. 19), to which the city replied (ECF No. 21).

Also before the court is defendants' motion for a temporary stay pending likely transfer to multidistrict litigation. (ECF No. 18). The city filed a response (ECF No. 20), to which defendants replied (ECF No. 23).

**I. Background**

The instant action arises from the national and widely-publicized opioid crisis. The city sued a variety of entities and individuals responsible for manufacturing, marketing, and selling prescription opioids, including Oxycontin, Vicodin, and Percocet and their generic counterparts. (ECF No. 1-2). Plaintiff groups the defendants into drug manufacturers (including the individual "Sackler defendants"), wholesale distributors, detailers, pharmacies, and health care providers. *Id.* at 10–22.

The city filed suit in the Eighth Judicial District Court, alleging public nuisance under Nevada and common law, negligent misrepresentation, and unjust enrichment against all defendants. *Id.* at 48–59, 61–62. It also alleges negligence against the distributors, pharmacies, and health care providers. *Id.* at 59–61. Finally, it brings a claim against certain defendants for alleged violations of Nevada's Racketeering Act. *Id.* at 63–89. Defendants timely removed the action to this court. (ECF No. 1).

This case is unextraordinary. In fact, more than 2,600 similar cases have been filed by government entities throughout the country. Many of those cases have been transferred to the Northern District of Ohio as part of the multidistrict litigation *In re National Prescription Opiate Litig.*, MDL No. 2804, (the "Opiate MDL").[1]

On December 26, 2019, the Judicial Panel on Multidistrict Litigation ("JPML") entered a conditional transfer order ("CTO"), finding that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." CTO-128, JPML Dkt. No. 6587. Defendants moved to stay the case until the JPML renders a final decision on whether to transfer this action to the Opiate MDL. (ECF No. 18).

## II. Legal Standard

### A. Remand
" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**\*2** Because the court's jurisdiction is limited by the constitution and 28 U.S.C. §§ 1331, 1332, "[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998)). Thus, "it is to be presumed that a cause lies outside

the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to state court. *Id.*

### B. Stay
Courts have broad discretion in managing their dockets. *See, e.g., Landis v. N. American Co.*, 299 U.S. 248, 254 (1936) (courts have the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants"). In exercising that discretion, courts are guided by the goals of securing the just, speedy, and inexpensive resolution of actions. *See* Fed. R. Civ. P. 1.

## III. Discussion
The first—and virtually dispositive—issue before the court is which motion it should consider first: the motion to remand or the motion to stay.[2] Other federal courts presiding over state-law opioid cases have grappled with these dueling motions to remand or stay.

Some courts consider and grant the motion to remand without addressing the motion to stay. *See, e.g., Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018); *Mayor and City Council of Baltimore v. Purdue Pharma, LP*, No. 18-800, 2018 WL 1963816, at *3 (D. Md. April 25, 2018) (collecting cases); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *1 (W.D. Tex. Mar. 28, 2018); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018).

Other courts do just the opposite, and rule on the motion to stay without reaching the merits of the motion to remand. *See, e.g., Bd. of Cty. Commissioners of Seminole Cty., Oklahoma v. Purdue Pharma L.P.*, No. CIV-18-372-JWL, 2019 WL

1474397, at *2 (E.D. Okla. Apr. 3, 2019); *Bd. of Cty. Commissioners of Pawnee Cty., Oklahoma v. Purdue Pharma L.P.*, No. 18-CV-459-GKF-FHM, 2018 WL 5973752, at *2 (N.D. Okla. Nov. 14, 2018); *Bd. of Cty. Commissioners of Delaware Cty., Oklahoma v. Purdue Pharma L.P.*, No. 18-CV-0460-CVE-JFJ, 2018 WL 5307623 (N.D. Okla. Oct. 26, 2018); *St. Bernard Parish Gov't v. Purdue Pharma LP, et al.*, 2:18-cv-02717-NJB-DEK, 2018 U.S. Dist. LEXIS 53054 (E.D. La. Mar. 29, 2018).

**\*3** Very few courts have addressed both motions. In *Dunaway v. Purdue Pharma L.P.*, however, Judge Aleta Trauger, from the Middle District of Tennessee, held as follows:

> [I]f this case is not properly in the federal courts (either because we lack jurisdiction or because the removal was defective), then the case *should* be on a different track. Different litigation under different laws in different states is inherent to the federal system embraced by the limited jurisdiction of the federal courts.

*Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 809 (M.D. Tenn. 2019) (emphasis in original). Judge Trauger's analysis in *Dunaway* is persuasive. When considering a pending motion to stay, Judge Trauger explained as follows:

> The interests of judicial economy are furthered by putting a case, as expeditiously as possible, in a court that has the jurisdiction to resolve it. It would not be a good use of judicial resources for the JPML to devote its time and attention to a transfer from one federal court to another, if the ultimate legal reality is that neither court has or can have jurisdiction. Nor would it be a good use of the transferee court's resources for that court to have to deal with the intake and processing of a case only to realize, later, that the case should be in state court. It would be a waste of judicial resources for a case to proceed in the federal courts if, ultimately, a federal court is not the appropriate court to consider plaintiffs' claims. This court can imagine few greater wastes of a court's resources than consideration of a case that the court has no jurisdiction to decide.

*Id.* at 809 (internal citation, quotation marks, and alteration omitted).

This court agrees with that analysis. Thus, the court finds it appropriate in this case to determine whether the court has jurisdiction before entertaining the motion to stay.

Defendants bear the burden of proving that the city's complaint contains a cause of action within this court's

jurisdiction. "In scrutinizing a complaint in search of a federal question, a court applies the well-pleaded complaint rule." *Ansley*, 340 F.3d at 861 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "For removal to be appropriate under the well-pleaded complaint rule, a federal question must appear on the face of a properly pleaded complaint." *Id.* (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). Federal question jurisdiction is present when a state-law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Potter v. Hughes*, 546 F.3d 1051, 1064 (9th Cir. 2008) (quoting *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008)) (alteration and internal quotation marks omitted).

Defendants removed this case on the basis of federal question jurisdiction. (ECF No. 1). Defendants contends that the complaint raises issues under the Controlled Substances Act ("CSA") such that the city's state-law claims are subject to federal jurisdiction. *Id.* Defendants also argue that this case is otherwise removable pursuant to the Class Action Fairness Act ("CAFA"). *Id.* The court will address each in turn.

### A. Removal pursuant to CSA

**\*4** Defendants argue that "[a]ll of the alleged causes of action against the [d]istributor [d]efendants arise from, and are dependent upon, purported violations of duties arising from the federal Controlled Substances Act ('CSA')." (ECF No. 1 at 3). The city contends that reference to the CSA "help[s] elucidate the standard of care that [d]efendants must meet under state law." (ECF No. 7 at 11). The city also points out that its complaint alleges several common- and state-law duties that defendants violated, including that they:

> knew or should have known that opioids were unreasonably dangerous and could cause addiction; knew or should have known that their marketing of opioid use would create a public nuisance; and as such they owe a nondelegable duty to the City of North Las Vegas to conform their behavior to the legal standard of reasonable conduct under the circumstances.

*Id.*

In order for a state law claim to raise a federal question, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Even if a complaint relies only on federal to establish a defendant's duty and standard of care—as elements of a common law negligence claim—it does not necessarily create a federal question. As the Supreme Court held in *Merrell Dow Pharm. Inc. v. Thompson*:

> A complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986). The Supreme Court reasoned that Congress's choice to provide "no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action **is insufficiently 'substantial' to confer federal-question jurisdiction**." *Id.* at 814 (emphasis added).

To be sure, defendants can argue that they owed no duty to the city. But such an argument does not create a federal question. Judge Trauger considered a similar argument under Tennessee law:

> McKesson argues that the state-law grounds for finding liability under the TDDLA are insufficient because none of the cited provisions specifically includes a duty to report and refuse to fill "suspicious orders." **The precise boundaries of the cited Tennessee law, however, present an issue of merits, not jurisdiction.** *See Uintah Cty., Utah v. Purdue Pharma, L.P.*, No. 2:18-CV-00585-RJS, 2018 WL 3747847, at \*6 (D. Utah Aug. 7, 2018) (rejecting same argument, regarding Utah law, because the validity of the independent state sources of the duties alleged were merits issues).

*Dunaway*, 391 F. Supp. 3d at 813 (emphasis added). Judge Du considered the same argument and remanded a nearly-identical case brought against defendants by the city of Reno. *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018). Judge Du held "that a federal issue is not necessarily raised because Reno can prevail on each of its claims by reference to the broad duty imposed by NAC § 453.400...." *Id.* at \*2.

Alternatively, Judge Du noted that "Reno could succeed on this claim by showing that Defendants breached a general duty of reasonable care as opposed to the specific duties imposed by either the CSA or NAC § 453.400." *Id.*

**\*5** First, the parties do not argue that the CSA provides a private, federal cause of action for violations thereof. (*See* ECF Nos. 7; 19; 21). Thus, invoking violations of the CSA as an element of a state-law claim—e.g., duty and standard of care in a negligence action—does not invoke federal question jurisdiction because it is "insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814.

Even to the extent that reference to the CSA may raise a possible federal question, it would not be "necessarily raised." The city in this case—like Reno did in its suit against defendants—alleges that defendants breached duties imposed by state statutes and regulations, specifically NAC § 453.400. The city may also successfully argue that defendants breached the general duty of reasonable care. Thus, defendants' arguments go to the merits of the city's claims, not to this court's jurisdiction.

Accordingly, the CSA is not proper grounds for the removal of this action. Unless removal was appropriate pursuant to CAFA, remand is warranted.

*B. Removal pursuant to CAFA*

Defendants believe that this case "is also removable under the Class Action Fairness Act ('CAFA')...." (ECF No. 1 at 15). Congress passed CAFA—and intended it to be broadly interpreted—"specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar [s]tate statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332.

When the aggregated amount in controversy in a class action exceeds \$5 million, there is "minimum diversity (any member of the class is a citizen of a state different from any defendant)," and the class size is over 100, subject matter jurisdiction exists under CAFA. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

Unlike removal of ordinary diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Id.* (quoting *Dart*

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)). Nonetheless, a defendant removing a case under CAFA "has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197.

Defendants summarily argue that the city's "claims and damages cannot be determined without a class of injured residents." (ECF No. 19 at 13). The city argues that defendants "ha[ve] failed to satisfy CAFA's most fundamental requirement—i.e., showing that this case falls within CAFA's definition of a class action and that the [city] is not the real party in interest." (ECF No. 7 at 17). The city represents that it "is not trying to collect personal damages on behalf of North Las Vegas residents for the residents' injuries...." *Id.* at 18. Instead, the city "is a single, municipal [p]laintiff seeking damages it incurred as a result of [d]efendants' misconduct." (ECF No. 21 at 10).

Because the city is pursuing—and will only be able to recover[3]—its own damages, this case is not a class action and does not fall within the purview of CAFA.

## IV. Conclusion

**\*6**  Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the city's motion to remand (ECF No. 7) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for a temporary stay pending likely transfer to multidistrict litigation (ECF No. 18) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the matter of *City of North Las Vegas v. Walgreens Boots Alliance, Inc. et al.*, case number 2:19-cv-02143-JCM-DJA, be, and the same hereby is, REMANDED.

## All Citations

Slip Copy, 2020 WL 109795

## Footnotes

1    The Judicial Panel on Multidistrict Litigation created the Opiate MDL on December 5, 2017, to handle cases in which "cities, counties and states ... allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed ... these drugs to physicians, and/or (2) distributors failed to monitor ... and report suspicious orders of prescription opiates." *In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

2    And, to be sure, this court maintains jurisdiction over both motions, the JPML's conditional transfer order notwithstanding. The Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R. Pro. JPML 2.1(d).

3    "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamers Local 343*, 94 F.3d 597, 600–601 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Thus, if defendants are concerned that the city will seek to recover damages on behalf of its citizens, the doctrine of judicial estoppel prevents the city from taking two inconsistent positions—one for jurisdictional purposes, the other for damages—to gain an unfair advantage in this litigation.

**End of Document**                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Delaware ex rel. Denn v. Purdue Pharma L.P*.,
No. 1:18-cv-00383
2018 WL 1942363 (D. Del. April 25, 2018)

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by City of Portland v. Purdue Pharma, LP, D.Me., November 28, 2018

2018 WL 1942363
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

State of DELAWARE, EX REL.
Matthew P. DENN, Attorney General
of the State of Delaware, Plaintiff,

v.

PURDUE PHARMA L.P., Purdue
Pharma Inc., The Purdue Frederick
Company, Endo Health Solutions Inc.,
Endo Pharmaceuticals Inc., McKesson
Corporation, Cardinal Health, Inc.,
Amerisourcebergen Corporation, Anda
Pharamaceuticals, Inc., H.D. Smith, LLC,
CVS Health Corporation, and Walgreens
Boots Alliance, Inc., Defendants.

Civil Action No. 1:18–383–RGA
|
Entered 04/25/2018

**Attorneys and Law Firms**

Ryan Patrick Newell, Kyle Evans Gay, Connolly Gallagher LLP, Wilmington, DE, Jenna A. Hudson, Pro Hac Vice, Mark A. Packman, Pro Hac Vice, Michael B. Rush, Pro Hac Vice, Richard W. Fields, Pro Hac Vice, Richard Shore, Pro Hac Vice, for Plaintiff.

Jenness Elizabeth Parker, Skadden, Arps, Slate Meagher & Flom LLP, Wilmington, DE, Daniel J. Brown, Hayley J. Reese, Michael P. Kelly, Steven P. Wood, McCarter & English, LLP, A. Thompson Bayliss, Michael A. Barlow, Abrams & Bayliss LLP, Jami B. Nimeroff, Brown McGarry Nimeroff LLC, Beth Moskow–Schnoll, Ballard Spahr LLP, Thomas E. Hanson, Jr., Barnes & Thornburg LLP, Daniel Bartley Rath, Jennifer L. Cree, Rebecca Lyn Butcher, Landis Rath & Cobb LLP, Wilmington, DE, for Defendants.

**Memorandum**

Richard G. Andrews, United States District Judge

**\*1** Plaintiff, State of Delaware, originally filed this suit in the Superior Court of the State of Delaware against manufacturers, distributors, and pharmacy retailers of prescription opioids, alleging state common law claims for their roles in Delaware's opioid crisis. (D.I. 8 at 1–2). Plaintiff asserted five claims against Defendant McKesson Corporation complaining of over-distribution of prescription opioids into Delaware, including Consumer Fraud ("Count V"), Public Nuisance ("Count VI"), Negligence ("Count VII"), Unjust Enrichment ("Count VIII"), and Civil Conspiracy ("Count DC"). (D.I. 1 at 2). McKesson filed a notice of removal to this Court, asserting this Court has federal question jurisdiction. (*Id.* at 4). McKesson asserts Plaintiff's claims "aris[e] solely [from duties] under the [F]ederal Controlled Substances Act" ("FCSA"). (D.I. 25 at 1).

Presently before the Court is Plaintiff's Motion to Remand for lack of federal subject matter jurisdiction. (D.I. 4). The issues have been fully briefed. (D.I. 8, 25, 27). For the reasons set forth below, Plaintiff's Motion is GRANTED, and this action will be remanded to Superior Court.

**I. BACKGROUND**

Plaintiff filed this action against Defendants in Superior Court of the State of Delaware on January 19, 2018.[1] (D.I. 1– 1 at p. 10). Plaintiff alleges that Defendants created and fueled Delaware's opioid crisis by, among other things, violating both the Delaware Controlled Substances Act and the Federal Controlled Substances Act. Plaintiff alleges McKesson diverted prescription opioids to an illegitimate channel, filled suspicious orders of opioids, and allowed opioids to be lost or stolen from inventory. (*Id.* at 19). Plaintiff alleges only state law claims based on theories of consumer fraud, nuisance, negligence, unjust enrichment, and civil conspiracy against McKesson.[2] (*Id.* at 114–27). Nonetheless, on March 9, 2018, McKesson filed a notice of removal and asserted this Court has federal question jurisdiction pursuant to the FCSA. (D.I. 1 at 4). Plaintiff filed amotion for remand on March 13, 2018. (D.I. 4).

**II. LEGAL STANDARD**

Section 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 251 (3d Cir. 2004) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ). If the case could not have been filed in federal court, then removal under § 1441 is improper and remand is appropriate. *Id.* Removal jurisdiction should be strictly construed against removal, and "all doubts [should] be resolved in favor of remand." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). The party seeking removal bears the burden of demonstrating that removal is proper. *Id.*

**\*2** To remove this case to federal district court, McKesson must establish that this Court has "original jurisdiction" due to the action "arising under" federal law.[3] 28 U.S.C. § 1331. Federal question jurisdiction is governed by the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Kline*, 386 F.3d at 251. This Court has federal question jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The "arising under" standard can implicate federal jurisdiction when "federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ). Alternatively, some state law claims can implicate federal jurisdiction when they "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). These cases are exemplary and constitute a "special and small category" of federal question jurisdiction. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). To determine whether a state-law claim implicates federal question jurisdiction, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods.*, 545 U.S. at 314. But, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

## III. DISCUSSION

Plaintiff's Motion to Remand is granted because McKesson fails to show that Plaintiff's state law claims implicate federal jurisdiction. Because there is no dispute that Plaintiff's claims arise under state law, McKesson must show that a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution without disrupting the federal-state balance approved by Congress. *Grable & Sons Metal Prods.*, 545 U.S. at 314.

### A. Necessarily Raised

A federal issue is "necessarily raised" when "vindication of a right under state law must necessarily turn on some construction of federal law." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (alterations omitted), *aff'd*, 136 S. Ct. 1562 (2016); *see Grable & Sons Metal Prods.*, 545 U.S. at 310–12 (quiet title claim alleging IRS failed to give adequate notice as defined by federal law). An example of a state claim necessarily raising a federal issue occurs when the determination of federal law is an essential element of the plaintiff's state law claim. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) (state law claims to forbid the defendant from investing in illegal securities where the source of illegality was that the federal bonds were issued unconstitutionally).

In this case, McKesson asserts that Plaintiff's claims are "affirmatively premised" on Defendants' violations of the FCSA. (D.I. 25 at 11). Thus, argues McKesson, federal issues are necessarily raised. (*Id.*). Specifically, McKesson notes that the claims are based on Defendants' failure to monitor for, report, and halt suspicious orders for prescription opioids, which are duties that arise under the FCSA. (*Id.*). Although a determination of whether Defendants violated the FCSA may occur while addressing Plaintiff's claims, there is also the possibility that the claims will be resolved without resolution of the federal issue at all. Based on the complaint, it is possible for the state law claims to be resolved solely under state law. *See Manning*, 772 F.3d at 163 ("We conclude it was improper for the District Court to foreclose the possibility that particular state causes of action could permit recovery solely under state law."). Although the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law. (D.I. 1–1).

**\*3** Specifically, in Count V, Plaintiff asserts that Distributor and Pharmacy Defendants "misrepresented material facts [or]

Delaware ex rel. Denn v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2018)

2018 WL 1942363

suppressed, concealed, or omitted material facts with the intent that consumers will rely thereon." (D.I. 1–1 at p. 114). McKesson asserts that the claim is based on federal law because Count V states Defendants "have violated Delaware and Federal laws and regulations by ... habitually filling suspicious or invalid orders for prescription opioids ... and failing to operate a system to disclose suspicious orders of controlled substances." (D.I. 25 at 7; D.I. 1–1 at p. 115). Count V, however, makes reference to far more than McKesson draws attention to. In Count V, Plaintiff proffers one theory that makes reference to federal law, but Plaintiff also asserts five other theories by which Defendants misrepresented or concealed facts, each of which is unrelated to federal law. Most importantly, Count V asserts that Defendants' misrepresentations and concealed facts constitute violations of § 2513(a) of the Delaware Consumer Fraud Act. (D.I. 1–1 at p. 116). Although Plaintiff asserts Defendants violated the Delaware Consumer Fraud Act by misrepresenting their alleged violations of federal law, Defendants may be found to have violated the Delaware Consumer Fraud Act on any of the other five theories Plaintiff asserted in the complaint. *See Manning*, 772 F.3d at 164 (noting no federal question is necessarily raised where plaintiff could prevail on state claims without the need to prove or establish a violation of federal law despite alleging both state and federal violations). The federal issue of whether Defendants misrepresented their compliance or violation of federal laws is not necessarily raised if Plaintiffs claim may proceed solely under one of the many state law theories Plaintiff asserted. For example, "[d]efendants .... misrepresented or concealed material facts that they ... have failed to implement effective business practices to guard against diversion of highly-addictive opioid products." (D.I. 1–1 at p. 114–15).

In Count VI, Plaintiff asserts a public nuisance claim alleging Defendants unreasonably interfered with "the common rights of the public" by distributing prescription opioids to unauthorized users in Delaware. (*Id.* at 116–17). McKesson asserts that this claim cannot be addressed without determining whether Defendants violated the FCSA regarding the reporting of "suspicious orders." (D.I. 25 at 12). Much like Count V, however, Plaintiff may prevail on this claim by showing Defendants violated the Delaware Controlled Substances Act ("DCSA"). *See* 16 Del. C. § 4735(b)(1)–(2) (requiring distributors to maintain "effective controls against diversion [into illegitimate] channels"). The DCSA requirements, although not as robust as FCSA requirements, are likely broad enough to encompass the allegations in the complaint and may avoid addressing the

federal statute.[4] Even more relevant, McKesson noted that Plaintiff must show that Defendants acted unreasonably or unlawfully, and based on Plaintiff's other allegations in Count VI, it is possible for Plaintiff to show Defendants acted unreasonably without reference to the FCSA. (D.I. 25 at 12; D.I. 1–1 at p. 116–20).

McKesson does not directly address whether Counts VII and IX necessarily raise federal issues (D.I. 25 at 10–12), but the analysis is essentially the same. Plaintiff alleges Defendants' conduct fell below the standard of care due to Defendants' violation of the FCSA and failure to report suspicious orders of prescription opioids. (D.I. 1–1 at p. 121). Although Plaintiff again references federal law in the claims, Plaintiff notes other standards of care, without reference to federal law, which Defendants' conduct may fall below. Even if the violation of a federal statute was an element of the state law negligence claim, "a complaint alleging a violation of a federal statute as an element of a state cause of action ... does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow*, 478 U.S. at 817 (holding state law claim using violation of federal law as negligence *per se* insufficient to invoke federal question jurisdiction). Because the claims do not rely solely on Defendants' violations of federal law, but rather rely on multiple alternative theories, I find that the federal issues in this case are not necessarily raised.[5]

### B. Actually Disputed

The parties disagree as to the meaning of "actually disputed." (D.I. 8 at 12; D.I. 25 at 12–13). Under the circumstances, I do not need to resolve the dispute, and will decline to do so.

### C. Substantiality

**\*4** Even assuming both that a federal issue is necessarily raised and that it is actually disputed, the claims in this case do not meet the substantiality requirement. Federal issues must be significant "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* "[S]omething more, demonstrating that the question is significant to the federal system as a whole, is needed." *Id.* at 264.

The determination of whether Defendants violated the FCSA is not substantial to the government as a whole. Most importantly, the parties do not seek to interpret the FCSA

**Delaware ex rel. Denn v. Purdue Pharma L.P., Not Reported in Fed. Supp. (2018)**

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 52 of 127

2018 WL 1942363

such that it affects the manner in which the government operates. This is unlike the case in *Grable & Sons*, where the parties sought to determine the meaning of "notice," which would substantially affect the way in which the IRS operated in satisfying its claims for delinquency. 545 U.S. at 315. Rather, the federal issues in this case will be substantial only to the parties. The outcome will not necessarily be dispositive of Plaintiff's claims and will not be controlling in any other case, as it will involve a factual determination relating to Defendants' conduct. *See Empire Healthchoice Assurance, Inc.*, 547 U.S. at 700 (noting that *Grable & Sons* was substantial because its resolution "would be controlling in numerous other cases"). The federal issues here are not a result of "the action of any federal department, agency, or service" but are a result of determining whether Defendants acted negligently or engaged in consumer fraud, nuisance, or civil conspiracy. *See id.*

Plaintiff argues that the absence of a federal cause of action in the FCSA precludes a finding of substantiality in this case. (D.I. 8 at 13–14). I disagree with Plaintiff on this point. As McKesson argues, a federal cause of action is not required to implicate federal question jurisdiction, and some federal issues may be sufficiently substantial despite the lack of a federal cause of action. *See Grable & Sons Metal Prods.*, 545 U.S. at 318 ("[T]he absence of a federal private right of action [i]s evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires.").

Nevertheless, the federal issues in this case—whether Distributor Defendants violated the FCSA—are not sufficiently substantial to the federal government as a whole. Much like the case in *Merrell Dow*, the absence of a federal cause of action weighs heavily in favor of remanding a state cause of action to state court. "[I]t would ... flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of [a] federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law." *Merrell Dow Pharm. Inc.*, 478 U.S. at 812. Thus, without more, the federal issues in this case are not sufficiently substantial to give rise to federal question jurisdiction.

### D. Federal and State Balance

Plaintiffs state law claims cannot be entertained without disrupting the division of labor between state and federal courts. A federal court may entertain a state cause of action under federal question jurisdiction if it can do so "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods.*, 545 U.S. at 314. Entertaining a claim would disrupt the congressionally-approved federal and state balance if it would lead to a "horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* at 318. Thus, in exercising jurisdiction over historically state cases, a court must be aware of the potential shift of state cases into federal courts. *See id.* at 319.

**\*5** In this case, the federal issues are merely elements of state common law claims. As stated in *Grable & Sons*, "if the [FCSA] standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." *Id.* at 318. This concern created the distinction between *Merrell Dow* and *Grable & Sons*. Here, much like *Merrell Dow*, entertaining "garden variety" state law tort claims resting on federal statutory violations, such as negligence and fraud, could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331. *See Merrell Dow Pharm.*, 478 U.S. at 812. Considering this potential threat to the structural division of labor between state and federal courts, in addition to the absence of a federal cause of action, it is "improbable that the Congress ... would have meant to welcome any state-law tort case implicating federal law" merely because the federal statutes create standards of care or elements to causes of action under state law. *Grable & Sons Metal Prods.*, 545 U.S. at 319. Thus, the Court cannot entertain Plaintiff's state law claims without disturbing the congressionally-approved division of labor between federal and state courts.

In sum, because I find the federal issues in this case are not necessarily raised, substantial, or possible to entertain without disrupting the congressionally-approved balance between state and federal courts, Plaintiff's state law claims do not "aris[e] under the Constitution, laws, or treaties of the United States" and do not confer federal question jurisdiction pursuant to § 1331.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED.

An appropriate order will be entered.

2018 WL 1942363

## Order

IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum, that:

1. Plaintiff's Motion to Remand (D.I. 4) is **GRANTED**.

2. This case is **REMANDED** to the Superior Court of Delaware.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1942363

## Footnotes

1    Plaintiff asserts claims alleging consumer fraud, public nuisance, negligence, and unjust enrichment against "Manufacturer Defendants" in Counts I–IV. (D.I. 1–1 at p. 105–14). Plaintiff asserts similar claims against "Distributor Defendants" (including McKesson) and the "Pharmacy Defendants" in Counts V–VIII. (*Id.* at 114–25). Plaintiff asserts a claim against all Defendants alleging civil conspiracy in Count IX. (*Id.* at 125–27). McKesson does not rely upon any claims other than the ones brought against it.

2    McKesson does not argue that unjust enrichment raises a federal question. (D.I. 25 at 7). Thus, I will only discuss Counts V, VI, VII, and IX.

3    This case turns on whether there is federal question jurisdiction pursuant to § 1331. McKesson does not argue for jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. (D.I. 1 at 4).

4    Although McKesson asserts that the requirement of reporting and halting suspicious orders is not found in the DCSA, the state court should be the court to make the determination of the reach of its law. *Manning*, 772 F.3d at 163 (citing *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986) ).

5    This result is not surprising. As the Court of Appeals has noted, "[o]nly a 'slim category' of cases satisfy the *Grable* test." *Manning*, 772 F.3d at 163.

**End of Document**                                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*West Virginia ex rel. Morrisey v. McKesson Corp.*, No. 2:17-cv-03555 (S.D. W. Va. Feb. 15, 2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA, et al.,

    **Plaintiffs,**

v.                                   CIVIL ACTION NO. 2:17-03555

MCKESSON CORPORATION,

    **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is the plaintiff's motion to remand. (ECF No. 4.) On October 31, 2017, the court held a hearing on that motion. For the reasons set forth below, the motion is **GRANTED**.[1]

## I. Background

Plaintiffs brought this case against defendant in the Circuit Court of Boone County, West Virginia, on January 8, 2016. In general terms, plaintiffs, on behalf of the State of West Virginia, allege that defendant McKesson Corporation, a national pharmaceutical drug distributor, did not take sufficient steps to monitor, report, and remedy purportedly suspicious shipments of

---

[1] On December 5, 2017, a Transfer Order was filed and the Judicial Panel on Multidistrict Litigation ("JPML") transferred this case to the United States District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings. <u>See</u> ECF Nos. 16 and 17. On December 27, 2017, the JPML remanded the matter to this court so that it might decide the pending remand motion. The Clerk reopened the matter on January 19, 2018.

pharmaceuticals into West Virginia.  Plaintiffs assert eight counts against McKesson:  violation of the West Virginia Consumer Credit and Protection Act (Count I); unfair methods of competition and/or unfair or deceptive acts or practices (Count II); violations of the West Virginia Uniform Controlled Substances Act ("WVCSA") requiring injunctive relief (Count III); negligent violation of the WVCSA (Count IV); intentional violation of the WVCSA (Count V); public nuisance (Count VI); negligence (Count VII); and unjust enrichment (Count VIII).

On February 23, 2016, defendant removed the case to federal court alleging federal question jurisdiction existed over this matter.  The case was assigned to Judge John T. Copenhaver, Jr. and assigned Civil Action No. 2:16-01772.  With respect to the assertion that federal question jurisdiction existed, Judge Copenhaver summarized McKesson's argument as follows:

> Defendant responds that plaintiffs' complaint can be reduced in substance to a theory of the case in which defendant breached a single "duty to refuse to fill suspicious orders" of certain pharmaceutical drugs.  <u>See, e.g.</u>, Def.'s Resp. to Pls.' Mot. to Remand 6 (hereinafter "Def.'s Resp.").  Defendant argues that the federal Controlled Substances Act ("federal CSA") alone can generate the duty that defendant is alleged to have breached.  Def.'s Resp. 10 ("No court could issue the requested instructions without specifically concluding that McKesson violated federal law—<u>i.e.</u>, the federal CSA.").  According to defendant, the duty to refuse to fill suspicious orders does not arise directly from the federal CSA; instead, it arises, if at all, in the federal CSA "as interpreted by [the Drug Enforcement Agency ("DEA")]" in two letters, written in 2006 and 2007, from the DEA to all registered distributors.  <u>Id.</u> 7, 15.

2

The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate . . . channels." <u>Masters Pharmaceuticals, Inc.</u>, Decision and Order, 80 Fed. Reg. 55,418, 55,421. The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted." <u>Masters Pharmaceuticals</u>, 80 Fed. Reg. at 55,421. Defendant argues that the two letters together generate a single duty to "refuse to fill suspicious orders" that forms the basis of all of plaintiffs' claims. <u>See, e.g.</u>, Def.'s Resp. 6. Defendant also contends that removal is improper only if plaintiffs rely exclusively on state law claims, which defendant says they allegedly do not. Rather, defendant asserts that federal claims are present on the face of the complaint in Counts III, IV, and V in the references to "United States laws and regulations," and that all of plaintiffs' claims depend on a substantial federal question.

<u>W. Va. ex rel. Morrisey v. McKesson Corp.</u>, Civil Action No. 16-1772, 2017 WL 357307, *4 (S.D.W. Va. Jan. 24, 2017).

On January 24, 2017, the court granted plaintiffs' motion to remand. Judge Copenhaver, after consideration of the test articulated by the Supreme Court in <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg.</u>, 545 U.S. 308 (2005)[2], concluded that plaintiffs' right to relief under state law did not require

---

[2] The <u>Grable</u> factors were recently summarized by the Supreme Court as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 568 U.S. 251, 258 (2013).

3

resolution of a substantial question of federal law in dispute between the parties. See id. at *8. As Judge Copenhaver noted:

> [P]laintiffs have not alleged violations of any specific federal laws or regulations, and no federal statute or regulation has emerged as an "essential element" of the underlying claim. Rather, plaintiffs have alleged numerous and substantial issues of state law in both their complaint and their motion. See, e.g., Compl. ¶¶ 377, 392; Pls.' Mot. 2.
>
> Consequently, it does not appear to the court that the only possible source of a putative duty to avoid filling suspicious orders lies in letters relied upon only by defendant, or that plaintiffs' claims necessarily rely on this duty. For one thing, there are no good reasons to believe that the letters have any binding effect upon distributors. Plaintiffs contend that "the DEA letter[s] do [ ] not create a binding effect upon distributors such as the defendant, and [are] to be construed as [ ] mere warning letter[s]." Pls.' Reply 7 (quotation marks omitted). Defendant concedes that the letters were not binding, but in apparent contradiction, insists that the letters generate an "obligation" that must be "heed[ed]." Def.'s Surreply to Pls.' Reply in Supp. of Mot. to Remand 2. To the extent that the letters prove relevant, their guidance may of course be marshalled in support of particular allegations. The agency itself, however, has found that the letters were "not intended to have binding effect but were simply warning letters." Masters Pharmaceuticals, 80 Fed. Reg. at 55,475. Of course, plaintiffs, not defendant, are "master[s] of the claim." Caterpillar, 482 U.S. at 392.
>
> Defendant cannot stipulate a single duty to refuse to fill suspicious orders, about which defendant is itself ambivalent, generated merely by DEA letters in order to bootstrap into federal court a complaint that alleges numerous specific state-law causes of action. "[F]ederal jurisdiction is disfavored for cases . . . which involve substantial questions of state as well as federal law." Bender, 623 F.3d at 1130. Plaintiffs have alleged violations of numerous West Virginia statutes and regulations, and the use of the catch-all "United States laws and regulations" does not operate

4

to unlock the federal courts to the claims at issue
here. Even were there some indication from the
complaint—which there is not—that federal agency
letters provided some binding and relevant duty, "any
doubts concerning the propriety of removal should be
resolved against removal." Barbour, 640 F.3d at 617.
Defendant bears the burden of quieting such doubts and
has not done so here. Strawn, 530 F.3d at 296.
Defendant has therefore not made out a case under
Grable that all of plaintiffs' claims necessarily hinge
on the duty to refuse to fill suspicious orders, and as
a consequence, the exercise of removal jurisdiction is
improper.

Id.

This case now finds itself in federal court for a second

time because, on July 7, 2017, McKesson once again removed the

case to this court. In state court, McKesson moved for judgment

on the pleadings asserting that McKesson has no duty under state

law to refuse to ship suspicious orders. See ECF No. 1 at 1-2

and 4. In its opposition to McKesson's motion, plaintiffs

asserted:

McKesson fully comprehends its obligation to never
distribute suspicious orders of addictive controlled
substances. This is an inherent part of its duty to
maintain effective controls and procedures to guard
against diversion of controlled substances, a duty that
would be rendered illusory if McKesson was not obliged
to refrain from distributing suspicious orders of
controlled substances. The Drug Enforcement
Administration (DEA) for many years has instructed
McKesson (and all other controlled substance
distributors) that as part of its duty to maintain
effective controls and procedures to guard against
diversion (the identical duty imposed by West Virginia
law), McKesson must not distribute suspicious orders of
controlled substances. DEA letters, Ex. 5. Because
West Virginia law identically requires effective
controls and procedures to guard against diversion, it
likewise bars McKesson from distributing suspicious

5

> orders. Thus, while this issue is not determinative of
> the State's claims, it is abundantly clear that by
> distributing suspicious orders of controlled substances
> into West Virginia, McKesson violates a legal duty owed
> to the State to refrain from doing so.

Notice of Removal at pp. 4-5 (ECF No. 1)(quoting Plaintiffs'
Response to McKesson's Motion for Judgment on the Pleadings in
Civil Action No. 16-C-1 at pp. 10-11 (June 30, 2017) (footnotes
omitted) (attached as Exhibit A to Notice of Removal)). In
support of their argument, plaintiffs attached the aforementioned
DEA letters to their opposition brief. ECF No. 1 at 11.

  According to McKesson, plaintiffs' position taken in state
court is directly at odds with the position they took before
Judge Copenhaver in order to obtain remand. Compare ECF No. 1 at
5 ("The Drug Enforcement Administration (DEA) for many years has
instructed McKesson . . . that as part of its duty to maintain
effective controls and procedures to guard against diversion (the
identical duty imposed by West Virginia law), McKesson must not
distribute suspicious orders of controlled substances. DEA
letters, Ex. 5") with ECF No. 17 at p. 7 in Civil Action No.
2:16-cv-01772 ("[T]he defendant would have this Court rule that
the DEA letter is now binding on distributors of controlled
substances, simply in an attempt to create a binding duty where
none exists. Because the federal Act does not purport [to
impose] a legal duty upon the defendant to refuse to ship
suspicious orders, it is impossible for [the federal CSA] to be

implicated simply because the State used the words "refuse" or "suspend" in its Amended Complaint. Thus, because the federal Act is not implicated, it also is not necessarily raised. . . ."); ECF No. 14 in Civil Action No. 2:16-cv-1772 at p. 18 ("The State can prove every element of every cause of action under state-based theories of law without relying on any federal standard or interpreting any federal law. Because the State can prove its right to relief without any court's ruling on a federal question, the State's claims do not "necessarily depend" on a "substantial" question of federal law."). Therefore, McKesson argues "[p]laintiffs' request to the state court to impose on McKesson a binding legal duty found in the DEA's interpretation of federal law in order to sustain their claims now establishes that at least some of Plaintiffs' claims depend on a substantial federal question" in turn creating federal jurisdiction. ECF No. 1 at 8.

## II. Legal Standard

It is well established that the party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied, Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)), and that any doubts about the propriety of removal are resolved in favor of state court jurisdiction and

remand, <u>Mulcahey</u>, 29 F.3d at 151 (citing <u>Shamrock Oil & Gas Corp.</u>
<u>v. Sheets</u>, 313 U.S. 100 (1941)).

"`Federal courts are courts of limited jurisdiction,'
possessing `only that power authorized by Constitution and
statute.'" <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013) (quoting
<u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377
(1994). As is relevant here, "[t]he district courts shall have
original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States." 28 U.S.C.
§ 1331. "[A] case can `arise[e] under' federal law in two ways.
Most directly, a case arises under federal law when federal law
creates the cause of action asserted. . . . But even where a
claim finds its origins in state rather than federal law. . . we
have identified a `special and small category' of cases in which
arising under jurisdiction still lies." <u>Gunn</u>, 568 U.S. at 257-58
(quoting <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S.
677, 699 (2006)).

> In outlining the contours of this slim category,
> we do not paint on a blank canvas. Unfortunately, the
> canvas looks like one that Jackson Pollock got to
> first.
>
> In an effort to bring some order to this unruly
> doctrine several Terms ago, we condensed our prior
> cases into the following inquiry: Does the "state-law
> claim necessarily raise a stated federal issue,
> actually disputed and substantial, which a federal
> forum may entertain without disturbing any
> congressionally approved balance of federal and state
> judicial responsibilities"? <u>Grable</u>, 545 U.S. at 314,
> 125 S. Ct. 2363. That is, federal jurisdiction over a

8

state law claim will lie if a federal issue is: (1)
necessarily raised, (2) actually disputed, (3)
substantial, and (4) capable of resolution in federal
court without disrupting the federal-state balance
approved by Congress.  Where all four of these
requirements are met, we held, jurisdiction is proper
because there is a "serious federal interest in
claiming the advantages thought to be inherent in a
federal forum," which can be vindicated without
disrupting Congress's intended division of labor
between state and federal courts."  Id. at 313-314, 125
S. Ct. 2363.

Id. at 258.  In the case discussed above, Grable & Sons Metal

Prods., Inc. v. Darue Eng'g and Mfg., 545 U.S. 308, 315 (2005),

the court found federal question jurisdiction existed over a

state quiet title action.  The Court has cautioned that "it takes

more than a federal element `to open the arising under' door."

Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701

(2006).

According to McKesson, this case falls under that "slim

category" of cases discussed by the Court in Grable.

### III.  Analysis

A.  *Motion to Remand*

The instant case is similar to the case of Merrell Dow

Pharm., Inc. v. Thompson, 478 U.S. 804 (1986).  In Merrell Dow,

plaintiffs sued a drug manufacturer in Ohio state court alleging

that the drug Bendectin caused birth defects.  Plaintiffs sought

recovery based on common law theories of negligence, breach of

warranty, strict liability, fraud, and gross negligence.  See id.

at 805.  Plaintiffs also alleged that Merrell Dow, the drug

9

manufacturer, misbranded Bendectin in violation of the federal Food, Drug, and Cosmetic Act ("FDCA") and that a violation of the FDCA created a rebuttable presumption of negligence.  See id. at 805-06.

Merrell Dow removed the cases to federal court, contending that the actions were "founded, in part, on an alleged claim arising under the laws of the United States." Id. at 806 (internal citation and quotation marks omitted).  The district court denied plaintiffs' motion to remand.  See id.  The United States Court of Appeals for the Sixth Circuit reversed.  See id. Acknowledging that the FDCA did not create or imply a private right of action for persons injured by violations of the Act, the court explained:

> Federal question jurisdiction would, thus, exist only if plaintiffs' right to relief depended necessarily on a substantial question of federal law.  Plaintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent.  Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' cause of action did not depend necessarily upon a question of federal law. Consequently, the causes of action did not arise under federal law and, therefore, were improperly removed to federal court.

Id. at 807 (quoting 766 F.2d at 1005, 1006 (1985)).

The Supreme Court affirmed.  See id.  In so doing, the Court framed the issue as "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for

10

violations of that federal standard makes the action one `arising under the Constitution, laws, or treaties of the United States.'" Id. at 805 (quoting 28 U.S.C. § 1331). The Court concluded "that a complaint alleging a violation of a federal statute as an element of a state cause of action, where Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim arising under the Constitution, laws, or treaties of the United States." Id. at 817.

Significantly, the Grable Court did not call the Merrell Dow holding into question. 545 U.S. at 305, 316. Acknowledging that the absence of a private cause of action in Merrell Dow was important to, but not dispositive of, the court's holding that federal jurisdiction did not exist, the Court specifically noted that "Merrell Dow disclaimed the adoption of any bright-line rule." Id. at 317. As such, the Court wrote

> Accordingly, Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected Merrell Dow's result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of

11

original filings and removal cases raising other state
claims with imbedded federal issues. For if the
federal labeling standard without a federal cause of
action could get a state claim into federal court, so
could any other federal standard without a federal
cause of action. And that would have meant a
tremendous number of cases.

One only needed to consider the treatment of
federal violations generally in garden variety state
tort law. . . . A general rule of exercising federal
jurisdiction over state claims resting on federal
mislabeling and other statutory violations would thus
have heralded a potentially enormous shift of
traditionally state cases into federal courts. . . .
In this situation, no welcome mat meant keep out.
<u>Merrell Dow</u>'s analysis thus fits within the framework
of examining the importance of having a federal forum
for the issue, and the consistency of such a forum with
Congress's intended division of labor between state and
federal courts.

<u>Id.</u> at 318-19.

With these principles in mind and having considered the

<u>Grable</u> factors, the court concludes that this case should be

remanded to state court once again. The earlier remand decision

focused extensively on whether the alleged federal issue was

necessarily raised and Judge Copenhaver rightly concluded that it

was not.[3] However, even if, for purposes of this motion, the

---

[3] Our appeals court has counseled that "a claim
`necessarily depends on a question of federal law only when <u>every</u>
legal theory supporting the claim requires the resolution of a
federal issue.'" <u>Pressl v. Appalachian Power Co.</u>, 842 F.3d 299,
304 (4th Cir. 2016) (quoting <u>Flying Pigs, LLC v. RRAJ
Franchising, LLC</u>, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in
original)).

While McKesson argues that this case rises and falls on
whether the DEA letters imposed a duty upon McKesson to refuse to
fill suspicious orders, the Complaint "alleges violations of

12

court assumes both that a federal issue is raised in this case and that it is actually disputed, that does not end the court's inquiry. Any alleged "duty" found in the DEA letters is not substantial because, as Judge Copenhaver observed, "plaintiff's complaint alleges violations of numerous duties implicated by state law" that do not depend on this disputed duty found in federal law.[4] <u>W. Va. ex rel. Morrisey v. McKesson Corp.</u>, Civil

_____

numerous duties implicated by state law." <u>W. Va. ex rel. Morrisey v. McKesson Corp.</u>, Civil Action No. 16-1772, 2017 WL 357307, *8 (S.D.W. Va. Jan. 24, 2017) ("For example, the West Virginia State Board of Pharmacy's rules require that `[a]ll registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances.' W. Va. C.S.R. 15-2-4.2.1. The same rules require that a `registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant.' W. Va. C.S.R. 15-2-4.4. As noted above, plaintiffs allege violations of numerous duties implicated by these regulations, including duties to `investigate, report, and cease fulfilling suspicious orders,' Compl. ¶ 24, to implement a `precise system of detecting and monitoring the supply of prescription medicine,' Compl. ¶ 346, `to adequately design and operate a system to disclose suspicious orders of controlled substances,' Compl. ¶ 406, and `to inform the State of suspicious orders,' <u>id.</u>"). Based on the foregoing, it is difficult for the court to conclude that <u>every</u> legal theory supporting plaintiffs' claims requires resolution of whether federal law – as interpreted in the DEA letters – created a duty to refuse to ship suspicious orders.

Furthermore, if McKesson is indeed correct in its assertion that plaintiffs' case rests <u>entirely</u> on the guidance found in the DEA letters, the case should be easily disposed of in state court given that plaintiffs have conceded more than once that those letters do not create a duty.

[4] <u>See, e.g.</u>, <u>W. Va. ex rel. Morrisey v. McKesson Corp.</u>, Civil Action No. 16-1772, 2017 WL 357307, *4 (S.D.W. Va. Jan. 24, 2017) at *7 ("The complaint cites on numerous occasions to West

13

Action No. 16-1772, 2017 WL 357307, *8 (S.D.W. Va. Jan. 24, 2017).

> Furthermore, as the Supreme Court has explained

> [I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will <u>always</u> be true when the state claim "necessarily raise[s]" a disputed federal issue, as <u>Grable</u> separately requires. The substantiality inquiry under <u>Grable</u> looks instead to the importance of the issue to the federal system as a whole.

<u>Gunn v. Minton</u>, 568 U.S. 251, 260 (2013) (emphasis in original). The federal courts have little interest in deciding cases involving West Virginia's Uniform Controlled Substances Act and West Virginia's negligence and public nuisance law, even if violation of a federal statute or standard is an element of those claims.

Finally, the court concludes that recognizing federal question jurisdiction over this case would disrupt the balance struck by Congress between state and federal judicial responsibilities. First the federal Controlled Substances Act

_____

Virginia regulations, which require, for example, that "[t]he registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances." W. Va. C.S.R. 15-2-4.4. In Count III, plaintiffs allege that defendant "failed to diligently identify and report suspicious orders it received," Compl. ¶ 366, and "failed to develop a system sufficient to adequately identify suspicious orders," <u>id.</u> ¶ 367. Counts IV and V allege violations of West Virginia statutory provisions, including violations of West Virginia Code § 60A-3-308, 60A-4-401 through 403, and 60A-8-1, et seq. 6, that cannot be reduced simply to a duty to avoid filling orders. <u>See, e.g.</u>, <u>id.</u> ¶¶ 377, 392.).

14

(CSA) does not create a private of action,[5] a factor which, even
under Grable, weighs heavily in favor of remanding this case to
state court. Even if the two DEA letters conferred a duty upon
McKesson to refuse to ship suspicious orders, this alone is
insufficient to bring traditional state law claims into federal
court. The federal courts have little interest in exercising
jurisdiction over claims alleging violation of state statutory
and common law – even where resolution of such claims might
involve a "federal element". To do so would shift a significant
number of garden-variety state law claims into a federal forum,
thereby upsetting the congressionally intended division between
state and federal courts.

B.   *Fees and Costs*

     Plaintiffs also seek reimbursement of the costs and fees
incurred in filing the instant motion. "An order remanding the
case may require payment of just costs and any actual expenses,
including attorney fees, incurred as a result of the removal."
28 U.S.C. § 1447(c). "[W]hen an objectively reasonable basis
[for removal] exists, fees should be denied." Martin v. Franklin
Capital Corp., 546 U.S. 132, 141 (2005). The court finds that
McKesson had a reasonable basis for removal in this case given
the representations made by plaintiffs in state court which, at

_____

     [5] See Welch v. Atmore Community Hosp., No. 17-11244, 704 F.
App'x 813, 816 (11th Cir. Aug. 18, 2017) (and authorities cited
therein).

times, seem to run counter to what they argued their first time in federal court.  Therefore, the court will not award costs and fees.

### III.  Conclusion

For the aforementioned reasons, the court hereby **GRANTS** plaintiff's motion to remand and the case is **REMANDED** to the Circuit Court of Boone County.  The motion for costs and fees is **DENIED.**

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record, the Clerk of the Circuit Court of Boone County, West Virginia, and the United States District Court for the Northern District of Ohio (MDL 2804).

It is **SO ORDERED** this 15th day of February, 2018.

ENTER:

David A. Faber
Senior United States District Judge

16

*County of Anderson v. Rite Aid, et al*.,
No. 8:18-cv-1947 (D. S.C. August 21, 2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| County of Anderson, | ) | |
| | ) | Case No. 8:18-cv-1947-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Rite Aid of South Carolina, Inc.; | ) | |
| Purdue Pharma, L.P.; Purdue Pharma, | ) | |
| Inc.; The Purdue Frederick Company, | ) | |
| Inc.; Teva Pharmaceuticals USA, Inc.; | ) | |
| Cephalon, Inc.; Johnson & Johnson; | ) | |
| Janssen Pharmaceuticals, Inc.; | ) | |
| Ortho-McNeil-Janssen | ) | |
| Pharmaceuticals, Inc. n/k/a Janssen | ) | |
| Pharmaceuticals, Inc.; Janssen | ) | |
| Pharmaceutica, Inc. n/k/a Janssen | ) | |
| Pharmaceuticals, Inc.; Endo Health | ) | |
| Solutions Inc.; Endo Pharmaceuticals, | ) | |
| Inc.; Allergan PLC f/k/a Actavis PLC; | ) | |
| Allergan Finance LLC f/k/a Actavis, Inc.; | ) | |
| Watson Laboratories, Inc.; Actavis | ) | |
| LLC; Actavis Pharma, Inc. f/k/a | ) | |
| Watson Pharma, Inc.; Insys | ) | |
| Therapeutics, Inc.; McKesson | ) | |
| Corporation; Cardinal Health, Inc.; | ) | |
| Amerisourcebergen Drug Corporation; | ) | |
| Smith Drug Company; Wal-Mart Stores | ) | |
| East, LP; Wal-Mart Stores, Inc.; | ) | |
| CVS Pharmacy, Inc.; CVS Health | ) | |
| Corporation; Leavis Sullivan; Beth Taylor; | ) | |
| Leigh Varnadore; Paul Kitchin; Aathirayen | ) | |
| Thiyagarajah; Spine and Pain Consultants, | ) | |
| PA; Mackie Walker; John Doe 1; John Doe 2; | ) | |
| John Doe 3; John Doe 4; Clinic 1; Clinic 2; | ) | |
| Clinic 3; Clinic 4; and Clinic 5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action was originally filed in the Court of Common Pleas, Tenth Judicial Circuit,

Anderson County, South Carolina, and removed by Defendants Johnson & Johnson and Janssen

Pharmaceutical, Inc. (the "Removing Defendants"), to this Court based on diversity jurisdiction

pursuant to 28 U.S.C. § 1332. (ECF No. 1 at 2.) Defendant McKesson Corporation
("McKesson") subsequently filed a Supplemental Notice of Removal, asserting federal question
jurisdiction pursuant to 28 U.S.C. § 1331 as additional grounds for removal. (ECF No. 22 at 2.)
This matter is before the Court on Plaintiff Anderson County's ("Plaintiff" or "Anderson
County") Emergency Motion to Remand and for an Expedited Ruling (ECF No. 8) and
Supplemental Emergency Motion to Remand and for an Expedited Ruling (ECF No. 24), as well
as Defendants Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Purdue Pharma L.P.;
Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.;
Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen
Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a
Janssen Pharmaceuticals, Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson
Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a
Watson Pharma, Inc.; and Insys Therapeutics, Inc.'s (collectively, the "Manufacturer
Defendants") Joint Motion to Stay (ECF No. 14). The Removing Defendants filed a response
opposing Plaintiff's first motion to remand (ECF No. 31), and Plaintiff filed a reply (ECF No.
33). Plaintiff filed a response opposing the motion to stay (ECF No. 26), and the Manufacturer
Defendants filed a reply (ECF No. 35). McKesson filed a response opposing Plaintiff's
supplemental motion to remand (ECF No. 40), and Plaintiff filed a reply (ECF No. 41). These
matters are ripe for adjudication and the Court now issues the following ruling.

## I. Background/Procedural History

In its 148-page Complaint (ECF No. 1-2), Anderson County alleges that it seeks to
address the opioid epidemic and recoup the costs it has incurred and continues to incur because
of it. (*Id.* ¶¶ 19, 23, 34, 37, 39-40, 128, 361-62, 431, 459, 492-93, 499, 536-537.) Plaintiff
asserts the following claims: (1) violations of the South Carolina Unfair Trade Practices Act

("SCUTPA"), S.C. Code Ann. §§ 39-5-10 et seq.; (2) common law fraud; (3) unjust enrichment; (4) negligence; (5) negligent misrepresentation; (6) public nuisance; (7) constructive fraud; and (8) negligence per se. (*Id.* ¶¶ 460-538.) Plaintiff names thirty-three (33) Defendants, and an additional four John Does and five unnamed clinics as Defendants. These Defendants can be grouped into four categories: (1) the Manufacturer Defendants; (2) the Distributor Defendants; (3) the Sales Representatives or Employee Defendants; and (4) the physicians and/or their clinics, which Plaintiff refers to as the "Dealer" Defendants in this action. Prior to the filing of this action, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the Northern District of Ohio for cases in which "cities, counties and states . . . allege that . . . manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. Dec. 5, 2017). A secondary theory common to the actions addressed in the MDL is that "distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates." *Id.*

The Removing Defendants removed this case on the basis of putative diversity jurisdiction. (ECF No. 1 at 2, 6-7). It is undisputed that Anderson County is a South Carolina citizen, that removal was timely, and that the amount in controversy exceeds $75,000. It is further undisputed that there are several non-diverse Defendants. However, the Removing Defendants contend that the unidentified John Does and the unnamed clinics should be ignored; that the Distributor and Dealer Defendants should be severed or, alternatively, are fraudulently misjoined; and that the Employee Defendants are fraudulently joined. (*See* ECF No. 1.) McKesson separately argues that removal is proper under 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the federal Controlled Substances Act, 21

U.S.C. § 801, *et seq.*, and its implementing regulations. (*See* ECF No. 22.)

Additionally, in both the response to the motion to remand (*see* ECF No. 31 at 7, 31) and the motion to stay (ECF No. 14), Defendants contend that the Court should stay this action, including any decision regarding remand, pending a final decision from the JPML on transfer to the MDL. The JPML has already issued a Conditional Transfer Order ("CTO") in this case, conditionally transferring this action to the MDL. (ECF No. 14-4.) The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.

## II. Standard

Federal courts are courts of limited jurisdiction, and a federal court must carefully guard to ensure that all cases before it are properly subject to its jurisdiction. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Moreover, because federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Federal diversity jurisdiction exists where the amount in controversy exceeds $75,000 and complete diversity is present. 28 U.S.C. § 1332. "In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship with any of the defendants." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] case can 'arise under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (internal modifications removed). "[E]ven where a claim finds its origins in state rather than federal law . . . we have identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* at 258. Under this

second category of "arising under" jurisdiction, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" (hereinafter, the "*Grable* factors"). *Id.*; *see Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). The burden of establishing federal jurisdiction rests upon the party seeking removal. *Mulcahey v. Columbia Organic Chem. Co. Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)) (holding that the burden is on the removing defendant to establish subject matter jurisdiction). If federal jurisdiction is doubtful, remand is necessary. *Id.*

## III.  Discussion

### A. Motion to Stay

In the motion to remand, Plaintiff contends that the Court lacks subject matter jurisdiction because complete diversity between the parties is not present. Plaintiff also contends that no federal question jurisdiction exists in this case. The Manufacturer Defendants filed a joint motion to stay, arguing that a brief stay in this case will promote the purpose of the MDL statute, conserve judicial and party resources, and avoid the risk of inconsistent rulings on common issues by allowing the MDL court to rule on Plaintiff's motion to remand. (*See* ECF No. 14.) In their response to the motion to remand, the Removing Defendants also ask the Court to stay this action pending transfer to the MDL, in order to allow the MDL court to decide the remand issue. (ECF No. 31 at 7, 31.) Collectively, the Defendants contend that, without a stay, they will be forced to engage in duplicative litigation of the same remand issues in multiple courts, which may result in inconsistent rulings. (ECF No. 14 at 5-10.) The Manufacturer Defendants also contend that continued proceedings in this case would result in expensive, duplicative, and potentially wasteful work, in the event that the JPML transfers this case to the MDL. (*Id.* at 5.)

Moreover, they claim that Anderson County will not be prejudiced by a stay, "which will be short and should not significantly impact the progress of these proceedings." (*Id.* at 7.)

Plaintiff responds that the Court should not stay a decision on the remand motion because the motion raises clear and straightforward challenges to federal jurisdiction that have already been resolved in favor of remand in parallel cases, and if this Court does not have jurisdiction, neither does the MDL court. (*See* ECF No. 26 at 5-6.) Furthermore, Plaintiff contends that no hardship or inequity is imposed on the Manufacturer Defendants by having to oppose the remand motions because the removal documents and remand issues pertaining to diversity jurisdiction in this case are virtually identical to those already decided by Judge Cain in *Cty. of Greenville v. Rite Aid of S.C., Inc.*, No. 6:18-cv-01085-TMC (D.S.C. May 21, 2018) ("*Greenville County* case"), and the undersigned in *Cty. of Spartanburg v. Rite Aid of S.C., Inc.*, No. 7:18-cv-01799-BHH (D.S.C. July 25, 2018) (*Spartanburg County* case), and because the federal question issue is neither complicated nor difficult, particularly having been fully litigated by McKesson in other jurisdictions and resolved in favor of remand. (*Id.* at 7-8.)

Whether to grant or deny a stay is a discretionary decision within the inherent powers of the Court "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Murphy-Pittman v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-3179-JFA, 2012 WL 6588697, at *1 (D.S.C. Dec. 17, 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When deciding a motion to stay, a court should consider: "'(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *Id.* (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).

The Court notes, as already noted in the *Greenville County* and *Spartanburg County* cases, that the MDL judge has stated that he is not going to act on any motions to remand, and

6

has placed a moratorium on filing such motions. The pendency of the CTO does not limit this Court's authority to rule on pending motions or suspend pretrial proceedings in this case. Rule 2.1(d), JPML Rules of Procedure. As was true in the *Greenville County* and *Spartanburg County* cases, the question of remand is particularly appropriate for this Court to resolve because if this Court lacks jurisdiction, then the MDL court lacks jurisdiction as well. *See, e.g.*, *Stephens v. Kaiser Foundation Health Plan*, 807 F. Supp. 2d 375, 381 (D. Md. 2011) (noting that the requirement of complete diversity applies to the district court and the MDL court alike). With regard to judicial economy, the Court finds that granting a stay would *not* promote judicial economy in any meaningful way because it would defer decision on the remand motion to the MDL court, even though virtually identical issues, concerning materially identical parties, have already been briefed, argued, and decided in this District. In fact, a very real opportunity for judicial economy would be lost because the *Greenville County* and *Spartanburg County* cases, with which the instant case will likely be consolidated for certain pretrial purposes,[1] would proceed in State Court while this case languished, with no indication of when questions of remand would ultimately be addressed en masse as part of the MDL. Respecting any hardship or inequity that might result to the Manufacturing Defendants if a stay is not granted, the Court finds that no such hardship would result. The Manufacturing Defendants have already expended the work necessary to litigate against remand–and lost repeatedly. By seeking a stay here, the Manufacturing Defendants are simply attempting to obtain a different result in a different forum–the MDL court. Moreover, the Court finds that there is a real risk that prejudice would result to Plaintiff if a stay was granted, because Anderson County would be forced to sit on the

---

[1] The Court notes that subsequent to the completion of briefing regarding remand issues, but prior the issuance of this order, the Supreme Court of South Carolina issued an order assigning "a single circuit judge to dispose of all matters arising out of the opiod litigation currently pending and to be filed in the state court system" in order to "promote the effective and expeditious disposition of this litigation through uniform rulings and . . . conserve the resources of the parties, their counsel, and the judiciary." (ECF No. 43-1.)

sidelines for an indeterminate period while its sister counties pursued identical claims against an almost identical list of Defendants, perhaps even resulting in preclusive effects against Plaintiff's own claims without Plaintiff meaningfully contributing to the course of the litigation. This is even more true now that the Supreme Court of South Carolina has established a consolidated proceeding for pending and future opiod litigation in South Carolina. (*See* n.1 *supra*.) Furthermore, as explained below, the Court finds that the jurisdictional questions at issue are relatively straightforward in this case. Accordingly, the motion to stay is denied and the Court finds it appropriate to rule on the motion to remand at this time.

### B. Fraudulent Joiner and Fraudulent Misjoinder

The Removing Defendants first argue that the motion to remand should be denied because of fraudulent joinder of the Employee Defendants. Alternatively, the Removing Defendants argues that the Court should apply the doctrine of fraudulent misjoinder to the Distributor and Dealer Defendants.

> Fraudulent joinder and fraudulent misjoinder are two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible cause of action against those defendants or where the complaint pled fraudulent facts. Fraudulent misjoinder, on the other hand, is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal.

*Wyatt v. Charleston Area Med. Ctr.*, 651 F. Supp. 2d 492, 496 (S.D.W. Va. 2009) (internal citations omitted). Unlike fraudulent joinder, fraudulent misjoinder has thus far not been widely recognized in the federal courts. Construction and Application of Fraudulent Misjoinder Exception to Complete Diversity Rule, 65 A.L.R. Fed. 2d 527 (originally published in 2012).

The Fourth Circuit Court of Appeals has not addressed this issue, and while some district courts

in South Carolina have applied it, other district courts in South Carolina have declined to adopt

it. *Palmetto Health All. v. S.C. Elec. & Gas Co.*, No. 3:11-cv-2060-JFA, 2011 WL 5027162, at

*2 (D.S.C. Oct. 21, 2011) (stating that "[a]bsent direction from the Fourth Circuit, this court

declines to adopt fraudulent misjoinder and accept jurisdiction over this case"); *Beaty v.*

*Bridgestone America's Tire Operations, LLC*, No. 4:10-3303-RBH, 2011 WL 939001, at *3

(D.S.C. Mar. 16, 2011) (declining to adopt and stating there is "no Fourth Circuit Court of

Appeals authority to place procedural misjoinder at the same level as fraudulent joinder").

> Not only are district courts split on whether to recognize and apply the doctrine of
> procedural misjoinder, they are also split on what standard applies in order to
> show misjoinder, and what result should be reached under the doctrine if it is
> applied. *See T.F. ex rel. Foster v. Pfizer, Inc.*, No. 12-1221, 2012 WL 3000229 at
> **2-3 (E.D. Mo. 2012)[Applying egregious standard discussed in *In re Prempro*];
> *Pate v. Boston Scientific Corp.*, No. 13-6321, 2013 WL 5743499 at *5 (C.D. Cal.
> Oct. 21, 2013)[Applying a clear and convincing standard, and finding that the
> Defendant's speculation [of improper joinder] does not rise to the level of clear
> and convincing evidence. "Even if the Court were to accept Defendant's assertion
> that it is not plausible–and it is not clear that accepting Defendant's assertion
> would be appropriate–it is still possible that Plaintiffs' claims do arise out of the
> same transactions or occurrences. Without any kind of showing that Plaintiffs' are
> improperly joined, Defendant's efforts do not meet the requisite clear and
> convincing evidence standard."]; *Walton v. Tower Loan*, 338 F. Supp. 2d 691,
> 695 (N.D. Miss. 2004)[requiring a "level of misjoinder that was not only
> improper, but grossly improper."]; *Asher v. Minn. Mining and Mfg. Co.*, No.
> 04-522, 2005 WL 1593941 at *7 (E.D. Ky. June 30, 2005)[applying the same
> "reasonable basis" standard for fraudulent misjoinder as in fraudulent joinder];
> *J.C. ex rel. Cook v. Pfizer, Inc.*, 2012 WL 4442518 at *4 (S.D.W. Va. 2012)[Not
> applying the egregious standard and instead finding that "Defendants must
> demonstrate that Plaintiffs fail to meet either or both of the requirements for
> joinder: 1) the claims must arise out of the same transaction, series of
> transactions, or occurrence; and 2) some question of law or fact common to all
> parties must be present."]; *but cf. Stinnete v. Medtronic Inc.*, No. 09-3854, 2010
> WL 767558 (S.D. Tex. Mar. 3, 2010)[Finding that "[a] multitude of cases around
> the country have held that plaintiffs were not properly joined when the only
> common link among them was a defective drug or medical device."].

*In re Lipitor (Atorvastatin Calcium) Mktg. Sales Practices & Prod. Liab. Litig.*, No. 2:14-mn-

2502-RMG, 2016 WL 7373887, at *19 (D.S.C. July 14, 2016).

### i. Fraudulent Joinder

The fraudulent joinder doctrine enables a district court to "'disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of [the] plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.

*AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (alterations, internal quotation marks, and citation omitted). "To establish fraudulent joinder, the removing party must show either: (1) outright fraud in the plaintiff's pleading of jurisdictional facts, or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Toney v. LaSalle Bank Nat. Ass'n*, 36 F. Supp. 3d 657, 663 (D.S.C. 2014) (*citing Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 654 (D.S.C. 2006)).

"The party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim [against the non-diverse defendant] even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The Fourth Circuit Court of Appeals has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted). "To defeat an allegation of fraudulent joinder, the plaintiff need establish 'only a slight possibility of a right to relief.'" *Hughes v. Wells Fargo Bank, N.A.*, 617 Fed. App'x 261, 264 (4th Cir. 2015) (*quoting Mayes*, 198 F.3d at 464). Moreover, in

10

evaluating whether an attempted joinder is fraudulent, a court is not bound by the allegations of the complaint but can "consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464.  Additionally, this Court is required to "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  *Hartley*, 187 F.3d at 425.

The Removing Defendants do not argue that Anderson County does not have or has not alleged a claim against the Employee Defendants. Rather, the Removing Defendants argue that Anderson County has no real intention of obtaining a judgment against the Employee Defendants. (ECF No. 1 at 10-13.) As did the removing defendants in the *Greenville County* and *Spartanburg County* cases, the Removing Defendants here rely on the holding in *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). (*See* ECF No. 31 at 14, 16.) But in *Wilson*, the Supreme Court noted that the defendant was joined "without any reasonable basis in fact *and* without any purpose to prosecute the cause in good faith." 257 U.S. at 98 (emphasis added). Further in *Wilson*, the notice of removal asserted that the non-diverse defendant "was not in any degree whatsoever responsible" for the plaintiff's injuries and "did no act or deed which caused or contributed to such injuries." *Id.* at 94, 98.

The Removing Defendants also rely on nonbinding case law from district courts or other circuits, which have held that a defendant is fraudulently joined where a plaintiff has no intention of prosecuting the claim or seeking a joint judgment. The Fourth Circuit Court of Appeals has used the phrase "'no real intention to get a joint judgment'" on at least one occasion when discussing fraudulent joinder. *See Aids Counseling and Testing Centers v. Group W. Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979)). However, in *Aids Counseling*, the Fourth Circuit noted that a joinder was fraudulent where no such intention existed *and* where there is no colorable ground for claiming

that such an intention exists. *Id.* (stating that "a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming" (internal modifications, quotation marks, and citation removed)); *see Willard v. United Parcel Servc.*, 413 F. Supp. 2d 593, 599 (M.D.N.C. 2006) (noting that *Aids Counseling* addressed both factors). *See also Englemen v. Johnson & Johnson*, No. 5:10-CV-173-BO, 2011 WL 52364, at *2 (E.D.N.C. Jan. 5, 2011) (remanding case to state court where plaintiffs could state a claim notwithstanding defendants' contention that plaintiffs had no intention of pursuing a claim against non-diverse defendant); *Myers v. Air Serv Corp.*, No. 1:07-cv-911, 2008 WL 149136, at *2 (E.D. Va. Jan. 9, 2008) (holding that "the crucial question pertains to the likelihood of liability, not the likely success of collection efforts"). Accordingly, a plaintiff's intention not to seek a judgment alone should not be a ground for a finding of fraudulent joinder. There also must be the absence of a basis for a claim. *Id.* Here, Anderson County has a colorable claim against the Employee Defendants.

As described in the filings in this case and in the cited authority from decisions from courts around the country handling similar litigation, the prescription drug supply system in the United States involves manufacturers, wholesale distributors, large chain pharmacies, community pharmacies, hospitals and other medical facilities, and licensed prescribers, all of whom are involved, at one stage or another and in one capacity or another, of delivering prescription drugs to patients, who are the consumers. This delivery of prescription drugs takes place within a complex system that controls the price and flow of drugs in America. It is supposed to be a closed system in the sense that, according to laws and regulations cited in the Complaint, safeguards should be in place along the distribution chain to prevent prescription drugs from being diverted anywhere other than legitimate medical, scientific, and industrial channels. All of the Defendants are involved in the supply chain that delivers prescription drugs,

including opioids, to patients. Based on the foregoing, the Court finds the Removing Defendants have failed to make a showing that the Employee Defendants were fraudulently joined.[2]

### ii. Fraudulent Misjoinder

Alternatively, the Removing Defendants argue for the application of fraudulent misjoinder in regard to the Distributor and Dealer Defendants. However, the Court need not decide whether or not to adopt and apply the doctrine of fraudulent misjoinder as a basis for federal jurisdiction because the Complaint contains sufficient allegations as to those Defendants that are citizens of South Carolina, including Rite Aid of South Carolina, Smith Drug Company, Spine and Pain Consultants, PA, and the other South Carolina citizens. The claims against these Defendants as alleged in the Complaint, clearly have a logical relationship to one another and arise from the same or substantially related series of transactions and occurrences. At the very least, as indicated above, the claims against the Manufacturer Defendants and the Distributor and Dealer Defendants are logically related, as all of these defendants are integral players in the prescription drug supply chain that provides opioids and other prescription drugs to people in South Carolina.

In light of these findings and, given the absence of direction from the Fourth Circuit and the unsettled state of the law governing the doctrine of fraudulent misjoinder, including the

---

[2]The Complaint alleges that the Employee Defendants, LeAvis Sullivan, Beth Taylor, Leigh Varnadore, Paul Kitchin, and Jeffrey Ward, are citizens and residents of South Carolina. (ECF No. 1-2 ¶¶ 94-98.) Anderson County also alleges that Defendants Aathirayen Thiyagarajah and Mackie Walker are citizens of South Carolina, that Defendant Spine and Pain Consultants, PA, is a South Carolina legal entity, and that the John Doe defendants have their principal places of business in South Carolina. (*Id.* ¶¶ 99-102.) Moreover, Anderson County alleges that Defendant Rite Aid of South Carolina, Inc., was incorporated in South Carolina in 1977 and has various locations throughout the State, including within Anderson County, and that Defendant Smith Drug Company is a South Carolina corporation with its headquarters in Spartanburg, South Carolina. (*Id.* ¶¶ 82, 91.) Therefore, even if the Employee Defendants are disregarded for purposes of federal jurisdiction, the Complaint contains sufficient allegations as to other South Carolina citizens or entities which would destroy diversity and justify remand.

variance and lack of consistency in its application by courts that have applied it, the Court declines to adopt fraudulent misjoinder to find jurisdiction in this case.

### C. Severance

In its response to the motion to remand, the Removing Defendants contend that the Court should sever the Distributor Defendants and Dealer Defendants pursuant to Federal Rule of Civil Procedure 21. (ECF No. 31 at 19-26). In its reply, Anderson County contends that, under the circumstances of this case, the Court should not exercise its Rule 21 discretion to supercede Plaintiff's pleading decisions in order to manufacture federal jurisdiction where it otherwise does not exist. (ECF No. 33 at 9-15).

As a general matter, Rule 21 permits the Court to sever an unnecessary and dispensable party from a case in order to achieve complete diversity and establish proper jurisdiction over a civil action. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) ("[N]on-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and defendants."). However, some courts have disagreed as to whether it is proper to sever a non-diverse defendant in a diversity case removed to federal court absent a finding of fraudulent joinder or fraudulent misjoinder.

The Court must consider whether dismissal of the non-diverse party or parties will prejudice any of the parties remaining in the case, and whether the presence of the non-diverse party provides a tactical advantage for one party. *Newman-Green*, 490 U.S. at 838. Additionally, the Court must evaluate whether a party is necessary and indispensable under Rule 19. *See Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705 (D. Md. 2015) (explaining that evaluation of whether a party is necessary and indispensable is part of the prejudice analysis directed by *Newman-Green*). Under Rule 19, a party is necessary if:

14

the court cannot accord complete relief among existing parties; [ ] or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Further, a necessary party is indispensable if the action cannot proceed without that party "in equity and good conscience." *Sullivan*, 117 F. Supp. 3d at 705 (quoting Rule 19(b)). If a nondiverse party is necessary and indispensable under Rule 19, then "diversity remains incomplete and the case must be remanded to state court." *Id.*

This Court joins Judge Cain and its own prior ruling[3] in finding the recent holdings of the Maryland District Court in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. GLR-18-800, 2018 WL 1963816 (D. Md. April 25, 2018), and *Anne Arundel Cty., Md. v. Purdue Pharma*, *L.P.*, No. GLR-18-519, 2018 WL 1963789 (D. Md. April 25, 2018), to be most persuasive on the severance question. In those cases, similar issues and arguments were raised and the court found that the claims were factually and legally intertwined. The plaintiffs alleged that all of the defendants contributed to the opiod crisis in Baltimore and Anne Arundel County, and the court found that the healthcare provider-defendants were necessary and indispensable, and therefore not severable under Rule 21. *Id.* at *5-6.

Moreover, the Court finds that Anderson County's claims satisfy the requirements for permissive joinder under Rule 20. This case involves claims against the Defendants for engaging in a scheme to fraudulently market and fuel the sale of opioids. As in the Baltimore and Anne Arundel County cases, the Court finds the similarities between the Defendants in this case outweigh any differences.

As stated above in regard to the doctrines of fraudulent joinder and fraudulent

---

[3] *See Spartanburg County* (ECF No. 32 at 14.)

15

misjoinder, the facts alleged in the Complaint are sufficiently intertwined with respect to all of the Defendants. The claims are not so separate and distinct that keeping them joined would result in an injustice. On the contrary, keeping the parties and claims joined will promote efficiency and minimize delay, inconvenience, and expense to the parties. If the Court were to order severance to obtain federal jurisdiction, Anderson County stands to suffer significant prejudice as the Defendants in each case would have the ability to shift blame and responsibility to an absent party. This is sometimes referred to as the "empty chair" defense. For example, the Manufacturer Defendants would be able to shift blame to the absent Distributor, Dealer, or Employee Defendants, thereby forcing Anderson County to defend the actions of the absent Defendants in order to substantiate its claims against the Defendants present in each case.

Finally, Plaintiff's pleading methodology and presentation of its theories of liability make it clear to the Court that this lawsuit seeks redress for the fallout of the opiod epidemic as a coherent whole. The Court declines to deconstruct Plaintiff's claims and theories, which are logically intertwined, in order to accommodate the forum preference of one group of Defendants.

### D. Federal Question

In its supplemental notice of removal, McKesson asserts that this Court has proper subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the duties governing reporting and shipping suspicious orders of prescription opiod medications arise from the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations, and because Plaintiff's claims, therefore, present a federal question. (ECF No. 22 at 2, 4.) McKesson argues that even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." (*Id.* at 5-6 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation and quotation

marks omitted).) McKesson further asserts that although Plaintiff's theories of recovery are grounded in state law claims, it bases its underlying theory of liability on McKesson's "alleged violations of federal law or alleged duties arising out of federal law, . . . that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship." (*Id.* at 7.)

While it is true that Plaintiff's Complaint references the CSA and its implementing regulations as one source of McKesson's alleged duty to monitor and report suspicious orders of opioid medications (*see* ECF No. 1-2 ¶ 307 (quoting the definition of "suspicious orders" from 21 C.F.R. § 1301.74(b) and explaining that "[f]ederal regulations . . . impose a non-delegable duty upon wholesale drug distributors to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances'"); ¶ 532 (citing § 1301.74(b) as source of distributors' duty to report suspicious orders)), the Court disagrees with McKesson that all of the predicate factors for federal jurisdiction over a state law claim are met in this case.[4]

McKesson's arguments proceed through the four *Grable* factors itemized above. First, McKesson argues that Plaintiff's state law claims "necessarily raise" a federal issue because "the right to relief depends upon the construction or application of federal law" as the only source of the duties allegedly breached. (ECF No. 22 at 10-12 (quoting *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (quotation marks omitted).) This is an artificially limited reading of Plaintiff's Complaint. The Fourth Circuit has stated, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every*

---

[4] None of the causes of action asserted by Plaintiff are created by federal law. Therefore, the Court is concerned only with whether the "second, more narrow basis" for federal question jurisdiction applies, namely, whether the state-law causes of action "implicat[e] a 'significant' federal issue." *See Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014) (quoting *Gunn*, 568 U.S. at 257 (2013)).

legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs*, 757 F.3d at 182 (emphasis in original) (quotation marks and citation omitted). As Plaintiff rightly notes in its supplemental motion to remand, "The references to federal law are but one of many bases asserted by Plaintiff to establish its state law claims, and each of the counts in the Complaint asserts numerous bases for Defendants' violation of state law and liability to Plaintiff, many having nothing to do with federal law." (ECF No. 24-1 at 12.) (*See* ECF No. 41 at 2-6 (itemizing alternative, independent state law sources of Distributor Defendants' duties).) Accordingly, the Court finds that the first *Grable* factor is not satisfied.

Second, McKesson argues that the federal issue implicated is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether the Distributor Defendants violated them. (ECF No. 22 at 12 (citing *Gunn*, 568 U.S. at 259).) The Court agrees that the parties dispute the meaning of certain provisions in the CSA's implementing regulations, specifically the scope of a distributor like McKesson's duty to identify, report, and stop shipment of "suspicious orders." Thus, the second *Grable* factor is satisfied. However, as already noted, any duty invoked under federal law is only one potential source of liability among many, so the fact that the meaning of federal regulations is in dispute becomes immaterial to the jurisdictional analysis.

Third, McKesson asserts that the federal issue presented by Plaintiff's claims is "substantial" because it involves aspects of the complex federal regulatory scheme applicable to the national prescription drug supply chain and is significant to the development of a uniform body of regulation in that context. (ECF No. 22 at 12-13 (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014)).) The Court disagrees. The Supreme Court has explained that when evaluating whether the federal issue in question is "substantial," "it is not enough that the federal

issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 260 (emphasis and modifications in original). Instead, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* The substantiality analysis also considers whether the federal issue is "a nearly pure issue of law," favoring a finding of substantiality, or is "fact-bound and situation-specific," weighing against substantiality. *See Empire Healthchoice Assurance, Inc. V. McVeigh*, 547 U.S. 677, 701 (2006). Finally, the Court should consider whether the federal law underlying the issue provides for a federal cause of action. *See Grable*, 545 U.S. at 318 (stating that "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires" (quotation marks omitted)).

In the instant case, the Court finds that the federal issue implicated by Plaintiff's claims does not rise to the level of federal importance envisioned by *Grable*'s third factor, and is therefore not "substantial" in the way necessary to invoke federal question jurisdiction. As an initial matter, while the scope of the Distributor Defendants' duties under the CSA and its implementing regulations is certainly of importance to the parties in this lawsuit, delineation of that scope will affect actions taken by private entities, not the federal government itself. In this regard, the Court finds persuasive the recent analysis by the District of Delaware in an opiod case where McKesson raised similar removal arguments:

> The determination of whether Defendants violated the FCSA is not substantial to the government as a whole. Most importantly, the parties do not seek to interpret the FCSA such that it affects the manner in which the government operates. This is unlike the case in *Grable & Sons*, where the parties sought to determine the meaning of "notice," which would substantially affect the way in which the IRS operated in satisfying its claims for delinquency. 545 U.S. at 315.

*Delaware ex rel. Denn v. Purdue Pharma L.P.*, No. CV 1:18-383-RGA, 2018 WL 1942363, at

*4 (D. Del. Apr. 25, 2018) (granting the plaintiff, State of Delaware's, motion to remand). Thus, allowing a state court to resolve questions about the scope of federally imposed duties will not undermine the development of a uniform body of federal regulation of controlled substances. *See Gunn*, 568 U.S. at 261-62 (stating the same with respect to state court adjudication of certain questions of patent law). Next, determination of the Distributor Defendants' compliance with their putative duties to detect, report, and stop shipment of "suspicious orders," as defined in the federal regulations, is necessarily fraught with "fact-bound and situation-specific" inquiries, favoring a finding against substantiality. *See Empire Healthchoice*, 547 U.S. at 701. Lastly, while not fully determinative of the substantiality inquiry, it is important that Congress has not included a private right of action within the CSA, signaling that garden variety state law claims, even where they implicate duties found in the CSA's implementing regulations, are best left in state court. *See Merrell Dow*, 478 U.S. at 812 (explaining that to ignore the fact that Congress has not included a private right of action and assume federal jurisdiction through state law claims is to "flout, or at least undermine, congressional intent"); *see also Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) ("The determination of whether a federal issue is sufficiently substantial should be should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic." (citations omitted)).

Fourth, McKesson argues that "the federal issue is capable of resolution in federal court 'without disrupting the federal-state balance approved by Congress.'" (ECF No. 22 at 15-16 (quoting *Gunn*, 568 U.S. at 258).) In support of this argument, McKesson asserts that "litigating this case in a state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA–the DEA–interprets and applies them." (*Id.*) However, as was the case in *Gunn*, the absence of a substantial federal issue within the meaning of *Grable* leads rather directly to the

conclusion that *Grable*'s fourth factor is also not met in the current context. *See Gunn*, 568 at 264. States, including South Carolina, certainly have a strong interest in ensuring that highly addictive prescription opiod medications are not marketed to or distributed among their citizens in a negligent or fraudulent manner. Accordingly, the Court finds that the proper federal-state balance tips toward remand in this matter.

### III. Conclusion

Accordingly, based on the foregoing, Plaintiff's Emergency Motion to Remand and for an Expedited Ruling (ECF No. 8) and Supplemental Emergency Motion to Remand and for an Expedited Ruling (ECF No. 24) are **GRANTED**. The request that this Court sever certain Defendants to provide federal jurisdiction is **DENIED**. The Manufacturer Defendants' Joint Motion to Stay (ECF No. 14) is **DENIED**. It is further ordered that this action be remanded to the Court of Common Pleas of Anderson County, South Carolina.

**IT IS SO ORDERED**.

/s/Bruce  Howe  Hendricks
United States District Judge

August 17, 2018
Greenville, South Carolina

*Weber County, Utah v. Purdue Pharma et al.,*
No. 1:18-cv-00089
2018 WL 3747846 (August 7, 2018)

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 94 of 127

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)
2018 WL 3747846

🚩 KeyCite Yellow Flag - Negative Treatment
Declined to Follow by City of Portland v. Purdue Pharma, LP, D.Me.,
November 28, 2018

2018 WL 3747846
Only the Westlaw citation is currently available.
United States District Court,
D. Utah, Northern Division.

WEBER COUNTY, UTAH Plaintiff,

v.

PURDUE PHARMA,
L.P., et al., Defendants.

Case No. 1:18-cv-00089-RJS
|
Signed 08/07/2018

**Attorneys and Law Firms**

Colin P. King, Michael A. Worel, Dewsnup, King & Olsen,
Donald J. Winder, Edgar R. Cataxinos, James E. Magleby,
Matthew B. McCune, Magleby Cataxinos & Greenwood, Salt
Lake City, UT, for Plaintiff.

Elisabeth M. McOmber, Snell & Wilmer LLP, Brent O. Hatch,
Dillon Paul Olson, Lara A. Swensen, Hatch James & Dodge,
Andrew G. Deiss, Brenda E. Weinberg, Wesley D. Felix,
Deiss Law PC, Perry S. Clegg, Matthew R. Lewis, Kunzler
PC, J. Ryan Mitchell, Mitchell Barlow & Mansfield PC,
Geoffrey C. Haslam, Tyler V. Snow, Christensen & Jensen
PC, Erik A. Olson, Trevor C. Lang, Marshall Olson & Hull
PC, D. Matthew Moscon, David J. Williams, Stoel Rives
LLP, Kamie F. Brown, Kristine M. Larsen, Whitney Hulet
Krogue, Ray Quinney & Nebeker, Mark A. Nickel, Gordon
Rees Scully Mansukhani LLP, Salt Lake City, UT, Marcia
Fuller Durkin, Cottonwood Heights, UT, for Defendants.

**MEMORANDUM DECISION AND ORDER
GRANTING MOTION TO REMAND**

ROBERT J. SHELBY, DISTRICT JUDGE

**\*1** Before the court is Plaintiff Weber County, Utah's Motion
to Remand[1] this action to the Second District Court of
the District of the State of Utah, Weber County. Defendant
McKesson Corporation recently removed the case, arguing
this court has federal question subject matter jurisdiction over

Weber County's claims against a group of Defendants, and
that the court may exercise supplemental jurisdiction over any
remaining claims under 28 U.S.C. § 1367. For the reasons
discussed below, the court concludes it lacks federal question
subject matter jurisdiction. Weber County's Motion is thus
GRANTED. The action shall be REMANDED.

**I. Background**
Weber County filed this action in Utah's Second District
Court, Weber County, on May 24, 2018, asserting in a
240-page Complaint eight state-law-based causes of action
against numerous Defendants who manufacture, distribute,
or are otherwise connected to the opioid pharmaceutical
industry.[2] Weber County claims the Defendants concealed for
their own financial gain the risks of addiction and attendant
harm prescription opioids present, all while promoting ever-
increasing consumer use. Weber County asserts against the
Defendants claims for: (1) Violation of the Utah Consumer
Sales Practices Act; (2) Public Nuisance; (3) Fraud; (4) Strict
Products Liability; (5) Negligence; (6) Negligent Marketing;
(7) Civil Conspiracy; and (8) Unjust Enrichment.[3]

On June 22, 2018, Weber County served the Complaint
on Defendant McKesson Corporation—an opioid distributor.
On July 23, 2018, McKesson timely removed the action to
this court, citing as grounds federal question subject matter
jurisdiction and possible supplemental jurisdiction.[4] All other
Defendants appearing have consented to the removal.

McKesson contends in its Notice of Removal that Weber
County has pled in its Complaint that "alleged violations of
federal law form the basis for its claims"[5] against the opioid
distributor Defendants (Distributors). McKesson's argument
stems from allegations set forth in a handful of paragraphs
in the Complaint's factual background, including that the
Distributors:

• had a duty to notice and report suspicious opioid orders
to governing authorities, "including the DEA and the Utah
Department of Health;"[6]

• "knew or should have known that they were supplying
vast amounts of dangerous drugs in Weber County that were
already facing abuse, diversion, misuse, and other problems ...
[and] failed in their duty to take any action to prevent or
reduce the distribution of these drugs;"[7]

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 95 of 127

2018 WL 3747846

• had a duty to "inspect, report, or otherwise limit" suspicious opioid orders;[8]

• breached their duty when they "fail[ed] to submit suspicious order reports"[9] and "shipped millions of doses of highly addictive controlled opioid pain killers into Weber County" despite the fact that many such orders should either have been stopped or investigated as suspicious orders.[10]

**\*2** • were fined and penalized by government authorities for actions in filling suspicious orders;[11] and

• received briefings from the DEA concerning their obligations under federal law.

McKesson argues the above-referenced duties imposed on Distributors governing "suspicious" orders arise solely from federal law—the Controlled Substances Act[12] and its implementing regulations. Although the statute is not cited in the Complaint paragraphs McKesson relies upon,[13] McKesson contends that Weber County necessarily "pleads that alleged violations of federal law form the basis for its claims."[14] In short, while state law is the express basis for all of Weber County's claims,[15] McKesson argues the Complaint raises a "substantial question of federal law sufficient to warrant removal ...."[16]

Upon removal, the case was initially assigned to a Magistrate Judge. Weber County promptly filed a Motion to Remand on July 26, 2018,[17] arguing federal question jurisdiction is lacking where its claims asserted in this case are neither rooted in federal law nor necessarily raise a disputed and substantial issue of federal law, and that in any event, the court should apply abstention doctrines to decline to hear this case.

The next day, on July 27, 2018, Weber County filed a Request for an Expedited Conference with the Court, seeking a hearing that same afternoon.[18] Weber County explained that it had just received "Notice of Potential Tag-along Actions, re: MDL No. 2804," informing it that the action might be transferred into existing multidistrict litigation (MDL) pending before U.S. District Judge Dan Polster in the Northern District of Ohio. Judge Polster had in February 2018 issued an order placing a moratorium on all filings in the MDL—including motions to remand.[19] Weber County urgently sought a hearing to discuss the potential transfer due

to an apparent concern that transfer of this case to the MDL might be imminent, and that resolution of its pending Motion to Remand might be indefinitely delayed.[20]

After Weber County filed its Request for an Expedited Conference, the action was reassigned to the undersigned on Friday, July 27, 2018.[21] The court entered an order denying the request for an immediate hearing, but noted that it would soon provide further guidance.[22] To that end, and in view of Weber County's urgent view of the case, the court on Monday, July 30, 2018 ordered expedited briefing on the Motion to Remand.[23]

**\*3** In the evening of July 30, 2018, three Defendants —McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Corporation—filed a Joint Motion to Stay[24] all proceedings in this action pending a determination of whether this case would be transferred to the pending MDL. The court on July 31, 2018 denied that motion.[25]

On August 1, 2018, the Judicial Panel on Multidistrict Litigation issued a Conditional Transfer Order directing that this action along with several others be transferred to the MDL before Judge Polster. But the JPML stayed its Order for seven days, until August 8, 2018, to permit any parties to give notice of opposition to the transfer.[26] And if any party does give such notice, "the stay will be continued until further order of the Panel."[27]

On August 2, 2018, Defendants filed a Joint Memorandum in Opposition[28] to the Motion to Remand. Weber County submitted a Reply in support of its Motion on August 3, 2018.[29]

### II. Legal Principles

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[30] There generally exists a presumption "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[31] Under these principles, McKesson bears the burden to show the propriety of removal by establishing that this court enjoys subject matter jurisdiction over the action.

The removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 96 of 127

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747846

courts of the United States have original jurisdiction, may be removed by the defendant or the defendants ....” McKesson contends the court has original jurisdiction over this action because it presents a federal question.

28 U.S.C. § 1331 provides that “[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.” “Although the constitutional meaning of ‘arising under’ may extend to all cases in which a federal question is ‘an ingredient’ of the action,” the Supreme Court has “long construed the statutory grant of federal question jurisdiction as conferring a more limited power.”[32]

The Supreme Court instructs that the “question of whether a claim ‘arises under’ federal law must be determined by reference to the ‘well-pleaded complaint.’ ”[33] Under this rule, a suit arises under federal law when the “plaintiff's statement of his own cause of action”—and ignoring “potential defenses”—shows that it is based on federal law.[34] “This rule makes the plaintiff the master of the claim.”[35] A plaintiff like Weber County can generally “guarantee an action will be heard in state court” by “omitting federal claims from a complaint,” because “[a] defense that raises a federal question is inadequate to confer federal jurisdiction.”[36]

 *4  The “vast majority” of cases in which parties establish federal question subject matter “are those in which federal law creates the cause of action.”[37] But a case may also arise under federal law where there exists an ‘embedded’ federal issue if the “ ‘plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.’ ”[38]

To establish federal question jurisdiction in this way, the proponent must show that a state law claim “necessarily raise[s]” a substantial federal issue that is “actually disputed,” and “which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.”[39] The Supreme Court has cautioned, however, that this is a “small and special”[40] and “slim”[41] category of cases; and “the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.”[42] Likewise, the Tenth Circuit instructs that this “branch of federal question jurisdiction is exceedingly narrow....”[43]

To illustrate, the Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson* found no federal question subject matter jurisdiction over a state law tort claim asserted against a drug manufacturer, despite the fact that the plaintiffs in the consolidated case had claimed the drug “was ‘misbranded’ in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) ... [and] that the violation ‘in the promotion’ of [the drug] Bendectin” created a “rebuttable presumption of negligence” and “directly and proximately caused the injuries” alleged.[44] The Court emphasized that the FDCA provided no private right of action—important evidence that congress did not intend for federal courts to “nevertheless exercise federal-question jurisdiction and provide remedies for that federal statute;”[45] and that “the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently ‘substantial’ to confer federalquestion jurisdiction.”[46] Thus, after disposing of the defendant's other arguments, the court held there was no federal question subject matter jurisdiction over the plaintiffs' “complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation ....' ”[47]

In contrast, the Supreme Court in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*[48] found federal question jurisdiction over a state law quiet title claim. The case arose after the Internal Revenue Service seized the plaintiff's property to a satisfy tax delinquency. For the seizure to be proper, federal law required the IRS to provide adequate notice. The IRS had provided notice by certified mail. After the seizure, the IRS sold the property to the defendant. Plaintiff eventually brought a state law quiet title action in state court against the defendant, contending the sale was invalid because the IRS had failed to comply with the federal notice law requirements. The plaintiff argued that personal service—not simply certified mail—was required but had not been effectuated.[49] The defendant removed the action to federal court, and the Sixth Circuit and Supreme Court each affirmed the district court's denial of plaintiff's motion to remand.

 *5  In reaching that conclusion, the Supreme Court explained that the plaintiff's quiet title claim was premised on the “essential element” of an alleged “failure by the IRS to give it adequate notice, as defined by federal law.”[50] The federal form of notice issue was “the only legal or factual issue contested in the case,” and was “an important issue of federal

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 97 of 127

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)
2018 WL 3747846

law" where the "ability of the IRS to satisfy its claims ... requires clear terms of notice."[51] The court emphasized that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."[52]

The *Grable* Court noted its decision was not at variance with *Merrell Dow*, despite the fact that in both cases, the federal statute at issue did not create a private right of action. That common fact was not dispositive to either case. The *Merrell Dow* Court had considered that fact highly relevant to the determination of whether the federal issue there was substantial and whether federal court consideration would upset a balance struck by Congress, in addition to other practical considerations that were very different in *Merrell Dow* compared to *Grable*:

> The [*Merrell Dow*] Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.[53]

The *Grable* Court explained that in contrast, though there was no private right of action provided in the federal IRS notice statute, "it is the rare state quiet title action that involves contested issues of federal law."[54] Thus, federal jurisdiction over such actions "would not materially affect, or threaten to affect, the normal currents of litigation."[55]

### III. Discussion

Under the foregoing guidance, the court evaluates whether it enjoys federal question subject matter jurisdiction over the claims against the Distributors set forth in Weber County's Complaint. Weber County asserts no claims in which federal law creates the cause of action. McKesson argues only that federal subject matter jurisdiction exists because the claims against the Distributors raise 'substantial questions' of federal law involving the Controlled Substances Act (CSA). Below, the court considers whether McKesson has established that a substantial federal issue is necessarily raised, actually

disputed, and amenable to resolution in this court without disrupting congressional intent and balancing of judicial responsibilities.

### A. Weber County's Complaint does not necessarily raise substantial federal issues.

The allegations in Weber County's Complaint undoubtedly reference federal laws and some Defendants' breaches of those laws. But Weber County asserts only state law claims, and provides bases for the claims which do not arise out of or necessarily depend on an interpretation of a disputed CSA provision. Under these circumstances, the Complaint does not necessarily raise federal issues.[56]

**\*6** First, Weber County identifies non-federal sources for the legal duties it claims the Distributors owe. These include Utah statutes referenced in the Complaint, as well as the common law.[57]

Indeed, the Distributors acknowledge in their briefing the claimed state law bases for Weber County's claims.[58] But, they contend Weber County's non-federal law sources for duties will ultimately fail because none truly create the duties alleged.[59] The validity of the alleged independent sources of the Distributors' duties is not an issue for this court. At this stage, involving subject matter jurisdiction determinations, Weber County is the master of its claims— whether eventually successful on the merits or not. Thus, even assuming the court could discern that those independent bases for claimed duties would ultimately fail—which it cannot—this conclusion would not preclude a finding that federal subject matter jurisdiction is lacking and that the case demands remand.[60]

But even if Weber County relied only on a breach of the federal CSA for a given state law claim against the Distributors to establish to its state law claims against the Distributors, the court likely still would not find the presence of a substantial issue of federal law. Doing otherwise, as McKesson urges, would seemingly flout *Merrell Dow*, in which the Supreme Court found no federal subject matter jurisdiction under analogous facts where plaintiffs directly claimed the defendant's alleged breach of a federal drug labeling statute established the defendant had been negligent per se and that negligence was the proximate cause of the injuries alleged in the consolidated cases. As with the CSA,

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 98 of 127

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747846

the federal statute at issue in *Merrell Dow* provided no private right of action. If federal question subject matter jurisdiction was lacking there, it is certainly not established here, where Weber County does not expressly rely on the CSA in stating its claims and has offers in its papers that its claims are not directly based on the CSA.

The court concludes McKesson has not established that Weber County's Complaint necessarily raises a federal issue.

## B. McKesson does not identify any actually disputed substantial federal issues.

The court next evaluates whether a substantial federal issue appears to be disputed. McKesson contends the parties will actually dispute substantial federal issues because Weber County will be required to litigate the contours of any duty under the CSA, whether the Distributors' conduct amounted to a breach of that duty, whether the violations occurred in the proximity of the County, during the statute of limitations, and in a way that cased the County harm.[61] But this litany ignores it is undisputed that Distributors have paid fines to the DEA regarding suspicious orders, and that the bulk of the other issues—where violations occurred, when they occurred, and whether they harmed Weber County—likely will be determined under state law, and almost certainly without even a reference to the CSA, which provides no private right of action. Perhaps most critically, though they claim the parties will "contest whether the Distributors violated the CSA"[62] McKesson fails to identify a specific provision in the CSA which will require interpretation or construction by any court, let alone a substantial and disputed statutory issue on which Weber County's claims against it necessarily succeed or fail.

**\*7** And this is in stark contrast to the issue presented in *Grable*—whether the federal law requiring the IRS to provide notice permitted notice via certified mail or required personal service. There, the parties disputed the interpretation of specific provision of federal law entirely dispositive of the *Grable* plaintiff's claim, where he had only received certified mail.

## C. The federal issues raised in Weber County's Complaint are not substantial.

The court next considers whether McKesson has shown that federal issues raised in Weber County's Complaint are "substantial," "look[ing] to the importance of the issue to the federal system as a whole."[63] In this analysis, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction would generally be inappropriate."[64]

McKesson contends the CSA provides "the legitimate drug industry with a unified approach" to drug control, so litigation in a federal forum is "warranted" because Weber County's action is but one of a thousand which might proceed in the pending federal MDL, offering a uniform construction of the CSA. Undoubtedly, a uniform approach in a consolidated MDL may be beneficial to McKesson, a party in this action. But McKesson has not by these arguments explained why an interpretation of some provision of the CSA will affect the federal system as a whole—how the *government* might operate in response to such an interpretation.

And once again, this is in contrast to *Grable*, where the squarely-presented federal issue was the nature of notice the IRS was required to provide before seizing property. An answer to that question was of critical importance because it would have a clear effect on IRS actions in providing notice to delinquent taxpayers.[65] McKesson points to no such unresolved issue of law, the determination of which will assist the government in its actions.

McKesson also attaches to its Memorandum in Opposition to the Motion to Remand a Statement of Interest filed on March 1, 2018, by the United States Department of Justice in the MDL,[66] in which the United States requests thirty days to evaluate whether it will seek to participate in that action to assert claims for recovery. But the United States does not indicate in this statement what provision of the CSA requires federal interpretation to assist the government in its operations going forward. It indicates that the opioid epidemic is a "national health crisis" that has cost the government large sums of money, and cites the CSA and other federal statutes sources that might permit financial recovery and coordination of civil and criminal efforts. And, as Weber County points out, though this Statement was filed over five months ago, the United States has taken no action to participate directly in the MDL.[67]

**\*8** Finally, McKesson has not established that any requisite construction of the CSA presents a pure question of law that would govern in other cases. Its entire argument on this point is conclusory, and the court cannot give it significant weight. McKesson simply states that the determination of issues "of the existence of duties under the CSA, the scope and the contour of any duties that exist, and whether [their conduct] amounted to a breach of that duty" present "nearly pure issues of law that would necessarily have application to other federal cases," including the MDL.[68] This brief discussion is unpersuasive. Moreover, on their face, the issues McKesson recites appear "fact-bound" and "situation-specific," auguring against federal jurisdiction.

### D. Federal and state balancing of judicial responsibilities is served by declining federal question jurisdiction in this action.

In the federal question jurisdiction analysis, the court must lastly determine whether federal courts may resolve the issues raised in Weber County's Complaint "without disturbing any congressionally-approved balance of federal and state judicial responsibilities."[69] The *Grable* Court explained that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."[70] Thus, there must be "an assessment of any disruptive potent in exercising federal jurisdiction."[71]

The *Grable* Court noted that the finding of federal question jurisdiction over a quiet title claim depending on a disputed provision of federal law concerning IRS notice would not disrupt the "federal-state division of labor" because only a rare state quiet title case would raise a contested matter of federal law; thus the effect of finding jurisdiction would be "microscopic."[72] But that court acknowledged that the opposite would have been true had federal jurisdiction been found in *Merrell Dow*.

In *Merrell Dow*, the combination of a lack of private right of action under the relevant drug labeling statute (FDCA), and the fact that the statute did not preempt state causes of action was an "important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331."[73] The lack of a private right of action was a "missing welcome mat" to federal court which was required under the specific facts of that case—where the alleged breach of a federal law was being used in the context of "garden variety state tort" claims.[74] Exercising federal question jurisdiction "over state claims resting on federal mislabeling or other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."[75] Thus, the *Merrell Dow* Court staved off a "horde of original filings and removal cases" under those circumstances by closing the door to federal question jurisdiction.

The court finds the *Merrell Dow* analysis compellingly applicable. Even if there were a disputed substantial federal question within Weber County's state law claims, the balancing of federal and state judicial responsibilities weighs in favor of declining federal jurisdiction. The parties do not dispute that the CSA does not provide a private right of action and has not preempted the entire field it covers. The Complaint's brief discussion of the Distributors' alleged violations of the CSA—whether as mere factual context, or evidence of their breach of a duty (as the *Merrell Dow* plaintiffs had used the FDCA)—cannot give rise to federal jurisdiction in an action involving only state law tort and statutory claims, particularly where doing so would almost certainly give rise to a flood of federal court original and removed filings.[76]

**\*9** McKesson's only argument to the contrary is that because federal courts are the exclusive venue for "challenges to DEA authority" to enforce the CSA against distributors, including disputes involving injunctions, "federal courts already are the exclusive forum for determining the scope of restraints on Distributors under the federal CSA."[77] It is unclear to the court how McKesson's argument concerning actions against the federal government applies in the context of this non-agency action, not brought directly pursuant to a CSA provision. In any event, the argument is unpersuasive.

### E. Abstention doctrines.

In view of the foregoing, it is unnecessary to discuss Weber County's arguments concerning abstention.

### IV. Conclusion and Order.

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)
Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 100 of 127
2018 WL 3747846

For the reasons discussed, the court concludes it lacks federal subject matter jurisdiction over any claims in this action. The case therefore must be remanded.[78]

Accordingly, Weber County's Motion to Remand is GRANTED. This action is REMANDED to Utah's Second District Court, Weber County. The clerk of court is directed to CLOSE this case.

SO ORDERED this 7th day of August 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3747846

Footnotes

1    Dkt. 6.
2    Utah Case No. 180903087.
3    Dkt. 2-2 ¶¶ 746-821.
4    Dkt. 2.
5    *Id.* at 3 ¶ 8.
6    Dkt. 2-2 ¶ 713.
7    *Id.* ¶¶ 714-15.
8    *Id.* ¶ 716.
9    *Id.* ¶ 718.
10   *Id.* ¶¶ 728-29.
11   *Id.* ¶¶ 719-20, 726, and 743.
12   21 U.S.C. §§ 801 *et seq.*
13   Weber County points out that it refers to the CSA three times in its Complaint: in footnote 4 on page 3, and at paragraphs 658 and 741. (Dkt. 6 at 11 (using court's pagination) ).
14   Dkt. 2 at 3.
15   While McKesson argues Weber County relies solely on federal law, it also acknowledges in its Notice of Removal and subsequent briefing that Weber County cites "Utah laws [and] regulations" in its Complaint to show the Defendants owed duties. But, McKesson contends those cited state law bases for duties will not succeed on their merits. *See* Notice of Removal (Dkt. 2) n. 2 (noting "even when Plaintiff purports to rely on state law, the only source of the alleged duties is the federal CSA.").
16   Dkt. 2 at 4 ¶ 20.
17   Dkt. 6.
18   Dkt. 9.
19   Dkt. 6-1.
20   McKesson states in its Notice of Removal that it removed this action with the intent of tagging it for transfer into the MDL. (Dkt. 2 at 3).
21   Dkt. 10.
22   Dkt. 11.
23   Dkt. 12. That same day, July 30, 2018, the undersigned received a case related to this one, Case No. 2:18-cv-00585, *Uintah County, et al. v. Purdue Pharma, L.P.*
24   Dkt. 12.
25   Dkt. 16.
26   Dkt. 2129 in MDL No. 2804.
27   *Id.* at 1.
28   Dkt. 17.
29   Dkt. 18.
30   *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1201 (10th Cir. 2012) (citations omitted).
31   *Id.* (citations omitted).
32   *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 807 (1986) (citations omitted).

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 101 of 127

Weber County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747846

33    *Id.* at 808 (citations omitted).

34    *Devon,* 693 F.3d at 1202 (citations omitted).

35    *Id.* (citations omitted).

36    *Merrell Dow,* 478 U.S. at 808.

37    *Id.* at 809.

38    *Empire Healthchoice Assur., Inc., v. McVeigh,* 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983) ).

39    *Grable & Sons Metal Products v. Darue Engineering & Mfg.,* 545 U.S. 308, 314 (2005).

40    *Empire Healthchoice,* 547 U.S. at 699.

41    *Id.* at 701.

42    *Merrell Dow,* 478 U.S. at 813 (citations omitted).

43    *Gilmore v. Weatherford,* 694 F.3d 1160, 1171 (10th Cir. 2012).

44    *Merrell Dow,* 478 U.S. at 805-06.

45    *Id.* at 813.

46    *Id.* at 816.

47    478 U.S. 804 (1986) (quoting 28 U.S.C. § 1331).

48    545 U.S. 308.

49    *Id.* at 310-11.

50    *Id.* at 314-15.

51    *Id.* at 315.

52    *Id.*

53    *Id.* at 318.

54    *Id.* at 319.

55    *Id.*

56    In *Devon*, the Tenth Circuit noted in citing cases where federal question jurisdiction had arisen that it was in those cases "*necessary* for the court to interpret a disputed issue of federal-law in order for the plaintiffs to establish their state law claims." 693 F.3d at 1211 (citing *Grable,* 545 U.S. at 315) (other citations omitted) (emphasis in original). But a "possibility that a federal issue might arise relative" to the claims "is not enough" to establish jurisdiction. *Id.*

57    *See* discussion in Dkt. 18 at pages 5-10 (using the court's pagination).

58    Dkt. 17 at 9 n. 3 (using court's pagination).

59    Dkt. 17.

60    The Tenth Circuit has determined that the obligation to remand pursuant to 28 U.S.C. § 1447 where the court lacks subject matter jurisdiction applies even in cases where the remanded claims might be futile. *See Hill v. Vanderbilt Capital Advisors, LLC,* 702 F.3d 1220 (10th Cir. 2012) (noting that the Supreme Court has suggested that "§ 1447(c) mandates remand without a futility exception") (citing *International Primate Prot. League v. Administrators of Tulane Educ. Fund,* 500 U.S. (1991) ); *Jepsen v. Texaco, Inc.,* 1995 WL 607630, *3 (10th Cir. Oct. 16, 1995) (rejecting futility argument in light of § 1447 and the *International Primate Prot. League* case; noting that "[t]o hold otherwise would require this court to speculate on an application of state law, an endeavor we decline.").

61    Dkt. 17 at 11 (using court's pagination).

62    *Id.* at 8 (using court's pagination).

63    *Gunn v. Minton,* 568 U.S. 251, 260 (2013).

64    *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation,* 770 F.3d 944, 947-48 (10th Cir. 2014) (quoting *Empire Healthchoice,* 547 U.S. at 700-01).

65    Though not dispositive, it bears noting that congress did not see fit to permit a private right of action under the CSA. *See Grable,* 545 U.S. at 318 (noting that absence of a federal private right of action is relevant but not dispositive to "the sensitive judgments about congressional intent that § 1331 requires.").

66    Dkt. 17-1.

67    Dkt. 18 at 11 (using court's pagination).

68    Dkt. 17 at 14 (using court's pagination) (citations omitted).

69    *Grable,* 545 U.S. at 314.

70    *Id.*

2018 WL 3747846

| 71 | *Id.* |
|----|-------|
| 72 | *Id.* at 315. |
| 73 | *Id.* at 318 |
| 74 | *Id.* |
| 75 | *Id.* at 319. |
| 76 | *See id.* at 318-19 (noting that the violation of federal law is often used by plaintiffs asserting state law tort claims as evidence of negligence per se) (citations omitted). |
| 77 | Dkt. 17 at 15 (using the court's pagination). |
| 78 | 28 U.S.C. § 1447(c) instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." |

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Uintah County, Utah, et al. v.*
*Purdue Pharma, et al.,*
No. 2:18-cv-00585,
2018 WL 3747847 (August 7, 2018)

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Follow by City of Portland v. Purdue Pharma, LP, D.Me.,
November 28, 2018

2018 WL 3747847
Only the Westlaw citation is currently available.
United States District Court, D. Utah, Central Division.

UINTAH COUNTY, UTAH; Duchesne
County, Utah; Daggett County, Utah; and

Tri-County Health Department, Plaintiffs,

v.

PURDUE PHARMA,
L.P., et al., Defendants.

Case No. 2:18-cv-00585-RJS
|
Signed 08/07/2018

**Attorneys and Law Firms**

Colin P. King, Michael A. Worel, Dewsnup King Olsen Worel
Havas Mortensen, Donald J. Winder, Edgar R. Cataxinos,
James E. Magleby, Matthew B. McCune, Magleby Cataxinos
& Greenwood, Salt Lake City, UT, G. Mark Thomas,
Jonathan A. Stearmer, Uintah County Attorney's Office,
Vernal, UT, Tyler C. Allred, Duchesne County Attorney's
Office, Duchesne, UT, Niel H. Lund, Daggett County
Attorney, Manila, UT, for Plaintiffs.

Elisabeth M. McOmber, Snell & Wilmer LLP, Brent O. Hatch,
Dillon Paul Olson, Lara A. Swensen, Hatch James & Dodge,
Andrew G. Deiss, Brenda E. Weinberg, Wesley D. Felix,
Deiss Law PC, Perry S. Clegg, Matthew R. Lewis, Kunzler
PC, J. Ryan Mitchell, Mitchell Barlow & Mansfield PC,
Geoffrey C. Haslam, Tyler V. Snow, Christensen & Jensen
PC, Erik A. Olson, Trevor C. Lang, Marshall Olson & Hull
PC, D. Matthew Moscon, David J. Williams, Stoel Rives,
Kamie F. Brown, Kristine M. Larsen, Whitney Hulet Krogue,
Ray Quinney & Nebeker, Mark A. Nickel, Gordon Rees
Scully Mansukhani LLP, Salt Lake City, UT, Marcia Fuller
Durkin, Cottonwood Heights, UT, for Defendants.

**MEMORANDUM DECISION AND ORDER
GRANTING MOTION TO REMAND**

ROBERT J. SHELBY, DISTRICT JUDGE

**\*1** Before the court is Plaintiffs Uintah County, Utah;
Duchesne County, Utah; Daggett County, Utah; and Tri-
County Health Department's Motion to Remand[1] this action
to the Eighth District Court of the District of the State of Utah,
Uintah County. Defendant McKesson Corporation recently
removed this action, arguing the court has federal question
subject matter jurisdiction over Plaintiffs' claims against
a group of Defendants, and may exercise supplemental
jurisdiction over any remaining claims under 28 U.S.C.
§ 1367. For the reasons discussed below, the court
concludes it lacks federal question subject matter jurisdiction.
Plaintiffs' Motion is thus GRANTED. The action shall be
REMANDED.

**I. Background**

Plaintiffs filed this action in Utah's Eighth District Court,
Uintah County, on June 7, 2018, asserting in a 252-
page Complaint eight state-law-based causes of action
against numerous Defendants who manufacture, distribute,
or are otherwise connected to the opioid pharmaceutical
industry.[2] Plaintiffs claim the Defendants concealed for their
own financial gain the risks of addiction and attendant
harm prescription opioids present, all while promoting
ever-increasing consumer use. Plaintiffs assert against the
Defendants claims for: (1) Violation of the Utah Consumer
Sales Practices Act; (2) Public Nuisance; (3) Fraud; (4) Strict
Products Liability; (5) Negligence; (6) Negligent Marketing;
(7) Civil Conspiracy; and (8) Unjust Enrichment.[3]

On June 22, 2018, Plaintiffs served the Complaint on
Defendant McKesson Corporation—an opioid distributor. On
July 23, 2018, McKesson timely removed the action to
this court, citing as grounds federal question subject matter
jurisdiction and possible supplemental jurisdiction.[4] All other
Defendants appearing have consented to the removal.

McKesson contends in its Notice of Removal that Plaintiffs
have pled in their Complaint that "alleged violations of federal
law form the basis for [their] claims"[5] against the opioid
distributor Defendants (Distributors). McKesson's argument
stems from allegations set forth in a handful of paragraphs
in the Complaint's factual background, including that the
Distributors:

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 105 of 127

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

• had a duty to notice and report suspicious opioid orders to governing authorities, "including the DEA and the Utah Department of Health;"[6]

• "knew or should have known that they were supplying vast amounts of dangerous drugs in Uintah, Duchesne, and Daggett County that were already facing abuse, diversion, misuse, and other problems ... [and] failed in their duty to take any action to prevent or reduce the distribution of these drugs;"[7]

• had a duty to "inspect, report, or otherwise limit" suspicious opioid orders;[8]

• breached their duty when they "fail[ed] to submit suspicious order reports"[9] and "shipped millions of doses of highly addictive controlled opioid pain killers into Uintah, Duchesne, and Daggett County" despite the fact that many such orders should either have been stopped or investigated as suspicious orders.[10]

**\*2** • were fined and penalized by government authorities for actions in filling suspicious orders;[11] and

• received briefings from the DEA concerning their obligations under federal law.[12]

McKesson argues the above-referenced duties imposed on Distributors governing "suspicious" orders arise solely from federal law−the Controlled Substances Act[13] and its implementing regulations. Although the statute is not cited in the Complaint paragraphs McKesson relies upon,[14] McKesson contends that Plaintiffs necessarily "plead that alleged violations of federal law form the basis for [their] claims."[15] In short, while state law is the express basis for all of Plaintiffs' claims,[16] McKesson argues the Complaint raises a "substantial question of federal law sufficient to warrant removal ...."[17]

Upon removal, the case was initially assigned to a Magistrate Judge. Plaintiffs promptly filed a Motion to Remand on July 26, 2018,[18] arguing federal question jurisdiction is lacking where their claims are neither rooted in federal law nor necessarily raise a disputed and substantial issue of federal law, and that in any event, the court should apply abstention doctrines to decline to hear this case.

The next day, on July 27, 2018, Plaintiffs filed a Request for an Expedited Conference with the Court, seeking a hearing that same afternoon.[19] Plaintiffs explained that they had just received "Notice of Potential Tag-along Actions, re: MDL No. 2804," informing them that the action might be transferred to existing multidistrict litigation (MDL) pending before U.S. District Judge Dan Polster in the Northern District of Ohio. Judge Polster had in February 2018 issued an order placing a moratorium on all filings in the MDL−including motions to remand.[20] Plaintiffs urgently sought a hearing to discuss the potential transfer due to an apparent concern that transfer of this case to the MDL might be imminent, and that resolution of their pending Motion to Remand might be indefinitely delayed.[21]

After Plaintiffs filed a Request for an Expedited Conference, the action was reassigned to another District Court Judge on Friday, July 27, 2018,[22] and then was reassigned to the undersigned on July 30, 2018.[23] In the evening of July 30, 2018, three Defendants−McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Corporation−file a Joint Motion to Stay[24] all proceedings in this action pending a determination of whether this case would be transferred to the pending MDL.

**\*3** In view of Plaintiffs' urgent view of the case, the court on July 31, 2018 ordered expedited briefing on the Motion to Remand.[25] That same day, the court denied the Motion to Stay.[26]

On August 1, 2018, the Judicial Panel on Multidistrict Litigation issued a Conditional Transfer Order directing that this action along with several others be transferred to the MDL before Judge Polster. But the JPML stayed its Order for seven days, until August 8, 2018, to permit any parties to give notice of opposition to the transfer.[27] And if any party does give such notice, "the stay will be continued until further order of the Panel."[28]

On August 2, 2018, McKesson filed a Memorandum in Opposition[29] to the Motion to Remand. Plaintiffs submitted a Reply in support of their Motion on August 3, 2018.[30]

**II. Legal Principles**

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 106 of 127
2018 WL 3747847

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[31] There generally exists a presumption "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[32] Under these principles, McKesson bears the burden to show the propriety of removal by establishing that this court enjoys subject matter jurisdiction over the action.

The removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants ...." McKesson contends the court has original jurisdiction over this action because it presents a federal question.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action," the Supreme Court has "long construed the statutory grant of federal question jurisdiction as conferring a more limited power."[33]

The Supreme Court instructs that the "question of whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.' "[34] Under this rule, a suit arises under federal law when the "plaintiff's statement of his own cause of action"−and ignoring "potential defenses"−shows that it is based on federal law."[35] "This rule makes the plaintiff the master of the claim."[36] Plaintiffs can generally "guarantee an action will be heard in state court" by "omitting federal claims from a complaint," because "[a] defense that raises a federal question is inadequate to confer federal jurisdiction."[37]

**\*4** The "vast majority" of cases in which parties establish federal question subject matter "are those in which federal law creates the cause of action."[38] But a case may also arise under federal law where there exists an 'embedded' federal issue if the " 'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' "[39]

To establish federal question jurisdiction in this way, the proponent must show that a state law claim "necessarily raise[s]" a substantial federal issue that is "actually disputed,"

and "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[40] The Supreme Court has cautioned, however, that this is a "small and special"[41] and "slim"[42] category of cases; and "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."[43] Likewise, the Tenth Circuit instructs that this "branch of federal question jurisdiction is exceedingly narrow...."[44]

To illustrate, the Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson* found no federal question subject matter jurisdiction over a state law tort claim asserted against a drug manufacturer, despite the fact that the plaintiffs in the consolidated case had claimed that the drug "was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) ... [and] that the violation 'in the promotion' of [the drug] Bendectin" created a "rebuttable presumption of negligence" and "directly and proximately caused the injuries" alleged.[45] The Court emphasized that the FDCA provided no private right of action−important evidence that Congress did not intend for federal courts to "nevertheless exercise federal-question jurisdiction and provide remedies for that federal statute;[46] and that "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[47] Thus, after disposing of the defendant's other arguments, the court held there was no federal question subject matter jurisdiction over the plaintiffs' "complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation .... "[48]

In contrast, the Supreme Court in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*[49] found federal question jurisdiction over a state law quiet title claim. The case arose after the Internal Revenue Service seized the plaintiff's property to a satisfy tax delinquency. For the seizure to be proper, federal law required the IRS to provide adequate notice. The IRS had provided notice by certified mail. After the seizure, the IRS sold the property to the defendant. Plaintiff eventually brought a state law quiet title action in state court against the defendant, contending the sale was invalid because the IRS had failed to comply with the federal notice law requirements. The plaintiff argued that personal service−not simply certified mail−was required but

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 107 of 127

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

had not been effectuated.[50] The defendant removed the action to federal court, and the Sixth Circuit and Supreme Court each affirmed the district court's denial of plaintiff's motion to remand.

**\*5** In reaching that conclusion, the Supreme Court explained that the plaintiff's quiet title claim was premised on the "essential element" of an alleged "failure by the IRS to give it adequate notice, as defined by federal law."[51] The federal form of notice issue was "the only legal or factual issue contested in the case," and was "an important issue of federal law" where the "ability of the IRS to satisfy its claims ... requires clear terms of notice."[52] The court emphasized that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."[53]

The *Grable* Court noted its decision was not at variance with *Merrell Dow*, despite the fact that in both cases, the federal statute at issue did not create a private right of action. That common fact was not dispositive to either case. The *Merrell Dow* Court had considered that fact highly relevant to the determination of whether the federal issue there was substantial and whether federal court consideration would upset a balance struck by Congress, in addition to other practical considerations that were very different in *Merrell Dow* compared to *Grable*:

> The [*Merrell Dow*] Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.[54]

The *Grable* Court explained that in contrast, though there was no private right of action provided in the federal IRS notice statute, "it is the rare state quiet title action that involves contested issues of federal law."[55] Thus, federal jurisdiction over such actions "would not materially affect, or threaten to affect, the normal currents of litigation."[56]

## III. Discussion

Under the foregoing guidance, the court evaluates whether it enjoys federal question subject matter jurisdiction over the claims against the Distributors set forth in Plaintiffs' Complaint. Plaintiffs assert no claims in which federal law creates the cause of action. McKesson argues only that federal subject matter jurisdiction exists because the claims against the Distributors raise 'substantial questions' of federal law involving the Controlled Substances Act (CSA). Below, the court considers whether McKesson has established that a substantial federal issue is necessarily raised, actually disputed, and amenable to resolution in this court without disrupting congressional intent and balancing of judicial responsibilities.

### A. Plaintiffs' Complaint does not necessarily raise substantial federal issues.

The allegations in Plaintiffs' Complaint undoubtedly reference federal laws and some Defendants' breaches of those laws. But Plaintiffs assert only state law claims, and provide bases for the claims which do not arise out of or necessarily depend on an interpretation of a disputed CSA provision. Under these circumstances, the Complaint does not necessarily raise federal issues.[57]

**\*6** First, Plaintiffs identify non-federal sources for the legal duties they claim the Distributors owe. These include Utah statutes referenced in the Complaint, as well as the common law.[58]

Indeed, the Distributors acknowledge in their briefing the claimed state law bases for Plaintiffs' claims.[59] But, they contend Plaintiffs' non-federal law sources for duties will ultimately fail because none truly create the duties alleged.[60] The validity of the alleged independent sources of the Distributors' duties is not an issue for this court. At this stage, involving subject matter jurisdiction determinations, Plaintiffs are the masters of their claims—whether eventually successful on the merits or not. Thus, even assuming the court could discern that those independent bases for claimed duties would ultimately fail—which it cannot—this conclusion would not preclude a finding that federal subject matter jurisdiction is lacking and that the case demands remand.[61]

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 108 of 127

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

But even if Plaintiffs relied only on a breach of the federal CSA for a given state law claim against the Distributors to establish to their state law claims against the Distributors, the court likely still would not find the presence of a substantial issue of federal law. Doing otherwise, as McKesson urges, would seemingly flout *Merrell Dow*, in which the Supreme Court found no federal subject matter jurisdiction under analogous facts where plaintiffs directly claimed the defendant's alleged breach of a federal drug labeling statute established the defendant had been negligent per se and that negligence was the proximate cause of the injuries alleged in the consolidated cases. As with the CSA, the federal statute at issue in *Merrell Dow* provided no private right of action. If federal question subject matter jurisdiction was lacking there, it is certainly not established here, where Plaintiffs do not expressly rely on the CSA in stating their claims and offer in their papers that their claims are not directly based on the CSA.

The court concludes McKesson has not established that Plaintiffs' Complaint necessarily raises a federal issue.

## B. McKesson does not identify any actually disputed substantial federal issues.

The court next evaluates whether a substantial federal issue appears to be disputed. McKesson contends the parties will actually dispute substantial federal issues because Plaintiffs will be required to litigate the contours of any duty under the CSA, whether the Distributors' conduct amounted to a breach of that duty, whether the violations occurred in the proximity of the Plaintiff-Counties, during the statute of limitations, and in a way that cased the Plaintiffs harm.[62] But this litany ignores it is undisputed that Distributors have paid fines to the DEA regarding suspicious orders, and that the bulk of the other issues−where violations occurred, when they occurred, and whether they harmed Plaintiffs−likely will be determined under state law, and almost certainly without even a reference to the CSA, which provides no private right of action. Perhaps most critically, though they claim the parties will "contest whether the Distributors violated the CSA"[63] McKesson fails to identify a specific provision in the CSA which will require interpretation or construction by any court, let alone a substantial and disputed statutory issue on which Plaintiffs' claims against it necessarily succeed or fail.

**\*7** And this is in stark contrast to the issue presented in *Grable*−whether the federal law requiring the IRS to

provide notice permitted notice via certified mail or required personal service. There, the parties disputed the interpretation of specific provision of federal law entirely dispositive of the *Grable* plaintiff's claim, where he had only received certified mail.

## C. The federal issues raised in Plaintiffs' Complaint are not substantial.

The court next considers whether McKesson has shown that federal issues raised in Plaintiffs' Complaint are "substantial," "look[ing] to the importance of the issue to the federal system as a whole."[64] In this analysis, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction would generally be inappropriate."[65]

McKesson contends the CSA provides "the legitimate drug industry with a unified approach" to drug control, so litigation in a federal forum is "warranted" because Plaintiffs' action is but one of a thousand which might proceed in the pending federal MDL, offering a uniform construction of the CSA.[66] Undoubtedly, a uniform approach in a consolidated MDL may be beneficial to McKesson, a party in this action. But McKesson has not by these arguments explained why an interpretation of some provision of the CSA will affect the federal system as a whole−how the *government* might operate in response to such an interpretation.

And once again, this is in contrast to *Grable*, where the squarely-presented federal issue was the nature of notice the IRS was required to provide before seizing property. An answer to that question was of critical importance because it would have a clear effect on IRS actions in providing notice to delinquent taxpayers.[67] McKesson points to no such unresolved issue of law, the determination of which will assist the government in its actions.

McKesson also attaches to its Memorandum in Opposition to the Motion to Remand a Statement of Interest filed on March 1, 2018, by the United States Department of Justice in the MDL,[68] in which the United States requests thirty days to evaluate whether it will seek to participate in that action to assert claims for recovery. But the United States does not indicate in this statement what provision of the CSA

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 109 of 127

2018 WL 3747847

requires federal interpretation to assist the government in its operations going forward. It indicates that the opioid epidemic is a "national health crisis" that has cost the government large sums of money, and cites the CSA and other federal statutes sources that might permit financial recovery and coordination of civil and criminal efforts. And, as Plaintiffs point out, though this Statement was filed over five months ago, the United States has taken no action to participate directly in the MDL.[69]

**\*8** Finally, McKesson has not established that any requisite construction of the CSA presents a pure question of law that would govern in other cases. Its entire argument on this point is conclusory, and the court cannot give it significant weight. McKesson simply states that the determination of issues "of the existence of duties arising under the CSA, the scope and the contour of any such duties that exist, and whether [their conduct] amounted to a breach of that duty" present "nearly pure issues of law that would necessarily have application to other federal cases," including the MDL.[70] This brief discussion is unpersuasive. Moreover, on their face, the issues McKesson recites appear "fact-bound" and "situation-specific," auguring against federal jurisdiction.

**D. Federal and state balancing of judicial responsibilities is served by declining federal question jurisdiction in this action.**

In the federal question jurisdiction analysis, the court must lastly determine whether federal courts may resolve the issues raised in Plaintiffs' Complaint "without disturbing any congressionally-approved balance of federal and state judicial responsibilities."[71] The *Grable* Court explained that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."[72] Thus, there must be "an assessment of any disruptive potent in exercising federal jurisdiction."[73]

The *Grable* Court noted that the finding of federal question jurisdiction over a quiet title claim depending on a disputed provision of federal law concerning IRS notice would not disrupt the "federal-state division of labor" because only a rare state quiet title case would raise a contested matter of federal law; thus the effect of finding jurisdiction would be "microscopic."[74] But that court acknowledged that the opposite would have been true had federal jurisdiction been found in *Merrell Dow*.

In *Merrell Dow*, the combination of a lack of private right of action under the relevant drug labeling statute (FDCA), and the fact that the statute did not preempt state causes of action was an "important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331."[75] The lack of a private right of action was a "missing welcome mat" to federal court which was required under the specific facts of that case−where the alleged breach of a federal law was being used in the context of "garden variety state tort" claims.[76] Exercising federal question jurisdiction "over state claims resting on federal mislabeling or other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."[77] Thus, the *Merrell Dow* Court staved off a "horde of original filings and removal cases" under those circumstances by closing the door to federal question jurisdiction.

The court finds the *Merrell Dow* analysis compellingly applicable. Even if there were a disputed substantial federal question within Plaintiffs' state law claims, the balancing of federal and state judicial responsibilities weighs in favor of declining federal jurisdiction. The parties do not dispute that the CSA does not provide a private right of action and has not preempted the entire field it covers. The Complaint's brief discussion of the Distributors' alleged violations of the CSA−whether as mere factual context, or evidence of their breach of a duty (as the *Merrell Dow* plaintiffs had used the FDCA)−cannot give rise to federal jurisdiction in an action involving only state law tort and statutory claims, particularly where doing so would almost certainly give rise to a flood of federal court original and removed filings.[78]

**\*9** McKesson's only argument to the contrary is that because federal courts are the exclusive venue for "challenges to DEA authority" to enforce the CSA against distributors, including disputes involving injunctions, "federal courts already are the exclusive forum for determining the scope of restraints on Distributors under the federal CSA."[79] It is unclear to the court how McKesson's argument concerning actions against the federal government applies in the context of this non-agency action, not brought directly pursuant to a CSA provision. In any event, the argument is unpersuasive.

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

**E. Abstention doctrines.**

In view of the foregoing, it is unnecessary to discuss Plaintiffs' arguments concerning abstention.

**IV. Conclusion and Order.**

For the reasons discussed, the court concludes it lacks federal subject matter jurisdiction over any claims in this action. The case therefore must be remanded.[80]

Accordingly, Plaintiffs' Motion to Remand is GRANTED. This action is REMANDED to Utah's Eighth District Court, Uintah County. The clerk of court is directed to CLOSE this case.

SO ORDERED this 7th day of August 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3747847

Footnotes

1    Dkt. 6.
2    Utah Case No. 180800056.
3    Dkt. 2-2 ¶¶ 744-817.
4    Dkt. 2.
5    *Id.* at 3 ¶ 8.
6    Dkt. 2-2 ¶ 711.
7    *Id.* ¶¶ 712-13.
8    *Id.* ¶ 714-15.
9    *Id.* ¶ 716.
10   *Id.* ¶¶ 726-27.
11   *Id.* ¶¶ 717-18, 724, and 741.
12   *Id.* ¶¶ 739-40.
13   21 U.S.C. §§ 801 *et seq.*
14   Plaintiffs point out that they refer to the CSA three times in their Complaint: in footnote 4 on page 3, and at paragraphs 658 and 741. (Dkt. 6 at 11 n.1 (using court's pagination) ).
15   Dkt. 2 at 3 ¶ 8.
16   While McKesson argues Plaintiffs rely solely on federal law, it also acknowledges in its Notice of Removal and subsequent briefing that Plaintiffs cite "Utah laws [and] regulations" in their Complaint to show the Defendants owed duties. But, McKesson contends those cited state law bases for duties will not succeed on their merits. *See* Notice of Removal (Dkt. 2) n. 4 (noting "even when Plaintiffs purport to rely on state law, the only source of the alleged duties is the federal CSA.").
17   Dkt. 2 at 5 ¶ 20.
18   Dkt. 6.
19   Dkt. 7.
20   Dkt. 6-1.
21   McKesson states in its Notice of Removal that it removed this action with the intent of tagging it for transfer into the MDL. (Dkt. 2 at 3 ¶ 10).
22   Dkts. 8, 10, 11.
23   Dkt. 11.
24   Dkt. 14.
25   Dkt. 16. At the time the undersigned received this case, it was already presiding over a related case, Case No. 1:18-cv-00089, *Weber County, et al. v. Purdue Pharma, L.P.*
26   Dkt. 17.
27   Dkt. 2129 in MDL No. 2804.
28   *Id.* at 1.
29   Dkt. 18.

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 111 of 127

Uintah County, Utah v. Purdue Pharma, L.P., Not Reported in Fed. Supp. (2018)

2018 WL 3747847

30  Dkt. 19.

31  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012) (citations omitted).

32  *Id.* (citations omitted).

33  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (citations omitted).

34  *Id.* at 808 (citations omitted).

35  *Devon*, 693 F.3d at 1202 (citations omitted).

36  *Id.* (citations omitted).

37  *Merrell Dow*, 478 U.S. at 808.

38  *Id.* at 809.

39  *Empire Healthchoice Assur., Inc., v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) ).

40  *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

41  *Empire Healthchoice*, 547 U.S. at 699.

42  *Id.* at 701.

43  *Merrell Dow*, 478 U.S. at 813 (citations omitted).

44  *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012).

45  *Merrell Dow*, 478 U.S. at 805-06.

46  *Id.* at 813.

47  *Id.* at 816.

48  478 U.S. 804 (1986) (quoting 28 U.S.C. § 1331).

49  545 U.S. 308.

50  *Id.* at 310-11.

51  *Id.* at 314-15.

52  *Id.* at 315.

53  *Id.*

54  *Id.* at 318.

55  *Id.* at 319.

56  *Id.*

57  In *Devon*, the Tenth Circuit noted in citing cases where federal question jurisdiction had arisen that it was in those cases "*necessary* for the court to interpret a disputed issue of federal-law in order for the plaintiffs to establish their state law claims." 693 F.3d at 1211 (citing *Grable*, 545 U.S. at 315) (other citations omitted) (emphasis in original). But a "possibility that a federal issue might arise relative" to the claims "is not enough" to establish jurisdiction. *Id.*

58  *See* discussion in Dkt. 19 at pages 5-10 (using the court's pagination).

59  Dkt. 18 at 9 n. 3 (using court's pagination).

60  *Id.*

61  The Tenth Circuit has determined that the obligation to remand pursuant to 28 U.S.C. § 1447 where the court lacks subject matter jurisdiction applies even in cases where the remanded claims might be futile. *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220 (10th Cir. 2012) (noting that the Supreme Court has suggested that "§ 1447(c) mandates remand without a futility exception") (citing *International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 1991) ); *Jepsen v. Texaco, Inc.*, 1995 WL 607630, *3 (10th Cir. Oct. 16, 1995) (rejecting futility argument in light of § 1447 and the *International Primate Prot. League* case; noting that "[t]o hold otherwise would require this court to speculate on an application of state law, an endeavor we decline.").

62  Dkt. 18 at 11 (using court's pagination).

63  *Id.* at 8 (using court's pagination).

64  *Gunn v. Minton*, 568 U.S. 251, 260 (2013).

65  *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947-48 (10th Cir. 2014) (quoting *Empire Healthchoice*, 547 U.S. at 700-01).

66  Dkt. 18 at 12-13 (using court's pagination).

67  Though not dispositive, it bears noting that Congress did not see fit to permit a private right of action under the CSA. *See Grable*, 545 U.S. at 318 (noting that absence of a federal private right of action is relevant but not dispositive to "the sensitive judgments about congressional intent that § 1331 requires.").

2018 WL 3747847

| | |
|---|---|
| 68 | Dkt. 18-1. |
| 69 | Dkt. 19 at 11 (using court's pagination). |
| 70 | Dkt. 18 at 14 (using court's pagination) (citations omitted). |
| 71 | *Grable,* 545 U.S. at 314. |
| 72 | *Id.* |
| 73 | *Id.* |
| 74 | *Id.* at 315. |
| 75 | *Id.* at 318 |
| 76 | *Id.* |
| 77 | *Id.* at 319. |
| 78 | *See id.* at 318-19 (noting that the violation of federal law is often used by plaintiffs asserting state law tort claims as evidence of negligence per se) (citations omitted). |
| 79 | Dkt. 18 at 15 (using the court's pagination). |
| 80 | 28 U.S.C. § 1447(c) instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." |

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

*New Hampshire v. Purdue Pharma, et al.*,
2018 WL 333824 (D.N.H. Jan. 9, 2018)

New Hampshire v. Purdue Pharma, Not Reported in Fed. Supp. (2018)

2018 WL 333824, 2018 DNH 006

2018 WL 333824

NOT FOR PUBLICATION
United States District Court, D. New Hampshire.

State of NEW HAMPSHIRE
v.
PURDUE PHARMA, et al.

Case No. 17-cv-427-PB
|
Signed 01/09/2018

**Attorneys and Law Firms**

James T. Boffetti, NH Attorney General's Office, Concord, NH, Linda Singer, Motley Rice LLC, Washington, DC, for State of New Hampshire.

David A. Vicinanzo, W. Daniel Deane, Nixon Peabody LLP, Manchester, NH, Mara Cusker Gonzalez, Mark Cheffo, Quinn Emanuel Urquhart & Sullivan LLP, New York, NY, for Purdue Pharma, et al.

**MEMORANDUM AND ORDER**

Paul Barbadoro, United States District Judge

**\*1** The State of New Hampshire has sued Purdue Pharma[1] based on misrepresentations Purdue allegedly made to the state's consumers concerning the risks and benefits of the company's opioid pain medications. The State filed its complaint in Merrimack County Superior Court and Purdue later removed the case to this court. Purdue argues that the court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), but the State has challenged Purdue's jurisdictional argument in a motion to remand. The current dispute turns on whether the case is removable under CAFA as a "class action."

# I. BACKGROUND

For at least 20 years, Purdue has manufactured, marketed, and sold opioid pain medications in New Hampshire and elsewhere.[2] During this period, Purdue spent hundreds of millions of dollars promoting its medications in ways that falsely and misleadingly minimized the risks of opioid addiction and overstated the benefits Purdue's medications could provide. As a direct result, opioid addiction, overdoses, and deaths have exploded, to the point where the Center for Disease Control has described the current situation as a "public health epidemic." Doc. No. 4 at 8.

The State contends that Purdue's false and misleading marketing campaign has injured the State, its municipalities, and its consumers. It asserts claims for violations of New Hampshire's Consumer Protection Act ("CPA"), N.H. Rev. Stat. § 358-A; violations of the New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. § 167:61-b, Public Nuisance, Unjust Enrichment, and Fraudulent or Negligent Misrepresentation. The State seeks to recover damages for its own injuries as well as injunctive relief, civil penalties, restitution, abatement, and attorneys' fees on behalf of itself, its municipalities, and its consumers.

# II. STANDARD OF REVIEW

The State bases its remand motion on 28 U.S.C. § 1447(c), which requires a federal court to remand a removed case if the court lacks subject matter jurisdiction.

Purdue has responded by claiming that CAFA gives the court jurisdiction to consider the State's complaint. A defendant who removes a case under CAFA must plausibly allege that each of CAFA's jurisdictional requirements have been satisfied. See Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547, 554 (2014). If the plaintiff disputes the evidentiary basis for the defendant's assertion of jurisdiction, the defendant must also establish a "reasonable probability" that the facts support the defendant's jurisdictional claim. See Pazul v. Tough Mudder, 819 F.3d 548, 552 (1st Cir. 2016) (amount in controversy requirement). At that point, the burden shifts to the plaintiff to demonstrate that the case is subject to one of CAFA's exceptions. See Dutcher v. Matteson, 840 F.3d 1183, 1190 (10th Cir. 2016).

**\*2** Both parties rely exclusively on the complaint to support their jurisdictional arguments. Thus, the issue I must decide is whether the complaint alleges claims that CAFA grants the court jurisdiction to consider. In resolving this issue, I construe the complaint generously in favor of jurisdiction and do not employ any presumption against removability. See Dart, 135 S.Ct. at 554 (rejecting presumption against removability in CAFA cases).

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 115 of 127

New Hampshire v. Purdue Pharma, Not Reported in Fed. Supp. (2018)

2018 WL 333824, 2018 DNH 006

## III. UNDERLINE ANALYSIS

CAFA authorizes federal courts to exercise subject matter jurisdiction over certain "class actions" that would not otherwise meet the requirements of the diversity jurisdiction statute. Mississippi ex rel. Hood v. AU Optronics Corp., 134 S.Ct. 736, 739 (2014). A CAFA class action is "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by [one] or more representative persons as a class action."[3] 28 U.S.C. § 1332(d)(1)(B).

The State does not base its complaint on Rule 23. Accordingly, Purdue's jurisdictional argument turns on whether the complaint is premised on a "similar" state statute or rule of judicial procedure that authorizes the State to bring the case as a class action. I answer this question by first reviewing the requirements for a Rule 23 class action and then examining the complaint to determine whether it is sufficiently similar to a Rule 23 class action to be removable under CAFA.

### A. Rule 23

A Rule 23 class action is an action in which "[o]ne or more members of a class" are authorized to sue "as representative parties on behalf of all [class] members...." Fed. R. Civ. P. 23. Although all Rule 23 class actions are representative actions, the converse proposition is not also true. Instead, to qualify as a class action under Rule 23, a representative action must have at least the following additional characteristics: (1) too many plaintiffs to join through a typical joinder motion ("numerosity"), (2) certain common factual or legal issues shared by each member of the class ("commonality"), (3) a named plaintiff whose claim is typical of the claims of the unnamed plaintiffs ("typicality"), and (4) a named plaintiff who is an adequate representative of the unnamed plaintiffs' interests ("adequacy"). Fed. R. Civ. P. 23(a); Amchem Products Inc. v. Windsor, 521 U.S. 591, 613 (1997) ("Rule 23(a) states [the] four threshold requirements applicable to all class actions....").

Rule 23 class actions also differ from other representative actions in that they are subject to greater supervision by the court. A case cannot proceed as a class action under Rule 23 unless it is certified as such by the court. Fed.

R. Civ. P. 23(c)(1). The court ordinarily must appoint class counsel. Fed. R. Civ. P. 23(g). A class action also cannot be voluntarily dismissed, settled, or compromised without the court's approval. Fed. R. Civ. P. 23(e).

### B. The Complaint

The State asserts that it has sued Purdue to vindicate its own proprietary and quasi-sovereign interests rather than the specific interests of individual consumers. Thus, to the extent that the complaint seeks relief that will also benefit its municipalities and citizens, the State claims that it is pursuing a straightforward parens patriae action that bears no resemblance to a Rule 23 class action. I agree.

**\*3** A parens patriae action is unlike a Rule 23 class action in that a state may sue on behalf of its citizens without proof of numerosity, commonality, typicality, or adequacy. It also differs from a class action because the court has no power to prevent a state from proceeding with a parens patriae action by refusing to certify a class. Nor does the court have the power in such an action to appoint plaintiff's counsel or prevent the state from dismissing, settling, or compromising its claims. These important differences leave Purdue with an unpersuasive claim that the two types of actions are in any way similar.

More fundamentally, a parens patriae action is unlike a class action because a state's power to sue on behalf of others derives from its sovereign power to protect its citizens rather than its status as a member of a class of injured plaintiffs. As the Supreme Court has long recognized, "[t]his prerogative of parens patriae is inherent in the supreme power of every State, whether that power is lodged in a royal person or the legislature and is a most beneficent function often necessary to be exercised in the interests of humanity, and for the protection of those who cannot protect themselves." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 600 (1982) (quoting Mormon Church v. United States, 136 U.S. 1, 57 (1890)). CAFA does not clearly signal an intention by congress to deprive states of their sovereign power to litigate their parens patriae claims in their own courts and I am unwilling to read such an intent into statutory language that appears on its face to cover only traditional class action claims. Accordingly, I agree with those courts that have concluded that a parens patriae action ordinarily is not removable under CAFA as a class action. See, e.g., Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 216 (2d Cir. 2013); Mississippi ex rel. Hood v. Av Optronica Corp., 701 F.3d 796, 798-99 (5th Cir. 2012), rev'd on other grounds, 134 S.Ct.

**New Hampshire v. Purdue Pharma, Not Reported in Fed. Supp. (2018)**

2018 WL 333824, 2018 DNH 006

736, 739 (2014); LG Display Co. v. Madigan, 665 F.3d 768, 774 (7th Cir. 2011); Washington v. Chimei Innolux Corp., 659 F.3d 842, 848-49 (9th Cir. 2011); West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 172 (4th Cir. 2011).

Purdue acknowledges the precedent favoring the State's argument, but contends that this case is different because the State has exceeded the limits of a traditional parens patriae action by seeking restitution on behalf of specific individuals rather than attempting to promote only the general health and welfare of its citizens.[4] Because the State seeks individualized relief on behalf of injured consumers, Purdue argues, the case is more properly viewed as a class action than a parens patriae action. I am unpersuaded by this argument even if I accept Purdue's characterization of the complaint. A state's action on behalf of its citizens does not become a class action merely because it seeks injunctive relief that benefits individual class members. The Fourth Circuit forcefully made this point in West Virginia ex rel. McGraw, 646 F.3d 169 (4th Cir. 2011) by drawing an analogy to the Supreme Court's decision in General Telephone Co. v. EEOC, 446 U.S. 318 (1980), which concluded that an EEOC action under Title VII did not have to comply with Rule 23 even though the EEOC was authorized to seek specific relief on behalf of individual employees. West Virginia ex rel. McGraw, 646 F.3d at 177 (citing General Telephone Co., 446 U.S. at 334 & n.16; see also In re Edmond, 934 F.2d 1304, 1310-13 (4th Cir. 1991)) (Attorney General's claim in bankruptcy proceeding on behalf of state's consumers need not comply with Rule 23 even though action sought specific relief on behalf of individual consumers). Accordingly, this action is not similar to a Rule 23 action merely because it seeks restitution on behalf of its citizens along with other forms of equitable relief.

*4 Purdue also argues that the complaint is similar to a Rule 23 class action because the State has based its CPA claims on N.H. Rev. Stat. Ann. § 358-A:10-a, which authorizes a person injured by a CPA violation to bring a class action on behalf of other injured parties. This argument fails because it attributes a claim to the State that it does not make.

In addition to authorizing injured persons to bring class actions, the CPA specifically empowers New Hampshire's Attorney General to bring parens patriae claims in the name of the State to obtain injunctive relief and restitution on behalf of private parties for CPA violations. N.H. Rev. Stat. Ann. § 358-A:4. The State has based its CPA claims on this provision rather than the Act's class action provision. Because the State is the master of its complaint, see Purdue Pharma, 704 F.3d at 216 n.7, that ends the matter.

## IV. CONCLUSION

Purdue argues that the State's complaint should be treated under CAFA just like any other representative action in which one or more members of a class sue on behalf of others who have suffered similar injuries. This argument fails to sufficiently account for both the State's sovereign power to sue on behalf of its citizens and its governmental duty to protect the health and welfare of its citizens. Opioid addiction costs the lives of hundreds of the State's citizens each year. It has flooded the State's prisons, demanded a vast commitment of law enforcement resources, and strained the capacity of the State's first responders. Deaths from overdoses continue to occur at an alarming rate. When the State sues to protect its citizens from such ongoing injuries, it is not acting merely as a member of a class of injured persons seeking to obtain compensation on behalf of others. It is acting in a sovereign capacity to protect its citizens. CAFA does not deprive states of the power to litigate such claims in their own courts. For the aforementioned reasons, I grant the State's motion to remand the case to state court.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2018 WL 333824, 2018 DNH 006

Footnotes

1    The complaint names Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company, Inc. as defendants. For purposes of this motion, both the plaintiff and defendants have treated these three corporations as one entity, and I will do the same.

2    I draw the allegations in this paragraph from the complaint and assume the allegations to be true for purposes of analysis.

2018 WL 333824, 2018 DNH 006

3    CAFA also treats "mass action[s] as class actions," 28 U.S.C. § 1332(d)(11)(A). This provision is not relevant here because Purdue does not claim that this case is a mass action.

4    Purdue also argues that this case is not a true parens patriae action because the State is attempting to recover damages on behalf of its municipalities and citizens in addition to equitable relief. This argument is based on a misreading of the complaint. Although the State seeks damages for its own injuries, it has limited its request for relief on behalf of others to traditional forms of equitable relief, such as injunctive relief, an order of abatement, and restitution.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

*W. Virginia ex rel. Morrisey v. McKesson Corp.*,
No. CV 16-1772,
2017 WL 357307 (S.D.W. Va. Jan. 24, 2017)

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 119 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

2017 WL 357307
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia,
at Charleston.

The STATE OF WEST VIRGINIA EX REL.
Patrick MORRISEY, Attorney General,
Joseph Thornton, in his capacity as the
Secretary of the West Virginia Department
of Military Affairs and Public Safety, and
Karen Bowling, in her capacity as the
Secretary of the West Virginia Department
of Health and Human Resources, Plaintiffs,
v.
MCKESSON CORPORATION,
a Delaware corporation doing
business in West Virginia, Defendant.

Civil Action No. 16-1772
|
Signed 01/24/2017

**Attorneys and Law Firms**

L. Lee Javins, II, Bailey Javins & Carter, Vaughn T. Sizemore, Bailey & Wyant, Charleston, WV, for Plaintiffs.

Devon J. Stewart, Russell D. Jessee, Steptoe & Johnson, Charleston, WV, Geoffrey Hobart, Matthew Benov, Covington & Burling, Washington, DC, for Defendant.

MEMORANDUM OPINION AND ORDER

John T. Copenhaver, Jr., United States District Judge

*1 Pending is plaintiffs' motion to remand, filed on March 3, 2016 (ECF No. 8).

I. Facts and Procedural Background

Plaintiffs State of West Virginia ex rel. Patrick Morrisey, Attorney General, Joseph Thornton, Secretary, and Karen Bowling, Secretary, allege that defendant McKesson

Corporation, a national pharmaceutical drugs distributor, did not take sufficient steps to monitor, report, and remedy purportedly suspicious shipments of pharmaceuticals into West Virginia. Plaintiffs brought this case against defendant in the Circuit Court of Boone County, West Virginia, on January 8, 2016. Defendant removed on February 23, 2016, alleging federal question jurisdiction.

Plaintiffs' amended complaint ("complaint") alleges that defendant has caused substantial damage to the state of West Virginia and to various state agencies. For example, it alleges that

[t]he actions of the Defendant have caused and will continue to cause the West Virginia [Department of Health and Human Resources ("DHHR") ] to expend substantial sums of State money to deal with the effects of epidemic of prescription drug addiction that was substantially fueled by the Defendant's illegal, reckless, and malicious action in flooding the state with highly addictive prescription medications without regard for the consequences to West Virginia DHHR.

Am. Compl. ¶ 26 (hereinafter "Compl."). Likewise, it alleges that

[t]he actions of the Defendant has caused, and will continue to cause the West Virginia [Department of Military Affairs and Public Safety] to expend substantial sums of State money to deal with the effects of epidemic of prescription drug addiction that was substantially fueled caused [sic] by the Defendant's illegal, reckless, and malicious action in flooding the state with highly addictive prescription medications without regard for the consequences to the Plaintiffs.

Compl. ¶ 33. The Prayer for Relief requests that the court certify "a jury trial on all issues so triable to determine costs, losses, and damages as a result of the Defendant's actions outlined in this Complaint." Compl. p. 58 (WHEREFORE clause). In addition, it requests both temporary and permanent injunctions

preventing Defendant from continuing to violate West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State and mandate Defendant to promptly notify the West Virginia Board of Pharmacy, Office of the Attorney General, and the WV Department of Military Affairs and Public Safety of any and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

determining suspicious order [sic] to those West Virginia authorities for prior approval, and to enjoin Defendant from distributing any controlled substance in West Virginia for any non-legitimate medical purpose.

Id. p. 58-59 (WHEREFORE clause).

The complaint alleges that defendant McKesson Corporation failed to implement systems and procedures to report and prevent massive diversion of prescription drugs to illegal purposes in West Virginia. See, e.g., Compl. ¶¶ 347, 353, 366. Plaintiffs allege that McKesson is liable on eight counts: violation of the West Virginia Consumer Credit and Protection Act (Count I); unfair methods of competition and/or unfair or deceptive acts or practices (Count II); violations of the West Virginia Uniform Controlled Substances Act ("WVCSA") requiring injunctive relief (Count III); negligent violation of the WVCSA (Count IV); intentional violation of the WVCSA (Count V); public nuisance (Count VI); negligence (Count VII); and unjust enrichment (Count VIII).

**\*2** Counts III, IV, and V, relating to the WVCSA, also make reference to "United States laws and regulations." Those three counts are the only ones that do so. In Count III, plaintiffs state their entitlement to both a temporary and a permanent injunction "to prevent Defendant from continuing to violate West Virginia and United States laws and regulations." Id. ¶¶ 374-75. In Count IV, plaintiffs allege that "[u]pon information and belief, Defendant continues to negligently violate West Virginia laws and regulations, United States laws and regulations, and Defendant's industry customs, standards and practices, which continue to proximately cause substantial damages to Plaintiffs." Id. ¶ 390. Count V reiterates this allegation, but alleges intentional violations. Id. ¶ 403. In addition, the Prayer for Relief requests temporary and permanent injunctions preventing "Defendant from continuing to violate West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State." Id. p. 58-59 (WHEREFORE clause).

In response to defendant's removal, plaintiffs filed the pending motion to remand. Plaintiffs argue that the complaint does not allege any federal claims, and plaintiffs contend that the complaint disclaims federal law as the source of the State of West Virginia's cause of action. The complaint does not explicitly disclaim federal law, but it does allege similarity between the claims at issue here and those at issue in cases previously remanded by this court to state court for lack of federal diversity jurisdiction. Compl. ¶ 37. It states the

corollary that there is "no objectively reasonable basis for jurisdiction in any other court." Id.

Plaintiffs also claim that, on its face, the complaint does not rely on federal law to generate a cause of action, despite the smattering of nonspecific references in three Counts to "United States laws and regulations." See Compl. ¶¶ 374 (Count III), 390 (Count IV), 403 (Count V). Plaintiffs explain these references as merely incorporating references to federal law that exist in pertinent West Virginia state licensure law. Pls.' Mem. in Supp. Mot. to Remand 2 (hereinafter "Pls.' Mot."). State law provides that one of the qualifications for licensure is that an applicant operate "in compliance with all federal legal requirements applicable to wholesale drug distribution." W. Va. Code § 60A-8-7(c)(1)(I).

The complaint does not reference particular federal laws, although it contains numerous specific references to state statutes and regulations. For example, the complaint alleges that "Defendant was on notice that West Virginia law required it, inter alia, to provide effective controls and procedures to guard against diversion of controlled substances, pursuant to 15 C.S.R. § 2-4.2[.]1 and 2-4.4 and the [WVCSA]." Compl. ¶ 42. West Virginia rule 15-2-4.2.1 states as follows:

All registrants[1] shall provide effective controls and procedures to guard against theft and diversion of controlled substances. In order to determine whether a registrant has provided effective controls against diversion, the [West Virginia] Board [of Pharmacy] shall evaluate the overall security system and needs of the applicant or registrant.

W. Va. C.S.R. 15-2-4.2.1. Rule 15-2-4.4 further requires as follows:

The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

W. Va. C.S.R. 15-2-4.4.

**\*3** The complaint specifically alleges violations of West Virginia laws and regulations in the three Counts identified by defendant as referencing federal law. Count III alleges, inter alia, as follows:

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 121 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

363. Defendant is required to "provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 C.S.R. § 2-4.2.1

....

365. Suspicious orders include any orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency. 15 C.S.R. § 2-4.4.

366. Defendant failed to diligently identify and report suspicious orders it received. Defendant continued to fill suspicious orders.

367. Defendant either blindly ignored suspicious orders or failed to develop a system sufficient to adequately identify suspicious orders as they were received.

Compl. ¶¶ 363-67. Count IV alleges, inter alia, the following:

377. The Defendant contributed to the epidemic prescription drug abuse problem in the State of West Virginia through repeated negligent violations of various provisions of the West Virginia Uniform Controlled Substances Act, to wit:

....

● Defendant negligently engaged in prohibited acts, contrary to W.Va. Code §§ 60A-4-401 through 403[2];

● Defendant negligently abetted and continue [sic] to abet individuals in deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in violation of W.Va. Code § 60A-4-401.

● The Defendant negligently failed to meet the requirements of W.Va. Code § 60A-8-1 et seq.[3]

● The Defendant negligently conspired to violate the WV Uniform Controlled Substances Act.

Compl. ¶ 377. Finally, Count V alleges, inter alia, the following:

392. The Defendant intentionally contributed to the epidemic prescription drug abuse problem in the State of West Virginia through repeated intentional violations of various provisions of the West Virginia Uniform Controlled Substances Act and through reckless disregard to the safety and well-being to [sic] the citizens of West Virginia, to wit:

....

● Defendant intentionally engaged in prohibited acts, contrary to W.Va. Code §§ 60A-4-401 through 403;

● Defendant intentionally abetted and continue [sic] to abet individuals in deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in violation of W.Va. Code § 60A-4-401.

● Defendant intentionally failed to meet the requirements of W.Va. Code § 60A-8-1 et seq.

● Defendant intentionally conspired to violate the WV Uniform Controlled Substances Act.

Compl. ¶ 392.

**\*4** Plaintiffs also contend that "[e]ven if this Court finds the State's Amended Complaint implicates federal law, it still does not rise to the level of a substantial federal question" under Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308 (2005), discussed further at page twelve, infra. Pls.' Mot. 13.

Defendant responds that plaintiffs' complaint can be reduced in substance to a theory of the case in which defendant breached a single "duty to refuse to fill suspicious orders" of certain pharmaceutical drugs. See, e.g., Def.'s Resp. to Pls.' Mot. to Remand 6 (hereinafter "Def.'s Resp."). Defendant argues that the federal Controlled Substances Act ("federal CSA") alone can generate the duty that defendant is alleged to have breached. Def.'s Resp. 10 ("No court could issue the requested instructions without specifically concluding that McKesson violated federal law—i.e., the federal CSA."). According to defendant, the duty to refuse to fill suspicious orders does not arise directly from the federal CSA; instead, it arises, if at all, in the federal CSA "as interpreted by [the Drug Enforcement Agency ("DEA") ]" in two letters, written in 2006 and 2007, from the DEA to all registered distributors. Id. 7, 15.[4]

The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate ... channels." Masters Pharmaceuticals, Inc., Decision and Order, 80 Fed. Reg. 55,418, 55,421. The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted." Masters Pharmaceuticals, 80 Fed. Reg. at 55,421.

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 122 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

Defendant argues that the two letters together generate a single duty to "refuse to fill suspicious orders" that forms the basis of all of plaintiffs' claims. See, e.g., Def.'s Resp. 6.[5] Defendant also contends that removal is improper only if plaintiffs rely exclusively on state law claims, which defendant says they allegedly do not. Rather, defendant asserts that federal claims are present on the face of the complaint in Counts III, IV, and V in the references to "United States laws and regulations," and that all of plaintiffs' claims depend on a substantial federal question.

II. Analysis

A. Removal Standards

The issue before the court is whether plaintiffs' complaint states a claim sufficiently federal in nature to justify the exercise of federal question removal jurisdiction by this court. Federal courts are not courts of general jurisdiction: they "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Jurisdiction is "determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration." Taylor v. Anderson, 234 U.S. 74, 75 (1914). The most obvious manner of establishing jurisdiction is by pleading a federal cause of action. See, e.g., Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006). Additionally, the "plaintiff is the 'master of the claim.' " Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).

**\*5** In the event a case is not properly removed to federal court, the court must remand the case to state court. 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). For the purpose of removal jurisdiction, defendant bears the burden of "demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). The Supreme Court has stated that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." Franchise Tax Bd. of State of Cal. v. Constr. Laborers

Vacation Tr. for S. Cal., 463 U.S. 1, 21 n.22 (1983). Indeed, a state court is often "competent to apply federal law, to the extent it is relevant." Empire Healthchoice, 547 U.S. at 701. Courts disfavor removal jurisdiction particularly when a case involves substantial questions of state law. See Bender v. Jordan, 623 F.3d 1128, 1130 (D.C. Cir. 2010) ("[F]ederal jurisdiction is disfavored for cases that are 'fact-bound and situation-specific' or which involve substantial questions of state as well as federal law."); Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005) ("[S]tate law complaints usually must stay in state court when they assert what appear to be state law claims.").

Federal jurisdiction may arise under the "well-pleaded complaint rule" even when the complaint does not explicitly plead a federal cause of action. A suit arises under this rule "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax, 463 U.S. at 13. The leading case in such a situation is Grable, 545 U.S. 308 (2005) (finding removal jurisdiction where plaintiff brought an action in state court to quiet title in deed for property that had been confiscated by IRS under federal tax law, concerning which plaintiff alleged IRS had failed to notify him in accordance with federal law). Id. at 310-11.

Where a complaint implicates federal law, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314. "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013). Grable jurisdiction, however, exemplifies a "slim category" of cases. Empire Healthchoice, 547 U.S. at 701; W. Va. ex rel. McGraw v. Rite Aid of W. Va., Inc., No. CIV.A. 2:09-0956, 2010 WL 454488, at \*2 (S.D.W. Va. Feb. 1, 2010) (" 'Obviously, not every state-law claim raising a federal issue can invoke federal question jurisdiction. Indeed, such cases will be exceptional.' " (quoting Wright & Miller, Fed. Prac. and Proc. § 3562 (3d ed. 1998))). Alleging there is a "federal issue" is not a "password opening federal courts to any state action embracing a point of federal law." Grable, 545 U.S. at 314. Furthermore, "any doubts concerning the propriety of removal should be resolved against removal."

Case 2:21-cv-04701-JS Document 2 Filed 10/27/21 Page 123 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

Barbour v. Int'l Union, 640 F.3d 599, 617 (4th Cir. 2011) (emphasis original).

**B. Plaintiffs' Facial Claims**

Plaintiffs seek remand first by noting that the complaint disavows any dependence upon federal law. Indeed, the complaint does disavow any relief for federal monies expended under federal programs such as Medicaid, Compl. ¶ 36; and it identifies prior cases of this court that were remanded under similar factual scenarios, and it also specifies West Virginia courts as the only courts properly having jurisdiction, id. ¶ 37.

Defendant, however, is correct that the complaint does reference federal laws and regulations generally on occasion. The 61-page pleading references "United States laws and regulations" a total of nine times, including in the Prayer for Relief and Counts III (injunctive relief under WVCSA), IV (negligence under WVCSA), and V (intentional acts under WVCSA). The Prayer requests temporary and permanent injunctions preventing "Defendant from continuing to violate West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State." Id. p. 58-59 (WHEREFORE clause). In Count III, plaintiffs state their entitlement to both a temporary and a permanent injunction "to prevent Defendant from continuing to violate West Virginia and United States laws and regulations." Id. ¶¶ 374-75. In Count IV, plaintiffs allege that "[u]pon information and belief, Defendant continues to negligently violate West Virginia laws and regulations, United States laws and regulations, and Defendant's industry customs, standards and practices, which continue to proximately cause substantial damages to Plaintiffs." Id. ¶ 390. Count V reiterates this allegation with respect to intentional violations. Id. ¶ 403. Aside from these scattered references, however, plaintiffs' complaint does not appeal to recourse under federal law. It neither alleges a federal cause of action nor refers to specific federal statutes or regulations, although it does make many specific references to West Virginia laws and regulations. See, e.g., id. ¶¶ 377, 392.

**\*6** Though defendant asserts that the statements in Counts III, IV, and V amount to "specifically pleading federal law violations," Def.'s Resp. 6, that is patently not the case. In fact, when juxtaposed with the specific references to West Virginia laws alleged in those same Counts, the generic references

to "United States laws and regulations" emerge as nothing more than ambiguous catch-alls. Importantly, these catch-alls are presented by defendant as magic words on the face of the complaint that open the door to the federal courts. See, e.g., Def.'s Resp. 10-11. This argument closely resembles the "password" approach to removal jurisdiction expressly disapproved by Grable. 545 U.S. at 314.

Plaintiffs explain these federal catch-alls in the complaint as references intended, in effect, to mirror the interdependent nature of West Virginia and federal licensure law in this area. Plaintiffs argue that the complaint's federal law references merely point out that "the defendant, as required by state law, must also comply with all federal legal requirements regarding wholesale drug distribution." Pls.' Mot. 16. West Virginia does, in general fashion, on occasion incorporate references to federal law into its state licensure statute. For example, as plaintiffs note, West Virginia Code § 60A-8-7 states as one of the minimum qualifications of licensure that an applicant maintain "operations in compliance with all federal legal requirements applicable to wholesale drug distribution." W. Va. Code § 60A-8-7(c)(1)(I). Plaintiffs do not allege, however, that such federal law provides either a cause of action or a basis for a legal duty violated here, and as such it cannot be a basis for federal jurisdiction.

**C. Federal Issue Analysis under Grable**

With respect to whether the complaint raises a federal issue, even if it does not state a federal claim on its face, defendant argues that all of plaintiffs' claims necessarily reduce to an allegation of the violation of a substantial federal duty—the duty to refuse to fill suspicious orders. Defendant contends that "in addition to specifically pleading federal law violations in Counts III, IV, and V, all Plaintiffs' claims necessarily depend on McKesson's alleged violation of a duty that may be found, if at all, only in federal law." Def.'s Resp. 6. This duty is, according to defendant, McKesson's "duty to refuse to fill suspicious orders." Id.

Defendant does not find the source of this duty in the federal CSA statute itself, but in the DEA letters' interpretation of the federal CSA. Defendant contends that "if a requirement to refuse to fill suspicious orders of controlled substances exists at all," it exists in the two letters from the DEA to distributors, dated September 27, 2006 and December 27, 2007, that interpreted the CSA. The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 124 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate ... channels." Masters Pharmaceuticals, 80 Fed. Reg. at 55,421. The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted." Masters Pharmaceuticals, 80 Fed. Reg. at 55,421.

Under Grable's test, a properly removed claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. See also Gunn, 133 S. Ct. at 1065 (noting that under Grable "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").

*7 Plaintiffs dispute that their allegations fulfill the first prong of Grable of necessarily depending on the single duty identified by defendant—to avoid filling suspicious orders. First, they correctly note that the federal CSA statute imposes no explicit duty to refuse orders—the only duty defendant claims to be at issue—on distributors. See 21 U.S.C. § 823 (requiring only that distributors "maint[ain] effective control against diversion of particular controlled substances"). Likewise, they correctly observe that defendant undermines its own argument by calling into question the existence of the duty in which it finds the only source of federal question jurisdiction. See Def.'s Resp. 8 ("if a requirement to refuse to fill suspicious orders ... exists at all").

Second, plaintiffs contend that the allegations in their complaint depend, inter alia, on state-law duties imposed on the defendant to design and operate a system to detect, monitor, identify, and report suspicious orders, not only a duty to refuse to fill such orders. See, e.g., Compl. ¶ 24 (alleging that "West Virginia DHHR has been damaged by the Defendant's negligent actions in failing to investigate, report, and cease fulfilling suspicious orders to pharmacies and drug stores in the State of West Virginia"), ¶ 346 (alleging defendant failed to implement a "precise system of detecting and monitoring the supply of prescription medicine"), ¶ 406 (alleging "failure to adequately design and operate a system to disclose suspicious orders of controlled substances, and [ ] failure to inform the State of suspicious orders

when discovered by the registrant"). The complaint cites on numerous occasions to West Virginia regulations, which require, for example, that "[t]he registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances." W. Va. C.S.R. 15-2-4.4. In Count III, plaintiffs allege that defendant "failed to diligently identify and report suspicious orders it received," Compl. ¶ 366, and "failed to develop a system sufficient to adequately identify suspicious orders," id. ¶ 367. Counts IV and V allege violations of West Virginia statutory provisions, including violations of West Virginia Code § 60A-3-308, 60A-4-401 through 403, and 60A-8-1, et seq.[6], that cannot be reduced simply to a duty to avoid filling orders. See, e.g., id. ¶¶ 377, 392.

Third, plaintiffs' allegations do not "necessarily" involve a "stated federal issue." Grable, 545 U.S. at 314. The pleadings certainly do not "state" a federal issue. Even taking the formulation from Gunn that omits the requirement that an issue be stated, 133 S. Ct. at 1065, it is not "necessary" here to resolve a putative federal issue. Even if the only duty at issue were that stipulated by defendant, there is no reason to think its only source lies in two letters from the DEA. The complaint nowhere mentions such letters, or any federal agency guidance, and defendant itself calls into question the very existence of a federal duty.

*8 Furthermore, plaintiffs' complaint alleges violations of numerous duties implicated by state law. For example, the West Virginia State Board of Pharmacy's rules require that "[a]ll registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." W. Va. C.S.R. 15-2-4.2.1. The same rules require that a "registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant." W. Va. C.S.R. 15-2-4.4. As noted above, plaintiffs allege violations of numerous duties implicated by these regulations, including duties to "investigate, report, and cease fulfilling suspicious orders," Compl. ¶ 24, to implement a "precise system of detecting and monitoring the supply of prescription medicine," Compl. ¶ 346, "to adequately design and operate a system to disclose suspicious orders of controlled substances," Compl. ¶ 406, and "to inform the State of suspicious orders," id.

Finally, this case is disanalogous to Grable. Grable upheld removal jurisdiction in a quiet title action because the plaintiff

Case 2:21-cv-04701-JS   Document 2   Filed 10/27/21   Page 125 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

had alleged that the Internal Revenue Service failed properly to notify the plaintiff of the seizure of its property in accordance with a notice provision of the Internal Revenue Code. 545 U.S. at 310. The plaintiff specifically alleged a federal notice statute as "an essential element of its [state law] quiet title claim." Id. at 315. Here, by contrast, plaintiffs have not alleged violations of any specific federal laws or regulations, and no federal statute or regulation has emerged as an "essential element" of the underlying claim. Rather, plaintiffs have alleged numerous and substantial issues of state law in both their complaint and their motion. See, e.g., Compl. ¶¶ 377, 392; Pls.' Mot. 2.

Consequently, it does not appear to the court that the only possible source of a putative duty to avoid filling suspicious orders lies in letters relied upon only by defendant, or that plaintiffs' claims necessarily rely on this duty. For one thing, there are no good reasons to believe that the letters have any binding effect upon distributors. Plaintiffs contend that "the DEA letter[s] do[ ] not create a binding effect upon distributors such as the defendant, and [are] to be construed as [ ] mere warning letter[s]." Pls.' Reply 7 (quotation marks omitted). Defendant concedes that the letters were not binding, but in apparent contradiction, insists that the letters generate an "obligation" that must be "heed[ed]." Def.'s Surreply to Pls.' Reply in Supp. of Mot. to Remand 2. To the extent that the letters prove relevant, their guidance may of course be marshalled in support of particular allegations. The agency itself, however, has found that the letters were "not intended to have binding effect but were simply warning letters." Masters Pharmaceuticals, 80 Fed. Reg. at 55,475. Of course, plaintiffs, not defendant, are "master[s] of the claim." Caterpillar, 482 U.S. at 392.

Defendant cannot stipulate a single duty to refuse to fill suspicious orders, about which defendant is itself ambivalent, generated merely by DEA letters in order to bootstrap into federal court a complaint that alleges numerous specific state-law causes of action. "[F]ederal jurisdiction is disfavored for cases ... which involve substantial questions of state as well as federal law." Bender, 623 F.3d at 1130. Plaintiffs have alleged violations of numerous West Virginia statutes and regulations, and the use of the catch-all "United States laws and regulations" does not operate to unlock the federal courts to the claims at issue here. Even were there some indication from the complaint—which there is not—that federal agency letters provided some binding and relevant duty, "any doubts concerning the propriety of removal should be resolved against removal." Barbour, 640 F.3d at 617. Defendant bears

the burden of quieting such doubts and has not done so here. Strawn, 530 F.3d at 296. Defendant has therefore not made out a case under Grable that all of plaintiffs' claims necessarily hinge on the duty to refuse to fill suspicious orders, and as a consequence, the exercise of removal jurisdiction is improper.

## D. Closing

 **\*9** For the foregoing reasons, the court will remand this case to the Circuit Court of Boone County, West Virginia, for further proceedings.

## III. Costs and Fees

Plaintiffs petition for costs and fees incurred in filing the instant motion. See Pls.' Mot. 18 n.6. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). According to the Supreme Court, the standard for awarding fees depends on reasonableness: "when an objectively reasonable basis [for removal] exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Although it is a close question, the court is of the opinion that there has been presented an objectively reasonable basis for removal in this case. The complaint does contain a smattering of references to federal law and regulations, and the possibility that such references might raise a substantial federal issue is not implausible, if remote. Consequently, the court will not award costs and fees under 28 U.S.C. § 1447(c).

## IV. Conclusion

Accordingly, it is ORDERED that plaintiffs' motion to remand be, and it hereby is, granted, and plaintiffs' motion for costs and fees be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record, any unrepresented parties, and to the Clerk of the Circuit Court of Boone County, West Virginia.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 357307

Case 2:21-cv-04701-JS  Document 2  Filed 10/27/21  Page 126 of 127

State of West Virginia ex rel. Morrisey v. McKesson Corporation, Not Reported in Fed....

2017 WL 357307

Footnotes

1       The State Board of Pharmacy ("Board") regulations define a "registrant" as "a person who has obtained a controlled
        substance permit from the Board." W. Va. C.S.R. 15-2-5.1.16. Furthermore, the WVCSA states that "every person who
        manufactures, distributes, or dispenses any controlled substance" is required to register annually with the Board. See,
        e.g., W. Va. Code § 60A-3-302(a). As such, distributors are clearly included within the meaning of registrant.

2       Sections 60A-4-401 through 403 of the WVCSA describe prohibited acts under the law and penalties for those acts. The
        statute makes it unlawful, for example, for any person "[w]ho is subject to article 3 to distribute or dispense a controlled
        substance in violation of section [60A-3-]308." W. Va. Code § 60A-4-402(a)(1). Section 60A-3-308 of the WVCSA governs
        distribution of controlled substances, which is prohibited except by prescription. It provides, for example, that substances
        included in certain schedules of the law "shall not be distributed or dispensed other than for a medicinal purpose." W.
        Va. Code § 60A-3-308(d)(1).

3       Section 60A-8-1 et seq. refers to the West Virginia Wholesale Drug Distribution Licensing Act of 1991 ("WVDDLA"). The
        WVDDLA governs persons engaged in the "wholesale distribution of human prescription drugs within [West Virginia]."
        W. Va. Code § 60A-8-2.

4       Defendant notes with respect to the federal CSA that it "does not contend that federal law completely preempts plaintiffs'
        claims" and accordingly, defendant does not address that proposition but merely notes that plaintiffs' "discussion of ...
        complete preemption ... is inapposite." Def.'s Resp. 9 n.10.

5       Defendant characterizes this duty equivocally at various points as a duty to refuse to fill suspicious orders, a duty to refuse
        to ship such orders, and a duty to refuse such orders. See, e.g., Def.'s Resp. 1-2. For simplicity's sake, however, the
        court will use the defendant's most consistent statement of the duty—a duty to refuse to fill suspicious orders. See id. 6.

6       Of these references to West Virginia law, defendant appears to address only the reference to Section 60A-8-1, et seq.,
        which involves the WVDDLA. Def.'s Resp. 12. Defendant argues that Section 60A-8-1, et seq., does not allege a state
        claim because it "implements federal law—namely, the Prescription Drug Marketing Act of 1987, now the Federal Food,
        Drug, and Cosmetic Act, and its regulations." Id. (citing W. Va. Code § 60A-8-3). However, while the WVDDLA's prefatory
        remarks in Section 60A-8-3 do proffer that the state law's purpose is to implement federal law, the WVDDLA nevertheless
        provides its own statutory requirements and standards, and therefore cannot be characterized as necessarily requiring
        analysis of federal issues. Furthermore, state courts are "competent to apply federal law, to the extent it is relevant."
        Empire Healthchoice, 547 U.S. at 701. Accordingly, this state law does not necessarily raise a substantial federal issue.

---

**End of Document**                                        © 2021 Thomson Reuters. No claim to original U.S.
                                                            Government Works.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |
|---|---|
| | : |
| CITY OF PHILADELPHIA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :          Case No. 2:21-cv-04701-JS |
| | : |
| CVS INDIANA, L.L.C., et al., | : |
| | : |
| Defendants. | : |
| _____ | : |

**[PROPOSED] ORDER**

**AND NOW**, this ____ day of _____, 2021, upon consideration of the

Motion to Remand filed by Plaintiff, the City of Philadelphia, and any Responses thereto, and

any oral argument, it is hereby **ORDERED** and **DECREED** that:

1.     Plaintiff's Motion is **GRANTED**;

2.     This matter shall not be transferred to *In Re National Prescription Opiate Litigation*, MDL 2804;

3.     This matter shall be immediately **REMANDED** to the Pennsylvania Court of Common Pleas for further proceedings; and

4.     Removing Defendants are **ORDERED** to pay just costs and actual expenses incurred as a result of the remand pursuant to 28 U.S.C. §1447(c).

BY THE COURT:

_____
Juan R. Sánchez, Chief Judge